**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

**No. 23-11418-F**

---

DR. JASMINE YOUNGE,
Plaintiff - Appellant

v.

FULTON JUDICIAL CIRCUIT DISTRICT ATTORNEY'S OFFICE, GEORGIA
Defendant – Appellee

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
HONORABLE WILLIAM M. RAY, II
(1:20-cv-00684)

---

**APPELLANT'S INITIAL BRIEF**

---

Matthew C. Billips
Benjamin A. Stark
BARRETT & FARAHANY
P.O. Box 530092
Atlanta, GA 30353
(404) 214-0120
(404) 214-0125 fax
matt@justiceatwork.com
bstark@justiceatwork.com
*Counsel for Plaintiff-Appellant*

**C-1**

**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT**

Plaintiff-Appellant, Jasmine Younge, pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, 26.1-2 and 26.1-3, hereby files her Certificate of Interested Persons and Corporate Disclosure Statement:

1. Jasmine Younge – Plaintiff-Appellant;

2. Matthew C. Billips – Counsel to Plaintiff-Appellant;

3. Amanda A. Farahany – Counsel to Plaintiff-Appellant;

4. Benjamin A. Stark – Counsel to Plaintiff-Appellant;

5. Grace A. Starling – former Counsel to Plaintiff-Appellant;

6. Barrett & Farahany – Law Firm of Counsel to Plaintiff-Appellant;

7. Fulton Judicial Circuit District Attorney's Office, Georgia – Defendant-Appellee;

8. Paul L. Howard, Jr. – former Defendant

9. Paul Henefield – Counsel to Defendant-Appellee;

10. Noah Green – Counsel to Defendant-Appellee;

11. Courtney Poole – former Counsel to Defendant-Appellee;

12. Applebaum Henefield & Green, P.C. – Law Firm of Counsel to Defendant-Appellee;

13. Honorable William M. Ray, II – United States District Court Judge; and

i

14. Honorable Catherine M. Salinas – United States District Magistrate Court Judge.

Respectfully submitted, this 28th day of September 2023.

**BARRETT & FARAHANY**

s/ *Benjamin A. Stark*
Benjamin A. Stark
Georgia Bar No. 601867

**C-2**

## STATEMENT REGARDING ORAL ARGUMENT

This case requires that the Court distinguish between two lines of authority that appear to render different results. Oral argument will aid the Court in this difficult task and in establishing a rule that will assist the courts, counsel, and parties by establishing a clear, bright-line test for enforcing deadlines imposed by the courts.

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PARTIES AND
CORPORATE DISCLOSURE STATEMENT ................................................ i

STATEMENT REGARDING ORAL ARGUMENT ................................... iii

TABLE OF CONTENTS .............................................................................. iv

TABLE OF AUTHORITIES ...................................................................... viii

STATEMENT REGARDING ADOPTION OF
BRIEFS BY OTHER PARTIES ................................................................. xii

STATEMENT OF JURISDICTION ........................................................... xiii

STATEMENT OF THE ISSUES ................................................................... 1

STATEMENT OF THE FACTS .................................................................... 3

I.    DEFENDANT TERMINATES YOUNGE DUE TO HER
      PREGNANCY .................................................................................... 3

II.   YOUNGE'S DUTIES AND WORKING RELATIONSHIP WITH
      HOWARD & HOW THEY CHANGED AFTER HER PREGNANCY
      ANNOUNCEMENT ........................................................................... 6

III.  DEFENDANT'S ACTIONS DURING THIS LITIGATION .............. 6

COURSE OF PROCEEDINGS BELOW ...................................................... 8

STANDARD OF REVIEW ........................................................................ 10

SUMMARY OF THE ARGUMENT .......................................................... 11

ARGUMENT .............................................................................................. 18

I.    THE SUMMARY JUDGMENT STANDARD THAT THE DISTRICT
      COURT FAILED TO FOLLOW ..................................................... 19

II.   THE DISTRICT COURT ERRED BY CONSIDERING DEFENDANT'S UNPLED AFFIRMATIVE DEFENSE – WHICH WAS A *DE FACTO*, UNTIMELY AMENDMENT OF DEFENDANT'S ANSWER – EVEN THOUGH DEFENDANT DID NOT SHOW GOOD CAUSE FOR SUCH AMENDMENT ................................................................................. 20

     a.   The "Good Cause" Requirement for Allowing Amendment of Pleadings After the Deadline Set by the Scheduling Order ..... 22

     b.   Defendant Did Not Amend Its Answer to Add the Personal Staff Defense by the Deadline Set in the Scheduling Order ............. 25

     c.   Defendant Has Not Demonstrated – or Attempted to Demonstrate – Good Cause for an Untimely Amendment ............................... 26

III.  THE DISTRICT COURT ERRED BY APPLYING INAPPLICABLE PRECEDENT ...................................................................................... 27

     a.   The Good Cause & Prejudice Lines Do Not Actually Conflict and Address Different Issues. Only the Good Cause Line Applies to This Case ........................................................................................ 28

        i.   The Good Cause & Prejudice Lines Do Not Conflict. "Prejudice" is a Subset of the "Good Cause" Inquiry ... 28

        ii.  Requiring a Finding of "Good Cause" Before Addressing "Prejudice" Preserves the Courts' Inherent Power to Manage Their Docket ................................................................. 30

     b.   The District Court Erred in Applying the Earliest Case Rule Because the Good Cause & Prejudice Lines Do Not Conflict ............... 32

     c.   The District Court Erred in Adopting a Rule That Rewards Dilatory Behavior ................................................................................. 33

     d.   The District Court Erred in Adopting a Rule That Arbitrarily Treats Defendants Better Than Plaintiffs ........................................... 33

     e.   To Allow Defendants Who Cannot Prove "Good Cause" to Assert Unpled Defenses Would Be Error Because It Renders Scheduling

Orders Meaningless ................................................................. 35

IV.   THE  DISTRICT  COURT  ERRED  BY  FINDING  THAT  ALLOWING
DEFENDANT TO ASSERT AN UNPLED DEFENSE – MONTHS AFTER
DISCOVERY HAD CLOSED – DID NOT PREJUDICE PLAINTIFF..35

a.  Plaintiff Was Prejudiced Because She Was Denied the Opportunity to
Conduct  Discovery  Purposefully  Directed  at  the  Personal  Staff
Exemption While Discovery Was Open ................................. 36

b.  The District Court Erred in Finding Plaintiff Had Not Shown What
Additional  Discovery  She  Would  Have  Performed  (if  the  Personal
Staff Exemption Were Timely Pled) and, Therefore, Could Not Show
Prejudice. ................................................................. 39

V.THE DISTRICT COURT ERRED IN ITS ANALYSIS OF DEFENDANT'S
PERSONAL  STAFF  DEFENSE  BY  REPEATEDLY  IGNORING  THE
SUMMARY JUDGMENT STANDARD ..................................... 42

a.  The Personal Staff Exemption Must Be Narrowly Construed, Especially
at Summary Judgment. ................................................. 42

b.  Overview: The Evidence Regarding the Personal Staff Factors is Not So
One-Sided As to Merit Summary Judgment ................................. 44

c.  Regarding  Factor  6  ("Actual  Intimacy  of  the  Working  Relationship"):
Any  Intimacy  in  Younge's  Working  Relationship  with  Howard  Was
Eliminated After Younge Told Howard She Was Pregnant ......... 45

i.  Howard  Ended  His  Intimate  Working  Relationship  with
Younge After Learning She Was Pregnant. No Such Intimate
Relationship Existed at the Time Younge Was Fired.... 45

ii.  The District Court Erred in Ignoring the Change in Younge's
Working Relationship with Howard Because Her Job Title Did
Not Change ................................................................. 47

iii.  The District Court Erred in Ignoring the Change in Younge's
Working Relationship with Howard Because It May Have Been
a   "Forerunner"   of   Termination.   The   District   Court's

Interpretation Ignores the Purpose of the Exemption .... 48

    d.  Regarding Factor 1 ("Plenary Powers of Appointment and Removal"): Howard's Powers of Appointment Were Not Plenary ................. 51

    e.  Regarding Factor 3 ("Represents the Elected Official in the Eyes of the Public"): Howard Represented Himself to the Public and Ultimately Removed Younge's Public-Facing Duties ................................... 52

        i.  Younge Did Not Represent Howard to the Public. Howard Represented Himself to the Public ................................ 52

        ii.  Once Howard Eliminated Younge's Public-Facing Duties – After Learning of Her Pregnancy – Younge Could Not Represent Him to the Public ......................................... 54

    f.  Summary .......................................................................... 55

VI.  CONCLUSION .................................................................... 55

CERTIFICATE OF COMPLIANCE ............................................. 57

CERTIFICATE OF SERVICE ...................................................... 57

## <u>TABLE OF AUTHORITIES</u>

**<u>U.S. Supreme Court Cases</u>:**

*Anderson v. Liberty Lobby* 477 U.S. 242 (1986) .................................... 19-20

*United States v. Proctor & Gamble Co., 3*56 U.S. 677 (1958) ................... 37


**<u>Circuit Court Cases</u>:**

*Allen v. Bd. Of Pub. Educ.*, 495 F.3d 1306 (11th Cir. 2007) ........................ 20

*Alonso v. Alonso*, No. 22-10607, 2023 U.S. App. LEXIS 1334
 (11th Cir. Jan. 19, 2023) .............................................................. 24

*Am. Heritage Life Ins. Co. v. Johnston*, No. 21-12121, 2022 U.S. App. LEXIS 179
(11th Cir. Jan. 4, 2022) ................................................................ 24

*Aponte v. Brown & Brown of Fla., Inc.*, 806 F. App'x 824 (11th Cir. 2020)..28

*Brown v. Hillsborough Cty. Sheriff's Office*, 342 F. App'x 552
(11th Cir. 2009) ............................................................................. 25

*Cromer v. Brown*, 88 F.3d 1315 (4th Cir. 1996) .............................. 16, 46, 54

*Crockett v. Geo Grp., Inc.*, 582 F. App'x 793 (11th Cir. 2014) ................... 24

*Dixon v. Blanc*, 796 F. App'x 684 (11th Cir. 2020) ..................................... 24

*EEOC v. Reno*, 758 F.2d 581 (11th Cir. 1985) ..................... 15, 43, 47, 52, 55

*Feliciano v. City of Miami Beach*, 707 F.3d 1244 (11th Cir. 2013)..20, 46, 50, 53

*First Nat'l Bank of Oneida, N.A. v. Brandt*, 851 F. App'x 904
 (11th Cir. 2021) ............................................................................ 28

*Grant v. Preferred Research, Inc.*, 885 F.2d 795 (11th Cir. 1989) .. 14, 29, 39

*Green Island Holdings, LLC v. British Am. Isle of Venice (BVI), Ltd.*,
521 F. App'x 798 (11th Cir. 2013) ............................................................24-25

*Hassan v. United States Postal Serv.*, 842 F.2d 260 (11th Cir. 1988) ..12, 28-30, 34

*Int'l Ship Repair & Marine Servs. v. N. Assurance Co. of Am.*,
503 F. App'x 681 (11th Cir. 2013)......................................................24-25

*Jean v. Dorelien*, 431 F.3d 776 (11th Cir. 2005)......................................... 43

*Kirkland v. Guardian Life Ins. Co. of Am.*, 352 F. App'x 293
 (11th Cir. 2009)............................................................................... 25

*Laurie v. Ala. Court of Criminal Appeals*, 256 F.3d 1266 (11th Cir. 2001)..

........................................................................................ 16, 43, 45

*Mastaw v. W. Fla. Med. Ctr. Clinic, PA*, No. 22-12202 U.S. App. LEXIS 22208
(11th Cir. Aug. 23, 2023) ............................................................. 21

*Maynard v. Bd. of Regents*, 342 F.3d 1281 (11th Cir. 2003)….1, 13-14, 23, 29, 38,
40

*MidAmerica C2L Inc. v. Siemens Energy Inc.*, No. 20-11266, 2023 U.S. App.
LEXIS 7690 (11th Cir. Mar. 31, 2023)........................................ 1, 22, 24, 29

*Millennium Partners, L.P. v. Colmar Storage, LLC*, 494 F.3d 1293
(11th Cir. 2007)............................................................1, 12, 24-25

*Morgan v. Family Dollar Stores*, 551 F.3d 1233 (11th Cir. 2008) ........ 47, 49

*Morrissey v. ASD Shared Servs., LLC*, 626 F. App'x 946 (11th Cir. 2015)..24, 26

*Oden v. Oktibbeha Cty.*, 246 F.3d 458 (5th Cir. 2001)................................ 21

*Pinero v. Corp. Courts at Miami Lakes, Inc.*, 389 F. App'x 886
 (11th Cir. 2010).......................................................................... 13, 31

*Pugh v. Kobelco Constr. Mach. Am., LLC*, 413 F. App'x 1343
(11th Cir. 2011)..........................................................................23-24

*Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819 (11th Cir. 2009)..14, 37, 40

*Reese v. Herbert*, 527 F.3d 1253 (11th Cir. 2008)........................ 2, 14, 37, 40

*Romero v. Drummond Co.*, 552 F.3d 1303 (11th Cir. 2008)....................... 24

*Saewitz v. Lexington Ins. Co.*, 133 F. App'x 695 (11th Cir. 2005)....24-25, 33

*Sconiers v. Lockhart*, 946 F.3d 1256 (11th Cir. 2020) .......................... 20, 53

*Shahar v. Bowers*, 114 F.3d 1097 (11th Cir. 1997).................... 16, 49-50, 53

*Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321 (11th Cir. 2011) ........ 19, 44

*Smith v. Sch. Bd.*, 487 F.3d 1361 (11th Cir. 2007) .................................25-26

*Sosa v. Airprint Sys.*, 133 F.3d 1417 (11th Cir. 1998)....................................

................................................................ 11-13, 22-24, 28, 31, 33, 35

*Teneyuca v. Bexar Cty.*, 767 F.2d 148 (5th Cir. 1985)....15, 43, 47, 52, 54-55

*Universal Physician Servs., LLC v. Del Zotto*, 842 F. App'x 350
(11th Cir. 2021)...........................................................................24-26

*Valpak Direct Mktg. Sys. v. Maschino*, 349 F. App'x 368 (11th Cir. 2009)..24-25

*Wadley Crushed Stone Co., LLC. v. Positive Step, Inc.*,
34 F.4th 1251 (11th Cir. 2022) ..................................................... 21

*Walker v. Mortham*, 158 F.3d 1177 (11th Cir. 1998)............................ 13, 32

*Watkins v. Azael*, No. 22-11648, 2023 U.S. App. LEXIS 17331
(11th Cir. July 10, 2023) ........................................................ 24, 28

*Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015) ..30

*Yellow Pages Photos, Inc. v. YP, LLC*, 856 F. App'x 846 (11th Cir. 2021)..11, 21

## District Court Cases

*Croci v. Town of Haverstraw*, 175 F. Supp. 3d 373 (S.D.N.Y. 2016). ........ 48

*Frazier v. Smith*, 12 F. Supp. 2d 1362 (S.D. Ga. 1998)................................ 54

*Laurie v. Ala. Court of Criminal Appeals*, 88 F. Supp. 2d 1334 (M.D. Ala. 2000) ................................................................................ 16, 43, 45, 47

*Milliones v. Fulton Cty. Gov't*, No. 1:12-CV-3321-TWT-ECS,
2013 U.S. Dist. LEXIS 79798 (N.D. Ga. Apr. 30, 2013)......15, 20, 27, 42-43

*Moyer v. Walt Disney World Co.*, 146 F. Supp. 2d 1249 (M.D. Fla. 2000)..31

*Oliver v. City of Orlando*, No. 6:06-cv-1671-Orl-31DAB,
2007 U.S. Dist. LEXIS 80552 (M.D. Fla. Oct. 31, 2007) ........................... 36

*Regions Bank v. Kaplan*, No. 8:16-cv-2867-T-23AAS,
2017 U.S. Dist. LEXIS 234113 (M.D. Fla. Sep. 25, 2017)......................... 37

*Roberson v. BancorpSouth Bank, Inc.*, No. 12-0669-WS-N,
2013 U.S. Dist. LEXIS 130423 (S.D. Ala. Sep. 12, 2013).......................... 23

*Sanders v. M&M Waste, Inc.*, No. 1:08-CV-3856-CC,
2010 U.S. Dist. LEXIS 152230 (N.D. Ga. Sep. 27, 2010) .......................... 35

*Shaneyfelt v. REC I/Blue Springs Ltd. P'ship*, Civil Action No. CV-11-S-4366-NE,
2013 U.S. Dist. LEXIS 31308, at *39-40 (N.D. Ala. Mar. 7, 2013) ...............

................................................................................27-28, 33-34

*Tom Hussey Photography, LLC v. Reaves*, Civil Action No. 22-20416-Civ, 2022
U.S. Dist. LEXIS 170965 (S.D. Fla. Sep. 21, 2022) ....................... 13, 23, 29

*Whiteside v. Infinity Cas. Ins. Co.*, No. 4:07-CV-87 (CDL), 2008 U.S. Dist. LEXIS
60512 (M.D. Ga. Aug. 8, 2008).................................................................. 38

*Yellow Pages Photos, Inc. v. Yellow Book USA, Inc.*, No. 8:08-cv-930-T-23EAJ,
2009 U.S. Dist. LEXIS 141402 (M.D. Fla. Aug. 14, 2009) ........................ 38

**State Supreme Court Cases:**

*Davis v. Cent. R.R.*, 60 Ga. 329 (1878)......................................................... 20

## <u>STATEMENT REGARDING ADOPTION OF</u>
## <u>BRIEFS BY OTHER PARTIES</u>

Plaintiff-Appellant does not adopt any portion of briefs by other parties in this matter.

## STATEMENT OF JURISDICTION

This case is a plenary appeal of a final decision of the United States District Court for the Northern District of Georgia. Jurisdiction lies under 28 U.S.C. § 1291.

## <u>STATEMENT OF THE ISSUES</u>

I.   A defendant seeking to amend its Answer by adding an affirmative defense <u>after</u> the District Court's deadline for amending pleadings must <u>first</u> demonstrate "good cause" for amending the Scheduling Order to allow for untimely amendment of pleadings. *Millennium Partners, L.P. v. Colmar Storage, LLC*, 494 F.3d 1293, 1298-99 (11th Cir. 2007). Did Defendant demonstrate "good cause" to assert a defense it never pled in its Answer when: (i) it never attempted to amend its Answer, (ii) it never even argued it had "good cause" for an untimely amendment, and (iii) it knew the facts purportedly supporting the new defense long before the Scheduling Order's deadline for amendments?

II.  Under Fed. R. Civ. P. 15(a), a party is allowed to amend a pleading "when justice so requires." However, when the amendment is sought <u>after</u> the deadline for amendments in the Scheduling Order, the amending party must <u>first</u> demonstrate "good cause" <u>before</u> the court may consider whether "justice requires" the amendment. *MidAmerica C2L Inc. v. Siemens Energy Inc.*, No. 20-11266, 2023 U.S. App. LEXIS 7690, at *42-43 (11th Cir. Mar. 31, 2023). The question of whether the opposing party would be "prejudiced" by the amendment is merely a subset of the "justice requires" inquiry. *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1287 (11th Cir. 2003). Did the District Court err by

1

analyzing whether Plaintiff was "prejudiced" by Defendant's untimely affirmative defense <u>without</u> first determining whether Defendant demonstrated "good cause" for the untimely amendment?

III.  This Court has repeatedly held that, when a party asserts a new claim or defense <u>after</u> the close of discovery, the opposing party is prejudiced because it has been denied the opportunity to conduct discovery into the new claim or defense. *E.g.*, *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008). Did the District Court err in finding Plaintiff was not prejudiced when Defendant first raised its Personal Staff Exemption defense about <u>two months</u> after the close of discovery?

IV.  Did the District Court err by failing to apply the summary judgment standard during its analysis of the Personal Staff Exemption when, viewed in the light most favorable to the nonmoving party, half of the "Personal Staff" factors weigh against applying the Exemption?

## STATEMENT OF THE FACTS

### I.  DEFENDANT TERMINATES YOUNGE DUE TO HER PREGNANCY.

Plaintiff-Appellant Jasmine Younge ("Plaintiff" or "Younge") was pregnant with a "high risk" pregnancy during her employment with Defendant-Appellee Fulton County Judicial Circuit District Attorney's Office ("Defendant" or "DA's Office"). (Doc. 93, pp. 49-53). During her employment, Younge had no conflicts with anybody at the DA's Office. She got along with everybody and was never told that she had been rude, disrespectful or unprofessional. (Doc. 93, pp. 22, 53-54; Doc. 111-2 ¶¶ 7, 27). HR Director Tisa Grimes ("Grimes") describes Younge as "a knowledgeable leader" with "great interpersonal skills" and a "professional demeanor." (Doc. 109-3 ¶¶ 3-4, 7). Younge never received any negative feedback regarding her performance or behavior during her employment with Defendant. (Doc. 111-2 ¶¶ 25-27; Doc. 93, pp. 60, 111-113, 115-116).

On July 1, 2019, Younge handed then-District Attorney Paul Howard ("Howard") a letter notifying him that she was pregnant and that her pregnancy was considered "high risk", and also verbally told him the same information. (Doc. 93, pp. 60-62, 64-65, 76-77, 105; Doc. 111-2 ¶ 20; Doc. 95, pp. 24, 111). In response, Howard became extremely upset and agitated, yelling "What is this supposed to mean?" and "Is this a threat?" (Doc. 93, pp. 64-65; Doc. 111-2 ¶ 21).

Howard admits he suspected Younge was trying to create a record upon which to base a discrimination lawsuit. (Doc. 95, pp. 111-114).

After this encounter, Howard drastically changed Younge's duties and his working relationship with her.

- For instance, before she told Howard she was pregnant, Younge regularly participated in meetings regarding the programs she was responsible for. (Doc. 111-2 ¶ 24; Doc. 93, p. 93). After Younge told Howard she was pregnant, he excluded her from numerous meetings regarding programs under her purview and instead met with her team members without her. (Doc. 111-2 ¶¶ 23-24; Doc. 93, pp. 76-81, 83-84, 88-90, 96-98; Doc. 109-3 ¶ 14).

- Before the pregnancy announcement Younge and Howard met frequently, she had "open door" access to his office, and he required she be available around the clock. (Doc. 93, pp. 105-107; Doc. 95, p. 28; Doc. 111-2 ¶ 30-31). After the pregnancy announcement, Howard stopped meeting with Younge, excluded her from meetings, and dismissed her when she tried to talk to him. (Doc. 93, pp. 76-77, 80-81, 105-107; Doc. 111-2 ¶¶ 23, 30-31).

- After the pregnancy notification, Howard began to reassign Younge's duties to others, including people who had no operations experience. (Doc. 111-2 ¶¶ 23, 28-29; Doc. 93, pp. 83-84, 87-88, 98-99, 102).

Howard admits that nothing happened between the July 1 pregnancy announcement and the July 15 resignation meeting that caused him to believe Younge should be terminated. (Doc. 95, pp. 26-27, 128). Nevertheless, on July 15, 2019, Howard and Chief of Staff Lynne Nelson ("Nelson") met with Younge and Howard demanded that Younge resign. (Doc. 93, pp. 111-113; Doc. 111-2 ¶ 34; Doc. 95, p. 51).

Chief of Staff Nelson was Howard's top advisor on staffing issues. (Doc. 94, p. 41). Howard told Nelson about his intent to terminate Younge before he ever carried it out. (Doc. 95, pp. 82-83, 85). However, Chief of Staff Nelson admits she was not aware of any discussion of terminating Younge before Younge announced her pregnancy. (Doc. 94, pp. 38-39).

According to HR Director Grimes, if there were problems with Younge's performance or behavior, they should have been documented contemporaneously in her personnel file. (Doc. 109-3 ¶¶ 3-4, 8, 19-20; Doc. 93, p. 22). There were no disciplinary actions, warnings, reprimands, complaints, or documentations of conflicts in Younge's personnel file – even after her termination. (Doc. 109-3 ¶¶ 9, 16-18; Doc. 93, pp. 53-54, 115-116; Doc. 94, p. 42; Doc. 95, pp. 23-24). The only complaints in existence regarding her behavior or performance during her employment at the DA's Office were created in mid-August 2019, well after her termination. (Doc. 109-3 ¶ 18; Doc. 109-10; Doc. 94, pp. 44-45). Those complaints were solicited by Nelson (after Younge's termination) at Howard's request after he said he believed Younge would file a lawsuit and he wanted to "be prepared." (Doc. 109-10; Doc. 94, pp. 13-16; Doc. 109-3 ¶¶ 16-17, 19-21).

Finally, Howard hired a Ms. Becker-Brown – who was not pregnant – to replace Younge. (Doc. 95, pp. 16-17, 100-101).

## II.    YOUNGE'S DUTIES AND WORKING RELATIONSHIP WITH HOWARD & HOW THEY CHANGED AFTER HER PREGNANCY ANNOUNCEMENT.

Howard initially sought to hire Younge in a Director position at a salary of $125,000, but he was not permitted by Fulton County to hire her at that position or that salary, so she was instead hired as Deputy Chief of Staff at a lower salary. (Doc. 95, pp. 6-7; Doc. 109-3 ¶ 5; Doc. 93, pp. 26-28). Once Howard selected a candidate, the actual hiring of the candidate was subject to local laws or the authorization of the governing authority of Fulton County. (Doc. 128, p. 33). As Deputy Chief of Staff, Younge ranked directly under Nelson, who sometimes directed Younge to execute tasks or conveyed Howard's instructions to Younge. (Doc. 109-3 ¶ 5; Doc. 111-2 ¶¶ 3, 33; Doc. 94, pp. 5, 15; Doc. 95, p. 42).

Whenever Younge met with dignitaries or members of the public as part of her duties, she did not run the meetings and Howard was always present. (Doc. 93, pp. 34-37; Doc. 111-2 ¶ 19). In any case, after Younge told Howard she was pregnant, he began excluding her from meetings with dignitaries or members of the public.[1] (Doc. 111-2 ¶ 23; Doc. 93, p. 102).

## III.    DEFENDANT'S ACTIONS DURING THIS LITIGATION

Defendant did not plead or otherwise alert Plaintiff of its Personal Staff Exemption affirmative defense until long after discovery was over. None of the

---

[1] This is in addition to the other changes Howard implemented after learning Younge was pregnant. *See* the previous section.

affirmative defenses in Defendant's Answer raise the Personal Staff Exemption as a defense to Plaintiff's claims. (Doc. 53, pp. 2-6). The District Court's Scheduling Order set the "time limits for . . . amending the pleadings . . . are otherwise as stated in the Federal Rules of Civil Procedure and this Court's Local Rules." (Doc. 58, p. 1). Defendant never moved to amend its Answer to add the Personal Staff Exemption defense. *See generally* (District Court Docket).

In the Joint Preliminary Report & Discovery Plan, Defendant does not identify any affirmative defenses among the legal issues to be decided. (Doc. 57 ¶ 1(c)). Defendant's Initial Disclosures make no mention of the Personal Staff Exemption or the statutory definition of "employee." (Doc. 109-4). Defendant's discovery responses make only five references to Plaintiff being "personal staff" – none of which indicate that such status makes her exempt from Title VII's protections. (Doc. 109-5 # 3, 5, 46, 48, 54).

Instead, Defendant did not notify the District Court or Plaintiff of its intent to raise the Personal Staff Exemption until an unrelated hearing on March 14, 2022 – approximately 2 months after the close of discovery. (Doc. 128, pp. 7-9). Defendant's counsel even admitted during a separate oral argument that the Exemption first came to his attention when he began drafting the Summary Judgment Motion in February or March 2022. (Doc. 128, p. 7).

## COURSE OF PROCEEDINGS BELOW

Plaintiff commenced this action on February 13, 2020 in the U.S. District Court for the Northern District of Georgia, alleging, *inter alia*, unlawful pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Pregnancy Discrimination Act ("PDA"). (Doc. 1). An Amended Complaint was filed on August 10, 2020. (Doc. 31). Defendant filed its Answer on March 24, 2021. (Doc. 53).

After a period of discovery, Defendant moved for summary judgment to dismiss Plaintiff's claims. (Docs. 96-97, 104-105). In her Report & Recommendation, the Magistrate Judge recommended that summary judgment be granted based on the Personal Staff Exemption. (Doc. 128, pp. 43-44). However, the Magistrate also held that Plaintiff had otherwise raised a genuine issue of pregnancy discrimination:

> Among other evidence, there is evidence that Howard began treating Younge differently after she announced that she was pregnant, including by excluding her from meetings, reassigning some of her duties, and limiting the usual access that she had to Howard. . . The timing of the termination meeting—only two weeks after the pregnancy announcement—also suggests discriminatory intent. *Wolchok v. Law Offices of Gary Martin Hays & Assocs., P.C.*, No. 1:07-cv-765-CC, 2008 WL 11336109, at *4 (N.D. Ga. Aug. 27, 2008) ("Close temporal proximity between a pregnant employee's announcement of her pregnancy and the termination of the employee may be used to demonstrate pretext."). Furthermore, while Howard heavily relied upon complaints from other District Attorney's Office staff members as his basis for terminating Younge, there is testimony from Younge that Howard never brought these issues to her attention

before she notified Howard of her pregnancy. . . Significantly, too, it is undisputed that none of these complaints were documented and placed in Younge's personnel file until weeks after she was terminated. . . Even Chief of Staff Nelson, Howard's top advisor on staffing issues, testified that she was not aware of any discussion of terminating Younge prior to the time that Younge announced she was pregnant. . . Finally, it is undisputed that Younge was replaced by a non-pregnant employee. . . Therefore, if the district judge concludes that the "personal staff" exemption is waived or does not apply, the evidence I have summarized above warrants denying summary judgment and permitting Younge's pregnancy discrimination claim to go before a jury.

(Doc. 128, pp. 46-47).

The District Judge adopted the Magistrate Judge's recommendation to grant summary judgment based on the Personal Staff Exemption, "albeit reluctantly." (Doc. 134, p. 21). *See also id.* at p. 21, n.13 (noting "the Court's misgivings about the unfairness of Title VII's 'personal staff' exemption, particularly in a case where the plaintiff's pregnancy discrimination claim would otherwise survive summary judgment").

Plaintiff filed a Notice of Appeal on April 26, 2023. (Doc. 136). This appeal followed.

## <u>STANDARD OF REVIEW</u>

The standard of review of an entry of summary judgment is *de novo*. *See Jones v. UPS Ground Freight,* 683 F.3d 1283, 1291 (11th Cir. 2012).

## SUMMARY OF THE ARGUMENT

The District Court found that, based on the substantive facts, there is sufficient evidence to raise a jury issue that Defendant-Appellee Fulton Judicial Circuit District Attorney's Office, Georgia ("Defendant" or the "DA's Office") illegally terminated Plaintiff-Appellant Dr. Jasmine Younge ("Plaintiff" or "Younge") because of her pregnancy. (Doc 128, pp. 46-47; Doc. 134, pp. 21-22 n.13). The District Court nevertheless granted summary judgment to Defendant based on the Personal Staff Exemption affirmative defense. (Doc. 128, pp. 43-44; Doc. 134, p. 21). This was error.

**(1)** Defendant never pled the Personal Staff Exemption defense in its Answer. If affirmative defenses are not pled, they are waived. *Yellow Pages Photos, Inc. v. YP, LLC*, 856 F. App'x 846, 869 (11th Cir. 2021). Therefore, if Defendant wished to assert the Personal Staff Exemption, it was required to amend its Answer to add this defense. Since the deadline for amending pleadings – as set forth in the District Court's Scheduling Order – had passed, Defendant was required to prove "good cause" for changing the deadline by amending the Scheduling Order. *See Sosa v. Airprint Sys.*, 133 F.3d 1417, 1419 (11th Cir. 1998). The "good cause" standard precludes untimely amendments unless the schedule cannot "be met despite the diligence of the party seeking the extension." *Id*. at 1418. If – before the Scheduling Order's deadline – the party seeking amendment

knew or should have known of the information supporting the proposed amendment, that party does not have "good cause." *Id.* at 1419. This Court has upheld this standard in scores of cases. *See e.g., Millennium Partners, L.P. v. Colmar Storage, LLC*, 494 F.3d 1293, 1298-99 (11th Cir. 2007).

In this case, Defendant did not seek to amend its Answer to add the Personal Staff Exemption defense before the Scheduling Order deadline. And it has not even argued that it has shown "good cause" for an untimely amendment. Indeed, since the Personal Staff Exemption exclusively involves facts regarding the nature of Plaintiff's working relationship with then-DA Paul Howard ("Howard") and of his authority over her, Defendant would have known all the relevant facts from the beginning.

The District Court erred in considering the Personal Staff Exemption and failing to consider Defendant's clear lack of "good cause."

**(2)** The District Court ignored the Good Cause line of cases and instead applied a different line of cases (the "Prejudice line") which appear to allow a defendant to assert an affirmative defense – without pleading the defense in its Answer – if the plaintiff learned of the defense by some other means and was not "prejudiced" by the late assertion of the defense. *E.g.*, *Hassan v. United States Postal Serv.*, 842 F.2d 260 (11th Cir. 1988).

12

This, too, was error. Whether a party as "prejudiced" by an untimely-asserted claim or defense is part of the Fed. R. Civ. P. 15(a) inquiry into when an untimely amendment is allowed. *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1287 (11th Cir. 2003); *Tom Hussey Photography, LLC v. Reaves*, Civil Action No. 22-20416-Civ, 2022 U.S. Dist. LEXIS 170965, at *3-4 (S.D. Fla. Sep. 21, 2022). But that Rule 15(a) inquiry is the 2nd step of the analysis. Before a party is entitled to that lenient inquiry, it must <u>first</u> demonstrate "good cause" under Rule 16(b) for amending the Scheduling Order to allow an untimely amendment. *Sosa*, 133 F.3d at 1419; *Tom Hussey Photography, LLC*, 2022 U.S. Dist. LEXIS 170965 at *3. Because Defendant never demonstrated "good cause", the Prejudice line of cases is inapplicable.

There are a number of other reasons for applying the Good Cause line, rather than the Prejudice line, to this case:

- Applying the Good Cause line upholds the federal courts' inherent authority to manage their dockets by, *inter alia*, ensuring compliance with their Scheduling Orders. *See Pinero v. Corp. Courts at Miami Lakes, Inc.*, 389 F. App'x 886, 888-89 (11th Cir. 2010).

- The "Earliest Case Rule" only applies when lines of precedent conflict. *Walker v. Mortham*, 158 F.3d 1177, 1188 (11th Cir. 1998). Since the Good Cause and Prejudice lines do not conflict – but rather represent separate steps in the same analysis – the Earliest Case Rule does not apply.

- Applying the Prejudice line under the circumstances of this case rewards dilatory behavior because it makes it easier for defendants who never even attempt to amend their Answers to assert a defense compared to defendants who at least attempt to (untimely) amend their Answers.

13

- Applying the lenient Prejudice standard to defendants who assert late defenses, while applying the demanding Good Cause standard to plaintiffs who assert late claims creates an unfair 2-tiered system that arbitrarily favors defendants.

**(3)** Even if the Court applies the Prejudice line, Plaintiff was clearly prejudiced by Defendant's late assertion of the Personal Staff Exemption defense. This Court has repeatedly held that, when a party asserts a new claim or defense <u>after</u> the close of discovery, the opposing party is prejudiced because it has been denied the opportunity to conduct discovery into the new claim or defense. *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 823 (11th Cir. 2009); *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008); *Maynard*, 342 F.3d at 1287. (*Grant v. Preferred Research, Inc.*, 885 F.2d 795, 798 (11th Cir. 1989) is inapplicable because the plaintiff in that case did not assert prejudice.)

In those case, this Court has not required the opposing party to seek to reopen discovery before finding it was prejudiced. *Ray*, 327 F. App'x at 823; *Reese*, 527 F.3d at 1263; *Maynard*, 342 F.3d at 1287. Nor has it required the opposing party to identify the precise discovery it would have taken if the claim or defense had been properly pled. *Id*. Nevertheless, Plaintiff <u>has</u> identified areas of discovery her counsel could not pursue because he had not been notified of Defendant's intent to assert the Personal Staff Exemption, including:

- Seeking discovery from other witnesses to prove the degree to which Plaintiff's "personal staff"-type duties were changed – and the "intimacy" of

her working relationship with Howard was lost – after she announced her pregnancy.

- Gathering discovery on specific members of the public who had meetings with both Howard and Younge and questioning those members whether they still perceived Younge as speaking for Howard even when Howard was in the room.

- Conducting discovery about Fulton County rules and regulations that limited Howard's powers of appointment and removal.

However, the District Court erred in failing to consider Plaintiff's inability to pursue these avenues of discovery when deciding that Plaintiff was not "prejudiced" by Defendant's late defense.

**(4)** Finally, the District Court erred in repeatedly failing to apply the summary judgment standard while considering the Personal Staff Exemption. The Exemption must be narrowly construed against the employer. *EEOC v. Reno*, 758 F.2d 581, 584 (11th Cir. 1985). And courts are reluctant to grant summary judgment on this fact-intensive defense. *See Teneyuca v. Bexar Cty.*, 767 F.2d 148, 152 (5th Cir. 1985); *Milliones v. Fulton Cty. Gov't*, No. 1:12-CV-3321-TWT-ECS, 2013 U.S. Dist. LEXIS 79798, at *10 (N.D. Ga. Apr. 30, 2013). Here, looking at the 6 factors commonly used to determine the applicability of the Personal Staff Exemption – *See Teneyuca*, 767 F.2d at 151 – 3 of them militate against applying the Exemption.

The 6th factor – "the actual intimacy of the working relationship" between the plaintiff and the elected official – is considered the most important factor.

*Laurie v. Ala. Court of Criminal Appeals*, 88 F. Supp. 2d 1334, 1338 (M.D. Ala. 2000), *aff'd*, 256 F.3d 1266 (11th Cir. 2001). And, while Younge and Howard initially worked closely together, that changed once Younge announced her pregnancy. At that time, Howard stopped meeting with Younge, excluded her from previously-scheduled meetings, and dismissed her when she tried to talk to him. The purpose of the Personal Staff Exemption is to recognize that "positions of confidentiality, policy-making, or acting and speaking on behalf of the [elected official] are truly different from other kinds of employment." *Shahar v. Bowers*, 114 F.3d 1097, 1104 n.15 (11th Cir. 1997). When an employee's duties no longer reflect such a "position of confidentiality" – such as when they no longer have an intimate working relationship with the elected official – they are no longer exempt "personal staff." *See Cromer v. Brown*, 88 F.3d 1315, 1323-24, 1328-29 (4th Cir. 1996). Thus, after Howard changed Younge's duties upon learning of her pregnancy, she was no longer "personal staff" (if she ever was).

The 1st factor – "plenary powers of appointment and removal" – also weighs against applying the Exemption because Howard's powers of appointment were limited by Fulton County regulations and subject to Fulton County's approval.

Finally, the 3rd factor – whether the plaintiff "represents the elected official in the eyes of the public" – weighs against application of the Exemption because Younge never met with members of the public without Howard present. It was

unnecessary for Younge to "represent" him to those members because he was always present to "represent" himself. In any case, after Younge's pregnancy announcement, Howard stripped her of the duty to meet with members of the public. This further confirms that Younge was not "personal staff" by the time she was fired.

Given that at least half of the factors – including the most important one – weigh against applying the Exemption, the record is not so one-sided as to justify overcoming the courts' traditional reluctance to decide the Exemption at summary judgment. The matter should be decided by a jury.

For all these reasons, the District Court's grant of summary judgment to Defendant should be reversed and this matter should be remanded to the District Court for a jury trial.

# ARGUMENT

Plaintiff-Appellant Dr. Jasmine Younge ("Plaintiff" or "Younge") received no negative feedback while working for Defendant-Appellee Fulton Judicial Circuit District Attorney's Office, Georgia ("Defendant" or the "DA's Office") – until she informed then-District Attorney Paul Howard ("Howard") that she was pregnant. Howard angrily called the pregnancy announcement a "threat" and proceeded to remove her duties and exclude her from meetings. Two weeks later, Howard demanded Younge's resignation and later replaced her with a non-pregnant employee. There was no record of performance deficiencies or unprofessional behavior in Younge's personnel file, even after her termination. Only after learning that Younge might file a lawsuit did Howard instruct his Chief of Staff Lynne Nelson ("Nelson") to gather derogatory employee statements about Younge.

The District Court correctly concluded that there is sufficient evidence to raise a jury issue that Defendant terminated Younge because of her pregnancy. (Doc 128, pp. 46-47; Doc. 134, pp. 21-22 n.13). Unfortunately, the District Court declined to consider the evidence showing pregnancy discrimination because it found Defendant has proven an affirmative defense that was never pled in the Answer: the Personal Staff Exemption.

As shown below, the District Court erred in considering an affirmative defense that Defendant never pled and, therefore, waived. Specifically, the District Court erred in failing to apply this Court's longstanding precedent requiring a party to prove "good cause" when it seeks to amend a pleading after the deadline in the Scheduling Order for such amendments. It further erred in concluding that no reasonable jury could find Plaintiff was prejudiced by Defendant's eleventh-hour amendment. Finally, when analyzing the Personal Staff defense, the District Court repeatedly misapplied the summary judgment standard.

## I.    THE SUMMARY JUDGMENT STANDARD THAT THE DISTRICT COURT FAILED TO FOLLOW.

Summary judgment must be denied unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a reasonable jury <u>could</u> find in Younge's favor, summary judgment <u>must</u> be denied. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) ("The [plaintiff's] burden at summary judgment . . . [is] to present sufficient evidence that would permit (not require) a jury to find that he was the victim of unlawful discrimination and retaliation.").

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). "So when competing narratives emerge on key events, courts are not at liberty to pick which side they

think is more credible." *Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020).

For this reason, when a court rules on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (at summary judgment, courts must "view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party"). "If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true." *Allen v. Bd. Of Pub. Educ.*, 495 F.3d 1306, 1314 (11th Cir. 2007).

Finally, "a case should be put to the jury" even if such disputed issues are "created solely by the testimony of a party." *Feliciano*, 707 F.3d at 1247. "[T]he law allows that '[i]nterest and truth may go together.'" *Id*. at 1253 (quoting *Davis v. Cent. R.R.*, 60 Ga. 329, 333 (1878)).

## II. THE DISTRICT COURT ERRED BY CONSIDERING DEFENDANT'S UNPLED AFFIRMATIVE DEFENSE – WHICH WAS A *DE FACTO*, UNTIMELY AMENDMENT OF DEFENDANT'S ANSWER – EVEN THOUGH DEFENDANT DID NOT SHOW GOOD CAUSE FOR SUCH AMENDMENT.

The Personal Staff Exemption excludes the "personal staff" of an elected official from the anti-discrimination protections of Title VII. *Milliones v. Fulton Cty. Gov't*, No. 1:12-CV-3321-TWT-ECS, 2013 U.S. Dist. LEXIS 79798, at *6-8

20

(N.D. Ga. Apr. 30, 2013). In the court below, the Magistrate Judge correctly concluded that the exemption is an affirmative defense, because it "allows the defendant to avoid liability even if the plaintiff meets his burden of proof under Title VII." (Doc. 128, pp. 5-7, *quoting Oden v. Oktibbeha Cty.*, 246 F.3d 458, 467 (5th Cir. 2001)). Defendant did not object to or appeal this ruling.

The issue, therefore, is whether Defendant may assert this defense even though it did not plead the defense in its Answer nor timely amend the Answer. Generally, a party asserting an affirmative defense must do so in the first responsive pleading. If affirmative defenses are not pled, they are waived. *Yellow Pages Photos, Inc. v. YP, LLC*, 856 F. App'x 846, 869 (11th Cir. 2021); Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense…"); *see also* Rule 12(b).

It is undisputed that Defendant did not plead the Personal Staff affirmative defense in its Answer. (Doc. 128, p. 7; Doc. 134, p. 11). Therefore, if Defendant wished to assert the Personal Staff Exemption affirmative defense, it was required to amend its Answer to add this defense. *Mastaw v. W. Fla. Med. Ctr. Clinic, PA*, No. 22-12202, 2023 U.S. App. LEXIS 22208, at *5 (11th Cir. Aug. 23, 2023); *Wadley Crushed Stone Co., LLC. v. Positive Step, Inc.*, 34 F.4th 1251, 1260 (11th Cir. 2022). In order to do so after the deadline for amendments, Defendant was required to move to amend the Scheduling Order and show "good cause" for such

amendment. *See Sosa v. Airprint Sys.*, 133 F.3d 1417, 1419 (11th Cir. 1998). Defendant did neither.

The District Court's consideration of that defense amounts to a *sua sponte* "amendment" of both the Scheduling Order and the Answer to permit that defense. However, the District Court erred in allowing this amendment because it failed to consider whether Defendant proved "good cause" for a belated amendment.

### a. The "Good Cause" Requirement for Allowing Amendment of Pleadings After the Deadline Set by the Scheduling Order.

> Normally, to acquire permission to amend one's pleading, a litigant need only establish the relatively lenient standard of Rule 15(a), which states that leave shall be granted "when justice so requires." However, when a party moves to amend their [pleading] after the deadline for doing so set by the district court in its scheduling order, a litigant must also "show good cause why leave to amend the complaint should be granted." *Smith v. Sch. Bd. of Orange Cnty.*, 487 F.3d 1361, 1366 (11th Cir. 2007) (per curiam); *see also* Fed. R. Civ. P. 16(b); *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir.1998) (per curiam) ("If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure."). We have recognized that Rule 16's "good cause standard precludes modification [of the scheduling order] unless the schedule cannot be met despite the diligence of the party seeking the extension." *See Sosa*, 133 F.3d at 1418 (quoting Fed. R. Civ. P. 16 advisory committee's note); *see also Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("If [a] party was not diligent, the [good cause] inquiry should end.").

*MidAmerica C2L Inc. v. Siemens Energy Inc.*, No. 20-11266, 2023 U.S. App. LEXIS 7690, at *42-43 (11th Cir. Mar. 31, 2023).

Thus, courts may not consider whether the party opposing the amendment would be "prejudiced" by the amendment unless they <u>first</u> find the party seeking amendment has proven "good cause." This is because "undue prejudice" is one of the factors considered in determining whether "justice so requires" an amendment under Rule 15(a). *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1287 (11th Cir. 2003); *Tom Hussey Photography, LLC v. Reaves*, Civil Action No. 22-20416-Civ, 2022 U.S. Dist. LEXIS 170965, at *3-4 (S.D. Fla. Sep. 21, 2022). And this Court does not permit consideration of Rule 15(a) factors unless "good cause" to change the deadline is <u>first</u> demonstrated under Rule 16(b). *Sosa*, 133 F.3d at 1419. Therefore, for purposes of the "good cause" inquiry, prejudice is immaterial. *See Pugh v. Kobelco Constr. Mach. Am., LLC*, 413 F. App'x 134, 135-36 (11th Cir. 2011) (ignoring plaintiff's argument that the defendants would not be prejudiced by the amendment and focusing on whether plaintiff demonstrated "good cause"); *Roberson v. BancorpSouth Bank, Inc.*, No. 12-0669-WS-N, 2013 U.S. Dist. LEXIS 130423, at *7 (S.D. Ala. Sep. 12, 2013) ("Diligence, not lack of prejudice, is the touchstone of the Rule 16(b)(4) inquiry.").

The "good cause" standard precludes untimely amendments unless the schedule cannot "be met despite the diligence of the party seeking the extension." *Sosa*, 133 F.3d at 1418. Over and over, this Court has found that, if a party knew or should have known of the information supporting the proposed amendment before

the deadline for amendments in the Scheduling Order had passed, then that party was not "diligent" and does not have "good cause" for the untimely amendment. *Watkins v. Azael*, No. 22-11648, 2023 U.S. App. LEXIS 17331, at *11-12 (11th Cir. July 10, 2023)*; MidAmerica C2L Inc.*, 2023 U.S. App. LEXIS 7690 at *43-47; *Alonso v. Alonso*, No. 22-10607, 2023 U.S. App. LEXIS 1334, at *9-10 (11th Cir. Jan. 19, 2023); *Am. Heritage Life Ins. Co. v. Johnston*, No. 21-12121, 2022 U.S. App. LEXIS 179, at *9-10 (11th Cir. Jan. 4, 2022); *Morrissey v. ASD Shared Servs., LLC*, 626 F. App'x 946, 953-54 (11th Cir. 2015); *Crockett v. Geo Grp., Inc.*, 582 F. App'x 793, 795-97 (11th Cir. 2014); *Green Island Holdings, LLC v. British Am. Isle of Venice (BVI), Ltd.*, 521 F. App'x 798, 800-01 (11th Cir. 2013); *Int'l Ship Repair & Marine Servs. v. N. Assurance Co. of Am.*, 503 F. App'x 681, 682 (11th Cir. 2013); *Pugh*, 413 F. App'x at 135-36; *Valpak Direct Mktg. Sys. v. Maschino*, 349 F. App'x 368, 369-71 (11th Cir. 2009); *Romero v. Drummond Co.*, 552 F.3d 1303, 1318-19 (11th Cir. 2008); *Millennium Partners, L.P. v. Colmar Storage, LLC*, 494 F.3d 1293, 1298-99 (11th Cir. 2007); *Saewitz v. Lexington Ins. Co.*, 133 F. App'x 695, 699-700 (11th Cir. 2005); *Sosa*, 133 F.3d at 1419.

Similarly, this Court has easily denied amendments when the party never argued it had "good cause" for the untimely amendment. *Universal Physician Servs., LLC v. Del Zotto*, 842 F. App'x 350, 355 (11th Cir. 2021); *Dixon v. Blanc*, 796 F. App'x 684, 688-89 (11th Cir. 2020); *Morrissey,* 626 F. App'x at 954;

*Kirkland v. Guardian Life Ins. Co. of Am.*, 352 F. App'x 293, 298 (11th Cir. 2009); *Brown v. Hillsborough Cty. Sheriff's Office*, 342 F. App'x 552, 554 (11th Cir. 2009); *Smith v. Sch. Bd.*, 487 F.3d 1361, 1366-67 (11th Cir. 2007).

Thus, this Court has repeatedly rebuffed attempts by defendants to add defenses to their Answers[2] after the deadline set forth in the Scheduling Order when the defendants either: (1) knew about the facts supporting the defenses before the deadline for amending pleadings or (2) made no attempt to demonstrate "good cause" for the untimely amendment. *E.g., Universal Physician Servs., LLC*, 842 F. App'x at 355; *Green Island Holdings, LLC*, 521 F. App'x at 800-01; *Int'l Ship Repair & Marine Servs.*, 503 F. App'x at 682; *Valpak Direct Mktg. Sys.*, 349 F. App'x at 369-71; *Millennium Partners, L.P.*, 494 F.3d at 1298-99; *Saewitz*, 133 F. App'x at 699-700.

### b.  Defendant Did Not Amend Its Answer to Add the Personal Staff Defense by the Deadline Set in the Scheduling Order.

According to the Scheduling Order, the "time limits for . . . amending the pleadings . . . are otherwise as stated in the Federal Rules of Civil Procedure and this Court's Local Rules." (Doc. 58, p. 1). The District Court's Local Rules do not address the deadline for amending pleadings, but the Federal Rules allow a party to

---

[2] The District Court faulted Plaintiff for only identifying one Good Cause case by this Court that involves an affirmative defense. (Doc. 134, pp. 16-17). However, as shown above, this Court regularly upholds denial of defendants' untimely attempts to add affirmative defenses when they lack "good cause" for the late amendment. In any case, there is no reason why plaintiffs and defendants should be held to different standards.

amend its pleading once, as a matter of course, "21 days after serving it." Fed. R. Civ. P. 15(a)(1)(A). Here, Defendant's Answer to Plaintiff's First Amended Complaint was filed on March 24, 2021. (Doc. 53). Thus, the deadline for amendments was 21 days later – **April 14, 2021**.

Here, Defendant did not move to amend its Answer by the required deadline. In fact, Defendant neither moved to amend the Scheduling Order nor moved to amend its Answer! The first time Defendant even notified the District Court and Plaintiff of its intent to use the Personal Staff defense in this litigation was in an unrelated hearing on March 14, 2022. (Doc. 128, p. 7). This was <u>11 months</u> after the deadline for amendments set forth in the Scheduling Order.

### c. Defendant Has Not Demonstrated – or Attempted to Demonstrate – Good Cause for an Untimely Amendment.

Far from demonstrating "good cause" for an amendment adding the Personal Staff defense, Defendant has not even asked for the amendment. Because Defendant has made no attempt to argue it had "good cause" for the untimely amendment, this Court's settled precedent requires the amendment be denied. *E.g., Universal Physician Servs., LLC*, 842 F. App'x at 355; *Morrissey,* 626 F. App'x at 954; *Smith*, 487 F.3d at 1366-67.

But, even if one were to liberally construe the announcement in a hearing as a backhanded motion to amend, Defendant has not demonstrated good cause for the amendment. Defendant does not argue that it did not or could not have known

about the information underlying the Personal Staff Exemption before the deadline to amend.[3] Indeed, how could it? The Personal Staff Exemption exclusively involves facts regarding the nature of Plaintiff's working relationship with Howard and of his authority over her. *Milliones v. Fulton Cty. Gov't*, No. 1:12-CV-3321-TWT-ECS, 2013 U.S. Dist. LEXIS 79798, at *9-10 (N.D. Ga. Apr. 30, 2013). This is all information that would have been within Defendant's knowledge from the beginning.

The District Court erred in failing to consider Defendant's clear lack of "good cause."

## III. THE DISTRICT COURT ERRED BY APPLYING INAPPLICABLE PRECEDENT.

As at least one district court has noted, this Court "has adopted two, seemingly incompatible approaches to untimely, affirmative defenses" in two long-running lines of cases. *Shaneyfelt v. REC I/Blue Springs Ltd. P'ship*, Civil Action No. CV-11-S-4366-NE, 2013 U.S. Dist. LEXIS 31308, at *39-40 (N.D. Ala. Mar. 7, 2013). The Good Cause line (set forth above) <u>requires</u> the defendant asserting an untimely defense to prove "good cause" and <u>precludes</u> adding the defense unless "the schedule <u>cannot</u> be met despite the diligence of the party seeking the

---

[3] At most, Defendant's counsel told the District Court during oral argument that the Exemption "came to his attention when he began drafting the summary judgment motion in February or March." (Doc. 128, p. 7). But this is not the same as saying new information came to light that demonstrated the availability of the Exemption.

extension." *Id*. at *40 (emphasis in original) (internal quotations omitted). The other line – the Prejudice line – allows a defendant to assert an unpled defense if the plaintiff receives notice of the defense by some means other than the pleadings and is not prejudiced by it. *Id*. at *41. "Neither line of cases has expressly overruled the other." *Id*. at *43.

The District Court applied the Prejudice line and rejected the Good Cause line. (Doc. 134, pp. 16-18). This is error for several reasons.

> **a. The Good Cause & Prejudice Lines Do Not Actually Conflict and Address Different Issues. Only the Good Cause Line Applies to This Case.**

> > **i. The Good Cause & Prejudice Lines Do Not Conflict. "Prejudice" is a Subset of the "Good Cause" Inquiry.**

There is a reason why this Court has allowed these two seemingly-conflicting lines of precedent to stand alongside each other for decades[4] – they are addressing different issues and do not conflict. The Prejudice line <u>does not</u> address "good cause", but the Good Cause line <u>does</u> incorporate a place for "prejudice" in its analysis.

First, none of the Eleventh Circuit Prejudice cases identified by the District Court and Defendant below – *Aponte v. Brown & Brown of Fla., Inc.*, 806 F. App'x

---

[4] The earliest known case in the Good Cause line is *Sosa v. Airprint Sys.*, 133 F.3d 1417 (11th Cir. 1998) and this Court has upheld that line as recently as two months ago in *Watkins v. Azael*, No. 22-11648, 2023 U.S. App. LEXIS 17331 (11th Cir. July 10, 2023). The earliest known Prejudice case is *Hassan v. United States Postal Serv.*, 842 F.2d 260 (11th Cir. 1988) and Plaintiff has found cases continuing that line as recently as 2021 in *First Nat'l Bank of Oneida, N.A. v. Brandt*, 851 F. App'x 904 (11th Cir. 2021).

824 (11th Cir. 2020), *Grant v. Preferred Research, Inc.*, 885 F.2d 795 (11th Cir. 1989), and *Hassan v. United States Postal Serv.*, 842 F.2d 260 (11th Cir. 1988) – includes any analysis (or even any mention) of Scheduling Orders, "good cause", or Rule 16(b). Plaintiff has diligently searched this Court's cases and has not found any cases applying the Prejudice standard that even acknowledged the "good cause" inquiry.

Why not? Because "prejudice" is the 2nd step of the inquiry! Under the Good Cause precedent, "prejudice" only becomes relevant once the court has determined "good cause" exists!

Recall that the inquiry for determining whether amendments (sought <u>after</u> the Scheduling Order's deadline) are allowed is a two-step analysis. <u>First,</u> the court must determine whether the party seeking to add a claim or defense has demonstrated "good cause" for the untimely amendment under Rule 16(b). <u>Only then</u> does the court consider whether "justice so requires" the amendment under Rule 15(a). *MidAmerica C2L Inc. v. Siemens Energy Inc.*, No. 20-11266, 2023 U.S. App. LEXIS 7690, at *42-43 (11th Cir. Mar. 31, 2023). "[U]ndue prejudice to the [opposing party]" is one of the factors considered in that <u>2nd step</u> ("when justice so requires") of the inquiry. *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1287 (11th Cir. 2003); *Tom Hussey Photography, LLC v. Reaves*, Civil Action No. 22-20416-Civ, 2022 U.S. Dist. LEXIS 170965, at *3-4 (S.D. Fla. Sep. 21, 2022).

"Prejudice" only becomes relevant once "good cause" is found. Therefore, the District Court erred by overlooking the "good cause" inquiry and skipping straight to the question of "prejudice."

> ### ii. Requiring a Finding of "Good Cause" Before Addressing "Prejudice" Preserves the Courts' Inherent Power to Manage Their Docket.

Defendant will argue the Prejudice line should nevertheless apply in order to advance the policy of "avoid[ing] hypertechnicality in pleading requirements and focus[ing], instead, on enforcing the actual purpose of" Rule 8(c), the pleading rule – which is "to guarantee that the opposing party has notice of any issue that may be raised at trial so that he or she is prepared to properly litigate it." *Hassan*, 842 F.2d at 263. If the only issue at stake were enforcing the purpose of the pleading requirement, then this policy would control and the Prejudice standard would apply. But Defendant's argument ignores a crucial fact: Defendant is seeking to add a new defense <u>after the deadline set by the District Court in its Scheduling Order</u>.

Therefore, there is another important policy at stake here: upholding the federal courts' inherent power to manage their own dockets. It is axiomatic that courts have inherent authority to control their dockets. *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). Part of that authority is the power to issue Scheduling Orders that set the deadlines by which parties may,

*inter alia*, amend their pleadings. *See Pinero v. Corp. Courts at Miami Lakes, Inc.*, 389 F. App'x 886, 888-89 (11th Cir. 2010) (upholding the district court's enforcement of its Scheduling Order as part of the courts' "'inherent power' . . . to manage their own affairs so as to achieve the orderly and expeditious disposition of cases"). For this power to mean anything, the deadlines set by the court in its Scheduling Order must be respected. *See Moyer v. Walt Disney World Co.*, 146 F. Supp. 2d 1249, 1252 (M.D. Fla. 2000) (a "Scheduling Order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.") (internal quotations omitted). This is why this Court requires a party to prove "good cause" before it can avail itself of Rule 15(a)'s lenient "when justice so requires" (that is, "prejudice") standard for amendments. *Sosa v. Airprint Sys.*, 133 F.3d 1417, 1419 (11th Cir. 1998) ("[i]f we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless").

In sum, requiring proof of "good cause" <u>first</u> preserves the court's inherent power to manage its docket. <u>If</u> the party seeking untimely amendment proves "good cause" for its delay, then the court's authority over its docket has been preserved and the court may move on to addressing concerns of "hypertechnical" pleading requirements under the Prejudice standard. But, since Defendant has not shown "good cause" in this case, it should not be allowed to use the lenient "prejudice" standard.

### b. The District Court Erred in Applying the Earliest Case Rule Because the Good Cause & Prejudice Lines Do Not Conflict.

The District Court decided that the Prejudice line controls under the Earliest Case Rule. Under that Rule, "when circuit authority <u>is in conflict</u>, a panel should look to the line of authority containing the earliest case, because a decision of a prior panel cannot be overturned by a later panel." *Walker v. Mortham*, 158 F.3d 1177, 1188 (11th Cir. 1998) (emphasis added). Of course, this Rule only applies when the circuit authority "is in conflict." For instance, in *Walker*, the different lines of cases identified different *prima facie* requirements for proving discriminatory failure to hire/promote – and specifically conflicted regarding whether a plaintiff must prove the person ultimately hired/promoted possessed "equal or lesser qualifications" to the plaintiff. *Id.* at 1186-88. In contrast, if two cases do <u>not</u> conflict, then a later decision does not "overturn" the prior decision.

As shown above, the Good Cause and Prejudice lines do <u>not</u> conflict. The Good Cause line addresses the first step of the inquiry and <u>only</u> applies when a party seeks amendment <u>after</u> the Scheduling Order deadline. If a Scheduling Order is not at issue – or if a party has proven "good cause" for the untimely amendment – then the Prejudice line applies. The District Court, therefore, erred in applying the Earliest Case Rule.

32

### c. The District Court Erred in Adopting a Rule That Rewards Dilatory Behavior.

The District Court's approach rewards dilatory behavior by placing a defendant who never even attempts to amend its Answer in a better position than a defendant who at least attempts to follow through with amending its Answer. To wit: A defendant that appropriately, if untimely, attempts to amend its answer to add a previously-unpled defense must prove its diligence and good cause to allow the amendment. *Shaneyfelt v. REC I/Blue Springs Ltd. P'ship*, Civil Action No. CV-11-S-4366-NE, 2013 U.S. Dist. LEXIS 31308, at *40 (N.D. Ala. Mar. 7, 2013). In contrast, a defendant that simply blows off its responsibility and argues an affirmative defense that it never <u>attempted</u> to add to its Answer is rewarded! The burden of proving "good cause" is taken off the defendant and the burden of proving "prejudice" is placed on the plaintiff. *Id*. at *41.

Such a rule encourages dilatory behavior, renders the Scheduling Order a "frivolous piece of paper", and renders pleading requirements meaningless. It is error to adopt it.

### d. The District Court Erred in Adopting a Rule That Arbitrarily Treats Defendants Better Than Plaintiffs.

The demanding Good Cause standard applies to both plaintiffs and defendants who seek untimely amendments. *See e.g., Saewitz v. Lexington Ins. Co.*, 133 F. App'x 695, 699-700 (11th Cir. 2005) (defendant); *Sosa*, 133 F.3d at 1419

(plaintiff). In contrast, the lenient Prejudice standard may only be used by defendants. *Hassan*, 842 F.2d at 263 ("when the failure to raise an <u>affirmative defense</u> does not prejudice the <u>plaintiff</u>, it is not error for the trial court to hear evidence on the issue") (emphasis added). Applying the Prejudice line to this and similar cases would create an unfair 2-tiered system based merely on the parties' status as plaintiff and defendant.

In such a system, if defendants want to belatedly assert an unpled defense, the default is that they would be allowed to do so <u>unless</u> it is proven that the plaintiffs are prejudiced. In practice, <u>plaintiffs would bear the burden</u> of proving they were prejudiced by the amendment. *Shaneyfelt*, 2013 U.S. Dist. LEXIS 31308 at *41. In contrast, if plaintiffs want to belatedly assert an unpled claim, the default is that they are <u>not</u> allowed to do so. <u>Plaintiffs would still bear the burden</u>...this time of proving they have "good cause" for the belated amendment. *Id*. at *39-40.

There is no principled reason for this unequal distribution of burdens. It is purely arbitrary. The fairer approach would be to require <u>any</u> party seeking to assert an unpled claim or defense after the Scheduling Order's deadline to demonstrate "good cause" for allowing such amendment.

### e. To Allow Defendants Who Cannot Prove "Good Cause" to Assert Unpled Defenses Would Be Error Because It Renders Scheduling Orders Meaningless.

In *Sanders v. M&M Waste, Inc.*, No. 1:08-CV-3856-CC, 2010 U.S. Dist. LEXIS 152230 (N.D. Ga. Sep. 27, 2010), the district court denied a defendant's motion to amend to add a defense after the Scheduling Order deadline because the defendant had not proven good cause. *Id*. at *1-5. Nevertheless, the district court then allowed the defendant to assert the defense (without amendment) on the grounds that the plaintiff would not be prejudiced. *Id*. at *9-10.

This approach effectively eliminates Rule 16(b)'s "good cause" requirement. Even if a defendant fails to meet that standard, its failure would have no practical effect on its ability to assert the unpled defense. Nor would its violation of the Scheduling Order. This Court has already warned against an approach that "would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Sosa*, 133 F.3d at 1419. Allowing Defendant to assert an unpled defense without proving "good cause" would have precisely that negative effect.

### IV. THE DISTRICT COURT ERRED BY FINDING THAT ALLOWING DEFENDANT TO ASSERT AN UNPLED DEFENSE – MONTHS AFTER DISCOVERY HAD CLOSED – DID NOT PREJUDICE PLAINTIFF.

Because Defendant has not proven "good cause", the question whether Plaintiff was "prejudiced" by the untimely assertion of the Personal Staff

Exemption is immaterial. However, if the Court considers prejudice, Plaintiff <u>was</u> prejudiced because she was denied the opportunity to conduct purposeful discovery on the Exemption.

Neither party was thinking about or addressing the Personal Staff Exemption during discovery. Defendant's counsel told the Court that the Exemption did not occur to him until he was drafting the Summary Judgment Motion. (Doc. 128, p. 7 & pp. 7-8, n.4). And Plaintiff was not put on notice that the Exemption was at issue until the March 14, 2022 hearing – approximately two months after the close of discovery. (Doc. 128, pp. 7-9). Nevertheless, the District Court found that Plaintiff was not prejudiced because some of the information obtained in discovery happened to overlap with the Personal Staff factors. (Doc. 128, pp. 10-11; Doc. 134, pp. 19-20). But this accidental overlap is not enough to show there was no prejudice because Plaintiff never had the opportunity to conduct discovery intentionally directed toward this defense.

### a. Plaintiff Was Prejudiced Because She Was Denied the Opportunity to Conduct Discovery Purposefully Directed at the Personal Staff Exemption While Discovery Was Open.

"The overall purpose of discovery under the Federal Rules is to require the disclosure of <u>all</u> relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a <u>full and accurate understanding</u> of the true facts, and therefore embody a fair and just result." *Oliver v. City of Orlando*,

No. 6:06-cv-1671-Orl-31DAB, 2007 U.S. Dist. LEXIS 80552, at *4 (M.D. Fla. Oct. 31, 2007) (citing *United States v. Proctor & Gamble Co.,* 356 U.S. 677, 682 (1958)) (emphasis added). Without knowing what the claims or defenses are, a party cannot obtain a "full and accurate understanding of the true facts" because it cannot know which "true facts" to obtain.

That principle animated this Court's decision in *Reese v. Herbert*, 527 F.3d 1253 (11th Cir. 2008). In *Reese*, the plaintiff moved to amend his complaint to add a new claim seven weeks after the close of discovery. *Id*. at 1263. This Court upheld denial of that amendment, holding "[b]ecause the period for discovery had expired, granting the motion would have caused the defendants undue prejudice, as they would not have been able to conduct further discovery with respect to the claim the proposed amendment asserted." *Id*. Notably, this Court did <u>not</u> examine whether the discovery that had already occurred overlapped with the discovery necessary to address the new claim. The new claim was asserted after the close of discovery, and that alone was enough for this Court to find prejudice. *Id*.

Other decisions by this Court and district courts within this Circuit have followed the same reasoning. *See Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 823 (11th Cir. 2009) ("an amended complaint would have prejudiced [defendants] because the discovery period had expired"); *Regions Bank v. Kaplan*, No. 8:16-cv-2867-T-23AAS, 2017 U.S. Dist. LEXIS 234113, at *8 (M.D. Fla. Sep.

25, 2017) ("The eleventh hour addition of this affirmative defense would certainly prejudice Regions as discovery is now closed."). Courts have even found prejudice when discovery was not over, but there was still insufficient time to explore the new claim or defense. *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1287 (11th Cir. 2003) ("[a]mending [plaintiff's] complaint on the last day of the already extended discovery period would have . . . likely prejudiced [defendant]"); *Yellow Pages Photos, Inc. v. Yellow Book USA, Inc.*, No. 8:08-cv-930-T-23EAJ, 2009 U.S. Dist. LEXIS 141402, at *3 (M.D. Fla. Aug. 14, 2009) ("Only a month remains before the close of discovery, and an amendment would allow the plaintiff only a limited opportunity to seek discovery concerning the defense. An amendment at this stage of the case prejudices the plaintiff and rewards the defendants' undue delay.").

The reasoning of these cases is squarely on point. Defendant didn't even identify the Personal Staff Exemption as an issue until approximately two months after the close of discovery.[5] (Doc. 128, pp. 7-9). Moreover, Defendant didn't explain the basis for this Exemption until its first Summary Judgment Motion nearly a month later. (Doc. 96; Doc. 128, p. 17). Because Plaintiff never had the

---

[5] In a footnote, the District Court further found Plaintiff was not prejudiced because she did not ask to reopen discovery upon learning about Defendant's intent to assert the Exemption after the close of discovery. (Doc. 134, p. 20 n.12). But this Court did not require the opposing parties to reopen discovery before finding they were prejudiced *Reese*, *Ray*, or *Maynard*. Indeed, at least one district court has reasoned that being forced to reopen discovery <u>was itself prejudice</u>. *Whiteside v. Infinity Cas. Ins. Co.*, No. 4:07-CV-87 (CDL), 2008 U.S. Dist. LEXIS 60512, at *17-18 (M.D. Ga. Aug. 8, 2008).

chance to conduct discovery specifically geared toward the Exemption, she suffered prejudice.

The District Court cited *Grant v. Preferred Research, Inc.*, 885 F.2d 795 (11th Cir. 1989) to hold that assertion of a defense after the close of discovery does not prejudice the plaintiff. (Doc. 134, pp. 20-21) But there is a crucial difference in *Grant*: in that case, the "plaintiff [did] not assert any prejudice from the lateness of the pleading." *Grant*, 885 F.2d at 798. Plaintiff here <u>does</u> assert prejudice from being denied the opportunity to conduct discovery for the Exemption.

The District Court erred in finding Plaintiff was not prejudiced by allowing Defendant to belatedly assert the Personal Staff defense.

**b. The District Court Erred in Finding Plaintiff Had Not Shown What Additional Discovery She Would Have Performed (if the Personal Staff Exemption Were Timely Pled) and, Therefore, Could Not Show Prejudice.**

In addition to pointing to some accidentally-overlapping discovery, the District Court also concluded that Plaintiff was not prejudiced because it said Plaintiff's counsel could not identify (at oral argument) specific discovery he would have performed if the Exemption were timely pled. (Doc. 128, pp. 12-15; Doc. 134, p. 19). This isn't true; Plaintiff can and will identify such lost discovery opportunities in this section. But the larger point is that the "prejudice" inquiry does not require proof to that level of specificity. None of the above cases in which this Court found prejudice required the opposing parties to identify the precise

discovery strategy they would have taken had the other party properly pled its claim or defense. *Ray*, 327 F. App'x at 823; *Reese*, 527 F.3d at 1263; *Maynard*, 342 F.3d at 1287. The point isn't whether Plaintiff's counsel could identify a hypothetical discovery strategy at oral argument. The point is that Plaintiff never had the opportunity to purposefully develop such a strategy to uncover evidence about the Exemption during the normal course of discovery.

Nevertheless, Plaintiff _can_ identify certain areas of discovery that her counsel could have explored if the Personal Staff Exemption had been timely pled. For instance, regarding the third (whether Younge represented Howard in the eyes of the public) and sixth ("actual intimacy of the working relationship") Personal Staff factors, Plaintiff has testified that – after she told Howard she was pregnant – he stopped meeting with her and removed her duties re: meeting with the public. If the Exemption had been timely pled, Plaintiff could have obtained discovery from other witnesses to prove the degree to which her job changed – and the "intimacy" of her working relationship with Howard was lost – after she announced her pregnancy. This is crucial to proving the inapplicability of the Personal Staff Exemption by the time Younge was fired.

Moreover, Plaintiff could have conducted further discovery into the third factor (representing Howard in the eyes of the public). If Plaintiff's counsel had known the Personal Staff Exemption was at issue during discovery, he could have

40

gathered discovery on specific members of the public who had meetings with both Howard and Younge, subpoenaed those members, and questioned them whether – with Howard in the room – they still perceived Younge as speaking for Howard. That Plaintiff's counsel could not identify such members on the spot at oral argument is not, as the Magistrate Judge asserted, proof that such discovery would be "a mere fishing expedition." (Doc. 128, p. 14). It is further evidence that Plaintiff was deprived of the opportunity to conduct the complex, multi-step discovery that the Exemption requires.

Finally, regarding the first Personal Staff factor – "plenary power of appointment and removal" – there are regulations that limited Howard's powers to appoint (and, possibly, to remove) Younge. (Doc. 128, pp. 14-15). But Plaintiff had no opportunity to conduct discovery about those regulations and how they limited Howard's powers of appointment and removal. Even the Magistrate Judge acknowledged it would have been "worthwhile for Younge to take discovery pertaining to the application of the rules that apply to Howard's appointment and removal of staff members." (Doc. 128, p. 15).

Plaintiff identified many of these unexplored avenues of discovery in her arguments before the District Court. (Doc. 132, pp. 16-19). But the District Court entirely failed to address these avenues, instead finding in a single sentence that Plaintiff's counsel was unable to identify "any specific discovery" that he "would

have sought but did not." (Doc. 134, p. 19). This is another error by the District Court.

**V.  THE DISTRICT COURT ERRED IN ITS ANALYSIS OF DEFENDANT'S PERSONAL STAFF DEFENSE BY REPEATEDLY IGNORING THE SUMMARY JUDGMENT STANDARD.**

For the reasons set forth above, the District Court erred in considering the Personal Staff Exemption. If this Court finds otherwise, however, the District Court also erred in its analysis of the Exemption, particularly in applying the summary judgment standard to the Exemption.

**a. The Personal Staff Exemption Must Be Narrowly Construed, Especially at Summary Judgment.**

The Personal Staff Exemption excludes the "personal staff" of an elected official from the anti-discrimination protections of Title VII. *Milliones v. Fulton Cty. Gov't*, No. 1:12-CV-3321-TWT-ECS, 2013 U.S. Dist. LEXIS 79798, at *6-8 (N.D. Ga. Apr. 30, 2013). Although the term "personal staff" is not defined in Title VII, courts generally analyze the following factors to determine whether the Exemption applies:

> (1) Whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the

actual intimacy of the working relationship between the elected official and the person filling the position.

*Laurie v. Ala. Court of Criminal Appeals*, 88 F. Supp. 2d 1334, 1338 (M.D. Ala. 2000), *aff'd*, 256 F.3d 1266 (11th Cir. 2001) (*quoting Teneyuca v. Bexar Cty.*, 767 F.2d 148, 151 (5th Cir. 1985)).

In analyzing the Personal Staff Exemption, it must be remembered both that Defendant bears the burden of proof[6] and that the defense is construed narrowly against the employer. *EEOC v. Reno*, 758 F.2d 581, 584 (11th Cir. 1985). "Courts have construed the personal staff exemption narrowly . . . because 'Congress intended . . . the . . . exception to apply only to those individuals who are in highly intimate and sensitive positions of responsibility on the staff of the elected official.'" *Milliones*, 2013 U.S. Dist. LEXIS 79798 at *8 (*quoting Teneyuca*, 767 F.2d at 152).

Because of this narrow construction, courts are reluctant to decide this issue for the jury. *Id*. at *10 ("courts rarely decide the personal staff exemption issue even at the summary judgment stage, '[s]ince this determination demands extensive factual analysis . . . '"). *See also Teneyuca*, 767 F.2d at 152 (noting that the determination of the "personal staff" exception "does not lend itself well to disposition by summary judgment").

---

[6] As it does for all affirmative defenses. *See e.g., Jean v. Dorelien*, 431 F.3d 776, 781 (11th Cir. 2005).

This reluctance to grant summary judgment on the Personal Staff Exemption makes sense, given both the narrow construction of the Exemption and the rule that, at summary judgment, if a reasonable jury <u>could</u> find for the non-movant, summary judgment <u>must</u> be denied. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) ("The [plaintiff's] burden at summary judgment . . . [is] to present sufficient evidence that would permit (not require) a jury to find that he was the victim of unlawful discrimination and retaliation.").

### b. Overview: The Evidence Regarding the Personal Staff Factors is Not So One-Sided As to Merit Summary Judgment.

As noted above, the District Court found summary judgment should be <u>denied</u> if one considers the substantive facts. (Doc 128, pp. 46-47; Doc. 134, pp. 21-22 n.13). However, the District Court granted summary judgment based on the Personal Staff Exemption. Specifically, it concluded that 5 out of the 6 factors strongly favor classifying Younge as Howard's personal staff. (Doc. 134, pp. 20-21, 32). In fact, as shown below, 3 of the 6 of the factors weigh against applying the Personal Staff Exemption.[7] Given this mixed record and the reluctance of the courts to grant summary judgment on the Personal Staff Exemption, summary judgment should be denied and this contentious matter referred to the jury.

---

[7] Plaintiff originally argued below that 2 of the factors weighed against applying the Exemption, 2 were in favor, and 2 were neutral. (Doc. 132, pp. 21-22). After re-reviewing the evidence and the District Court's analysis, Plaintiff revises her position to hold that 3 of the factors weigh against applying the Exemption and 3 are in favor. This leads to the same result.

**c. Regarding Factor 6 ("Actual Intimacy of the Working Relationship"): Any Intimacy in Younge's Working Relationship with Howard Was Eliminated After Younge Told Howard She Was Pregnant.**

Case law indicates that the 6th factor – the "actual intimacy of the working relationship" is "the most important factor." *Laurie*, 88 F. Supp. 2d at 1338, *aff'd*, 256 F.3d 1266. This factor **weighs against applying the Exemption**.

> **i. Howard Ended His Intimate Working Relationship with Younge After Learning She Was Pregnant. No Such Intimate Relationship Existed at the Time Younge Was Fired.**

The District Court – focusing on the testimony showing that Younge and Howard initially worked closely together – concluded that this factor "makes it abundantly clear that the 'personal staff' exemption applies in this case." (Doc. 128, pp. 42-43). Not so. And its failure to properly analyze this factor evinces a larger failure to properly apply the summary judgment standard.

Specifically, the District Court wrongly ignores the fact that the intimacy of Younge's working relationship with Howard radically changed after she told him she was pregnant. Instead, the District Court dismisses this fact by saying Younge and Howard still worked closely together for the "majority" of Younge's employment with Defendant. (Doc. 128, p. 43; Doc. 134, p. 23). But this misses the point, as shown by reference to persuasive Fourth Circuit caselaw.

In *Cromer v. Brown*, 88 F.3d 1315 (4th Cir. 1996), the plaintiff was demoted by the (elected) sheriff from captain to lieutenant, after which he went from a close working relationship with the sheriff to rarely seeing him. *Id*. at 1319-20, 1328-29. The Fourth Circuit found that, when the plaintiff was a captain, his close working relationship with the sheriff (among other things) rendered him a member of the sheriff's personal staff. *Id*. at 1324. However, when the plaintiff was demoted to lieutenant, he rarely saw the sheriff (at most, once a month in group meetings), and thus the Court found he was no longer a member of the sheriff's personal staff. *Id*. at 1323-24, 1328-29.

In the same way, after Younge told Howard of her pregnancy, he stopped meeting with her, excluded her from previously-scheduled meetings, and dismissed her when she tried to talk to him. (Doc. 93 76:19-77:15, 80:1-81:13, 105:12-107:5; Doc. 111-2 ¶¶ 23, 30-31). This radical change in the working relationship constitutes a *de facto* demotion. Like the plaintiff in *Cromer*, Younge no longer worked closely with the elected official by the time she was terminated. Even if she had been "personal staff" before, now she wasn't. That the District Court dismissed this fact is evidence of its failure to view the evidence in the light most favorable to the nonmovant. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013).

It is also a failure to narrowly construe the exemption. *EEOC v. Reno*, 758 F.2d 581, 584 (11th Cir. 1985). In the context of the FLSA, this Court has held that narrow constructions of exemptions means applying them "only to those clearly and unmistakably within the terms and spirit of the exemption." *Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1269 (11th Cir. 2008). Here, narrowly construing the Personal Staff Exemption means not applying it to those who – because of a change in their duties – <u>no longer</u> fall within the Exemption. Thus, *Cromer*'s reasoning is persuasive and applicable to this case. The District Court erred in holding otherwise.

> ## ii. The District Court Erred in Ignoring the Change in Younge's Working Relationship with Howard Because Her Job Title Did Not Change.

The District Court attempted to distinguish *Cromer* in two ways. First, it noted that the plaintiff in *Cromer* changed job titles when he was demoted, whereas Younge had the same job title throughout her employment. (Doc. 134, pp. 23-24). But this is irrelevant. None of the factors used to determine the applicability of the Personal Staff Exemption involve the worker's job title; they all involve the worker's duties, her relationship with the elected official, and the elected official's control over her position. *See Teneyuca v. Bexar Cty.*, 767 F.2d 148, 151 (5th Cir. 1985); *Laurie*, 88 F. Supp. 2d at 1338. As one district court persuasively explained, it is not "appropriate to apply [the Personal Staff

Exemption] . . . to any plaintiff whose job title suggests that he or she is the assistant, secretary, or even confidential secretary to an elected official. Rather, to answer the question of whether Plaintiff was 'personal staff,' this Court – like many before it – looks to the factors enumerated in *Teneyuca*." *Croci v. Town of Haverstraw*, 175 F. Supp. 3d 373, 383 (S.D.N.Y. 2016).

### iii. The District Court Erred in Ignoring the Change in Younge's Working Relationship with Howard Because It May Have Been a "Forerunner" of Termination. The District Court's Interpretation Ignores the Purpose of the Exemption.

The District Court admits "there is evidence that Howard began treating Plaintiff differently after she announced that she was pregnant, such as excluding her from meetings, reassigning some of her duties, and limiting the usual access she had to Howard." (Doc. 134, p. 24). But – even though that very "access to Howard" was the basis for finding Younge was "personal staff" under the Sixth factor – the District Court said these changes do "not change the fact that Plaintiff remained a member of Howard's personal staff." *Id*. Although it had just noted that the change in Younge's duties and working relationship with Howard followed her pregnancy announcement, the District Court characterized these changes as merely "los[ing] the trust of Howard prior to her termination." *Id*. Noting that "loss of trust and intimacy" is "the forerunner of most terminations," the District Court worried

that adopting the reasoning of *Cromer* would "give the exclusion developed by Congress no meaning[.]" *Id.*

But the District Court assumes too much. Not every termination is preceded by a removal of all duties that support the application of the Personal Staff Exemption.

The District Court's interpretation also misses that the Personal Staff Exemption only applies because "positions of confidentiality, policy-making, or acting and speaking on behalf of the [elected official] are truly different from other kinds of employment." *Shahar v. Bowers*, 114 F.3d 1097, 1104 n.15 (11th Cir. 1997). Once someone is no longer in the position of "confidentiality, policy-making, or acting and speaking on behalf of the" elected official, the reason for excluding them from the (otherwise broad and important) antidiscrimination protections of Title VII vanishes. This is what it means to "narrowly construe" an exemption – to apply it "only to those clearly and unmistakably within the terms and spirit of the exemption." *Morgan*, 551 F.3d at 1269. The District Court is concerned that applying the reasoning of *Cromer* would eliminate the Exemption. In fact, the opposite is true. The District Court's interpretation would broaden a narrowly construed Exemption to situations where its application is not justified.

In addition to ignoring the purpose of the Exemption, the District Court's interpretation opens up the Exemption to abuse, just because a worker <u>used to be</u>

exempt. Such an interpretation could allow an unscrupulous employer to temporarily provide Personal Staff-level duties to multiple employees and then remove them, knowing he would be free to discriminate against them as he sees fit, without repercussions from the Civil Rights Act.

If this danger seems far-fetched, consider what happened in this case: What triggered the "loss of trust and intimacy" that the District Court is so concerned with protecting? As the District Court noted, these changes followed Younge's announcement of her pregnancy. (Doc. 134, p. 24). And the District Court also found there is sufficient evidence for a reasonable jury to find Howard terminated Younge because of her pregnancy. (Doc 128, pp. 46-47; Doc. 134, pp. 21-22 n.13). In other words, viewing the evidence in the light most favorable to the nonmovant – *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) – Howard's "loss of trust and intimacy" in Younge was triggered by his discriminatory animus against pregnancy. The "forerunner of termination" was discrimination. Needless to say, this is not what the Personal Staff Exemption was designed to protect. *Shahar*, 114 F.3d at 1104 n.15.

The question is when should the applicability of the Exemption be evaluated? Should it be analyzed as of the time of the adverse action, or as of some earlier time? *Cromer* persuasively shows that it should be evaluated as of the time of the termination. The District Court's interpretation would apparently evaluate

the Exemption as of some (unspecified) earlier point in time. There is no reason Defendant should have the protection of such an odd rule, especially when the employer eliminated Plaintiff's "personal staff" duties <u>because</u> of her protected status.

### d. Regarding Factor 1 ("Plenary Powers of Appointment and Removal"): Howard's Powers of Appointment Were Not Plenary.

This factor **weighs against applying the Exemption**. As the District Court acknowledged, Howard did not have "plenary" powers of appointment. Once he selected a candidate, "the actual hiring of the candidate . . . was subject to local laws or the authorization of the governing authority of Fulton County." (Doc. 128, p. 33). Howard's job offer to Younge was contingent upon approval by the County. (Doc. 134, p. 26).

"Plenary" is defined as, "complete in every respect: absolute, unqualified."[8] It is undisputed that Fulton County limited (a.k.a. "qualified") Howard's power to appoint workers to Younge's position. So, his power to appoint was not "plenary."

Nevertheless, the District Court held this factor is neutral because "Howard had complete and absolute power to remove employees but not plenary power to appoint individuals for employment." (Doc. 134, p. 27). But the factor is not phrased as "whether the elected official has plenary powers of appointment <u>or</u>

---

[8] Merriam Webster Online Dictionary, https://www.merriam-webster.com/dictionary/plenary. (Accessed September 26, 2023).

removal," such that plenary power in <u>either</u> area qualifies. It is phrased as "plenary powers of appointment <u>and</u> removal." *Teneyuca v. Bexar Cty.*, 767 F.2d 148, 151 (5th Cir. 1985) (emphasis added).

The exemption must be narrowly construed. *EEOC v. Reno*, 758 F.2d 581, 584 (11th Cir. 1985). Therefore, the "and" in the first factor must be given its natural meaning. Even if Howard has plenary power of removal, he did not have plenary powers of appointment <u>and</u> removal.

### e. Regarding Factor 3 ("Represents the Elected Official in the Eyes of the Public"): Howard Represented Himself to the Public and Ultimately Removed Younge's Public-Facing Duties.

This factor **weighs against application of the Exemption**.

#### i. Younge Did Not Represent Howard to the Public. Howard Represented Himself to the Public.

The District Court held this factor weighs in favor of applying the Exemption because Younge's duties included meeting with various members of the public. (Doc. 134, p. 31). But this misses the point. Whenever Younge met with members of the public, Howard was also present. (Doc. 93 34:12-35:3, 36:24-37:25; Doc. 111-2 ¶ 19). Younge did not run any of these meetings. (Doc. 93 36:24-37:25). In other words, Howard went out of his way to ensure that no one was going to be the face of Paul Howard in the eyes of the public <u>other than Paul Howard</u>. However, the Magistrate Judge dismissed this evidence because Younge "participated" in the meetings and held that it's "conceivable" that Howard would

have been present at the meetings and the public still viewed Younge as representative of Howard at that meeting, too. (Doc. 128, p. 40).

This is a clear failure to follow the summary judgment standard. The point isn't what's "conceivable." The point, at summary judgment, is what the evidence shows when viewed in the light most favorable to the non-moving party. *Feliciano*, 707 F.3d at 1247. At summary judgment, the Court must make the inference that most favors the non-moving party. *See Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020) ("if a reasonable jury could make more than one inference from the facts, and one of those permissible inferences creates a genuine issue of material fact, a court cannot grant summary judgment. Rather, the court must hold a trial to get to the bottom of the matter."). In this case, that inference is that – because Howard was always present in meetings with the public – members of the public perceived Howard himself (not Younge) as representing him.

Because the District Court made the opposite inference without explanation, it erred. The District Court quoted this Court's *Shahar* decision that "a district attorney gets public credit for the good job done and impression made by his assistants and gets public criticism for the poor performance or impression made by his assistants." (Doc. 134, p. 31) (*quoting Shahar*, 114 F.3d at 1104). But this quote alone is not evidence and, more importantly, it does not serve to distinguish which employees of a district attorney are "personal staff." Arguably, the district

attorney is judged by the successes or failures of every low-level employee who somehow impacts the DA's public mission. But "[t]he entire staff of an elected official is not considered 'personal staff,' or else the word 'personal' would have no meaning." *Frazier v. Smith*, 12 F. Supp. 2d 1362, 1366 (S.D. Ga. 1998). Merely asserting that an employee's actions might reflect on the reputation of the DA's office does not help to identify "those individuals who are in highly intimate and sensitive positions of responsibility on the staff of the elected official." *Teneyuca*, 767 F.2d at 152.

> ii. **Once Howard Eliminated Younge's Public-Facing Duties – After Learning of Her Pregnancy – Younge Could Not Represent Him to the Public.**

Finally, the District Court errs in dismissing the fact that, after Younge told Howard she was pregnant, he began excluding her from meetings with the public and not allowing her to speak in the meetings she did attend. (Doc. 111-2 ¶ 23; Doc. 93 102:1-13). Even if Younge was personal staff earlier in her employment, the *de facto* demotion by the time of her termination rendered her no longer "personal staff." *Cf. Cromer v. Brown*, 88 F.3d 1315, 1323-24, 1328-29 (4th Cir. 1996). The District Court's failure to consider this evidence is yet another failure to view the evidence in the light most favorable to the nonmovant.

### f. Summary.

Even if the 2nd, 4th, and 5th factors weigh in favor of applying the Exemption, that simply means the factors are evenly split: 3 in favor and 3 against.

Remember that the Courts narrowly construe the Personal Staff Exemption and are generally reluctant to grant summary judgment on that fact-intensive defense. *Teneyuca*, 767 F.2d at 152; *Reno*, 758 F.2d at 584. Here, the even split among the factors – and the fact that the "most important" factor (actual intimacy) weighs against applying the Exemption – does not dictate overcoming that reluctance. The Personal Staff Exemption issue should be sent to the jury to decide.

## VI.    CONCLUSION

Defendant waived the Personal Staff defense because it did not plead that defense in its Answer and identified no "good cause" for untimely amending the Answer to include the defense. Plaintiff was prejudiced by not being able to conduct discovery on that defense. To the extent the defense is considered anyway, the evidence is mixed, and not so one-sided as to justify granting summary judgment and taking this issue away from the jury. Finally, as the District Court correctly noted, the evidence creates a genuine issue of pregnancy discrimination. For these reasons, the District Court's Summary Judgment Order should be reversed, and this matter remanded for a jury trial.

This 28th day of September 2023,

                                                              Respectfully submitted,

                                                              /s/ *Benjamin A. Stark*
                                                              Matthew C. Billips
                                                              Benjamin A. Stark
                                                              Counsel for Dr. Jasmine Younge

BARRETT & FARAHANY
P.O. Box 530092
Atlanta, GA 30353
(404) 214-0120
(404) 214-0125 (*facsimile*)
matt@justiceatwork.com
bstark@justiceatwork.com

*ATTORNEYS FOR APPELLANT*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify in accordance with FRAP 32(a)(7)(c) that this brief complies with the type-volume limitation specified in Rule 32(a)(7)(B). Specifically, it contains 12,973 words in the Brief.

*/s/ Benjamin A. Stark*
Benjamin A. Stark
Georgia Bar No. 601867

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 28, 2023, I electronically filed the foregoing ***Appellant's Initial Brief*** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

*/s/ Benjamin A. Stark*
Benjamin A. Stark
Georgia Bar No. 601867

*Attorney for Plaintiff-Appellant*
*Dr. Jasmine Younge*