# United States Court of Appeals

*for the*

# Eleventh Circuit

— • —

JASMINE YOUNGE,

*Plaintiff-Appellant*,

*v.*

FULTON JUDICIAL CIRCUIT DISTRICT ATTORNEY'S OFFICE, GEORGIA,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
CASE NO: 1:20-cv-00684
(Hon. William M. Ray, II)

## RESPONSE BRIEF OF APPELLEE

NOAH GREEN
HENEFELD & GREEN, P.C.
3017 Bolling Way N.E., Suite 229
Atlanta, Georgia 30305
Telephone (404) 841-1275
ngreen@henefeldgreen.com

*Counsel for Defendant-Appellee*

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE</u> <u>DISCLOSURE STATEMENT</u>

Defendant-Appellee Fulton Judicial Circuit District Attorney's Office, Georgia, pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, now files its Certificate of Interested Persons and Corporate Disclosure Statement:

1. Barrett & Farahany – Law Firm of Counsel to Plaintiff-Appellant

2. Billips, Matthew - Counsel to Plaintiff-Appellant

3. Farahany, Amanda A. – Counsel to Plaintiff-Appellant

4. Fulton Judicial Circuit District Attorney's Office, Georgia — Defendant-Appellee

5. Georgia Department of Administrative Services

6. Green, Noah – Counsel to Defendant-Appellee

7. Henefeld & Green, P.C. – Law Firm of Counsel to Defendant-Appellee

8. Henefeld, Paul – Counsel to Defendant-Appellee

9. Howard, Jr., Paul L. — Former District Attorney, Fulton Judicial Circuit

10. Ray, II, Honorable William M. — United States District Court Judge

11. Salinas, Honorable Catherine M. — United States Magistrate Court Judge

12. Stark, Benjamin — Counsel for Plaintiff

13. Willis, Fani T. — District Attorney, Atlanta Judicial Circuit

14. Younge, Jasmine — Plaintiff-Appellant

No publicly traded company or corporation has an interest in the outcome of the case or appeal.

Respectfully submitted this 16th day of January 2024.

HENEFELD & GREEN, P.C.

/s/ Noah Green
Noah Green
Georgia Bar No. 468138
*Attorney for Appellee*

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Defendant/Appellee does not request oral argument as the dispositive issues have been authoritatively decided by this Court and the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ...................................................................................................I

STATEMENT REGARDING ORAL ARGUMENT ...................................................III

TABLE OF CONTENTS .................................................................................................IV

TABLE OF AUTHORITIES ..........................................................................................VI

STATEMENT OF THE ISSUES ...................................................................................... 1

STATEMENT OF THE FACTS ........................................................................................ 2

   I.     YOUNGE WAS A MEMBER OF HOWARD'S PERSONAL STAFF..................... 2
   II.    THE COMPLAINTS ABOUT YOUNGE AND HER TERMINATION................. 5
   III.   LITIGATION AND DISCOVERY .......................................................................... 6

STANDARD OF REVIEW .............................................................................................. 10

SUMMARY OF THE ARGUMENT ...............................................................................11

ARGUMENT AND CITATIONS TO AUTHORITY .................................................... 16

   I.     THE ELEVENTH CIRCUIT REVIEWS A TRIAL COURT'S DECISION TO PERMIT AN AFFIRMATIVE DEFENSE FOR AN ABUSE OF DISCRETION .................................................................................................... 16

   II.    THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY PERMITTING HOWARD TO RAISE THE PERSONAL STAFF EXCEPTION IN THE MOTION FOR SUMMARY JUDGMENT. .............................................................................. 17

      A.    The Prior of Precedent of this Court Should Not Be Ignored or Disturbed. ........... 27
      B.    Younge's Demand that the Court Ignore the Rule Announced in Hassan is Meritless. ................................................................................................................. 28

IV.     THE UNDISPUTED MATERIAL FACTS SUPPORTING THE PERSONAL STAFF EXCEPTION'S APPLICATION TO YOUNGE WAS OVERWHELMING AND SUMMARY JUDGMENT WAS APPROPRIATE. ........................................ 31

    A.     Whether Howard had Plenary Powers of Appointment and Removal. ................... 33

    B.     Whether Younge Was Personally Accountable to Howard. .................................... 35

    C.     Howard's Control Over Younge's Position ............................................................ 39

    D.     The Level of the Position Within the Chain of Command. .................................... 39

    E.     Intimacy of the Working Relationship Between Howard and Younge. .................. 40

    F.     Younge's Argument That She Was No Longer A Member of Howard's Personal Staff Would Render Congress's Intent Meaningless. .............................................. 42

V.      CONCLUSION ............................................................................................................... 43

CERTIFICATE OF COMPLIANCE ......................................................................................... 45

CERTIFICATE OF SERVICE .................................................................................................. 45

# TABLE OF AUTHORITIES

## Cases

*Hassan v. U.S.P.S.*, 842 F.2d 260, 263 (11th Cir. 1988) ................................. passim

*Allied Chemical Corp. v. Mackay*, 695 F.2d 854 (5th Cir. 1983) ...........................27

*Ball Corp. v. Xidex Corp.*, 967 F.2d 1440 (10th Cir. 1992)....................................27

*Brinkley v. Harbour Rec. Club*, 180 F.3d 598 (4th Cir. 1999)................................26

*Clews v. Cnty. Of Schuylkill*, 12 F.4th 353 (3rd Cir. 2021)....................................26

*Devito v. Pension Plan of Local 819*, 975 F.Supp. 258 (S.D.N.Y. 1997) ...............26

*Dubisar-Dewberry v. District Atty's Off.*, 927 F. Supp. 1479 (M.D. Ala. Mar. 28,
   1996)....................................................................................................................34

*Foman v. Davis*, 371 U.S. 178 (1962) ...................................................................25

*Global Tech. & Trading. v. Tech Mahindra.*, 789 F.3d 730 (7th Cir. 2015) ............27

*Gunaca v. Texas*, 65 F.3d 467 (4th Cir. 1995) .......................................................33

*Jones & Jones v. Pineda & Pineda*, 22 F.3d 391 (1st Cir. 1994) ...........................26

*Jones v. Miles*, 656 F.2d 103 (5th Cir. Unit B 1981) .........................................18, 26

*Laurie v. Ala. Ct. of Crim. App.*, 88 F.Supp. 2d. 1334 (M.D. Ala. 2000) ...............32

*Mason v. Hunter*, 534 F.2d 822 (8th Cir. 1976).....................................................27

*Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439 (6th Cir. 1993) ................27

*Peppers v. Cobb Cnty., Ga.*, 835 F.3d 1289 (11th Cir. 2016) ...........................24, 33

*Rivera v. Anaya*, 726 F.2d 564 (9th Cir. 1984) ......................................................27

*Shahar v. Bowers*, 114 F.3d 1097 (11th Cir. 1997)....................................................38

*Sharp v. Johnson*, 669 F.3d 144 (3rd Cir. 2012)......................................................17

*Stanley v. City of Sanford, Fla.*, 83 F.4th 1333 (11th Cir. 2023) ............................27

*Taplin v. Johnson*, 90 Fed. Appx. 736 (5th Cir. 2004)...............................................34

*Teneyuca v. Bexar Cnty.*, 767 F.2d 148 (5th Cir. 1985) ................................32, 33, 41

*Townsend v. Shook*, 323 F. App'x 245 (4th Cir. 2009) ..............................................42

*U.S. v. Frazier*, 387 F.3d 1244 (11th Cir. 2004) (*en banc*) ......................................17

*Wahl v. McIver*, 773 F.2d 1169 (11th Cir. 1985)......................................................25

*Walker v. NationsBank N.A.*, 53 F.3d 1548 (11th Cir. 1995) ...................................17

*Wall v. Coleman*, 393 F. Supp. 826 (S.D. Ga. 1975) ...............................................38

## Statutes

42 U.S.C. § 2000e(f)....................................................................................17, 22, 29

O.C.G.A. § 15-18-20(a)......................................................................................9, 18

O.C.G.A. § 15-18-20(b)  ……………………………………………………9, 18

O.C.G.A. § 15-18-3(1) ...........................................................................................17

## Other Authorities

Fulton County Human Resources Handbook ...........................................................19

## Rules

Fed. R. Civ. P. 8(c)........................................................................... passim

# STATEMENT OF THE ISSUES

I.  Where a plaintiff has notice that an affirmative defense will be raised at trial, the defendant's failure to comply with Fed. R. Civ. P. 8(c) does not cause the plaintiff any prejudice and, where the failure to raise an affirmative defense does not prejudice the plaintiff, it is not error for the trial court to hear evidence on the issue. *Hassan v. U.S.P.S.*, 842 F.2d 260, 263 (11th Cir. 1988). The District Court determined that discovery had been highly relevant to the personal staff exception and that no prejudice resulted from the court considering the issue. Did the District Court abuse its discretion when it permitted the personal staff exception to be raised in the Motion for Summary Judgment?

II. Where the Eleventh Circuit has well-settled precedent, later panels are constrained by the prior precedent rule, and district courts are bound to follow binding precedent. *Stanley v. City of Sanford, Fla.*, 83 F.4th 1333, 1338 (11th Cir. 2023). The District Court followed the precedent announced by this Court over thirty-five years ago when it considered the personal staff exception on a Motion for Summary Judgment. The Plaintiff argues that the precedent can be ignored. But can the District Court and the Eleventh Circuit ignore binding precedent?

III. Under Title VII, the definition of employee does not include any person chosen by an elected official to be on the official's personal staff. 42 U.S.C. § 2000e(f). The District Court held that the undisputed material facts "make it abundantly clear that the personal staff exception applies in this case." Was summary judgment correct under Title VII's personal staff exception?

# STATEMENT OF THE FACTS

## I. YOUNGE WAS A MEMBER OF PAUL HOWARD'S PERSONAL STAFF

Jasmine Younge worked at the District Attorney's Office for about two months, between early May 2019 through mid-July 2019. [Docs. 93 at 24; 104-4 at 2, 18]. Younge's $120,282.00 salary was in the top three at the District Attorney's Office, which exceeded even the salaries paid to attorneys. [Doc. 104-4 at 3, 5]. Younge was hired as Howard's Deputy Chief of Staff and Director of Programs and Policies. [*Id.* at 3, 10-14, 18]. This position placed Younge as the third highest-ranking official at the District Attorney's Office and accountable only to Howard. [*Id.*; Doc. 95 at 41-42].

It was only possible to pay Younge such a high salary for a Fulton County-funded position if she was a member of Howard's personal staff. To fund a personal staff position that was County-funded (not County-supplemented), elected officials needed to set the personal staff member's salary at an amount within the elected official's annual salary budget. The elected official then had to sign an oath attesting that the individual truly is a member of the elected official's personal staff. [Doc. 104-4 at 3, 20-21; see also, Fulton County Policy on "Personal Staff of Elected

Officials" [1]]. Howard executed the oath for Younge and swore that she would be a member of his personal staff, accountable directly to him. [*Id.*].

Younge's job included overseeing "the policy implementation and development, management and oversight of bureaus, strategic communications, and responsive constituent services." [Docs. 93 at 34-35; 104-4 at 10-14]. Younge was the main writer of Criminal Justice and Crime Prevention policies and programs for the District Attorney's Office. [*Id.*]. She also developed, implemented, and administered all of the District Attorney's programs and supervised more than thirty employees over more than seven departments at the District Attorney's Office. [*Id.*]. Younge collected criminal justice data "at the direction of the District Attorney" and to "work[ed] closely with the District Attorney on a daily basis." [*Id.*].

On a day-to-day basis, Younge's job included meeting with dignitaries, community leaders, and members of the public. [Docs. 93 at 34-35, 39; 104-4 at 4]. Younge worked with the public and was Howard's primary, public-facing representative. [*Id.*]. Howard was very involved with her work because the voters judged him based on how Younge interacted with the public and implemented the policies and projects on his behalf. [Docs. 93 at 36-37, 39; 104-4 at 4-5]. Younge supervised fifteen to twenty policies and programs. [Doc. 104-4 at 5].

---

[1] https://fultoncountyga.gov/-/media/Departments/Human-Resources-Management/Personnel-Policies_-Procedures/324--Positions-and-Compensation--Update-061919.ashx

Younge testified that she reported only to Howard and was accountable only to him. [Docs. 93 at 62; 104-4 at 4]. Younge met with Howard "all day every day." [Doc. 93 at 38]. Younge described how her schedule was "pretty much the schedule that DA Paul Howard had." [Doc. 93 at 34-35]. And she detailed how she was "involved in everything the district attorney's office did." [Doc. 93 at 37]. She talked extensively about how she was "literally [Howard's] go-to person for everything," and that she worked closely with him every day. [Doc. 93 at 37-38]. She testified that if Howard "needed something done, I would handle it." [*Id.*].

As Director of Policies and Programs and Deputy Chief of Staff, Younge oversaw fifteen to twenty programs. [Doc. 104-4 at 5, 23]. Howard was "very involved" in the programs Younge worked on: "He made it a point to be involved in every single thing" that Younge supervised. [Doc. 93 at 42-43]. When asked how often she spoke with Howard about the programs she oversaw, she testified that it was "All day every day" and that he would even "send me messages on weekends." [Doc. 93 at 43]. Unlike virtually every other District Attorney's Office employee, Younge did not need to make appointments to see Howard. Since— as she puts it— she "was literally his go-to person for almost everything," she was "one of the few on staff that was just able to walk into his office at any time." [Doc. 93 at 68]. Like Younge, Howard also considered her to be a "high-ranking" "key member of [his] personal staff…" [Docs. 104-4 at 3; 95 at 15, 24, 110; 94 at 30, 39].

## II. THE COMPLAINTS ABOUT YOUNGE AND HER TERMINATION

During the two months that Younge worked for the District Attorney, there were many complaints about her behavior from long-time employees. [Docs. 104-4 at 5, 25-26; 104-5 at 4-5, 8; 94 at 20, 22, 29]. What concerned Howard the most was that the staff making complaints had been at the District Attorney's Office for many years and had never made complaints. [Doc. 104-4 at 5]. The complaints ranged from berating co-workers in meetings with members of the public, to "making derogatory and demeaning comments about Howard" to co-workers. [Docs. 104-5 at 2-5; 104-4 at 25-26; 95 at 40-43, 134-136; 94 at 43-44]. The Chief Investigator wrote that Younge's behavior in staff meetings was "appalling" and that she "could not believe this, I have never in my 23 years at the District Attorney's Office witnessed an employee be so disrespectful to their boss Paul Howard." [Doc. 104-4 at 25].

Most of the complaints were made to the Chief of Staff, Lynne Nelson, and shared with Howard in mid to late June 2019. [Docs. 104-5 at 2; 94 at 5, 29-30, 42-43, 104-4 at 25-26]. Howard described an incident on June 28, 2019, as "the last straw," where— unbeknownst to Younge— he witnessed her chastising an attorney from the Major Crimes Division outside of his office. [Docs. 104-4 at 5; 95 at 128-130, 143]. Just after seeing this exchange, Howard told Younge, "I am really concerned about you and what you are doing and what you just did was unbelievable,

5

and I am really going to have to think about whether or not you need to continue in this office because I don't understand where that came from…" [Doc. 95 at 129-130]. The next business day, Younge placed a letter on Howard's desk notifying him that she was pregnant. [Doc. 104-7].

Based on the complaints and Younge's behavior towards Howard and other employees, Howard terminated her. [Docs. 95 at 82, 85, 105, 107, 136-137; 94 at 29-30, 39-40, 42-43]. The termination meeting happened on July 15, eight business days after the exchange Howard witnessed outside his office. Younge recorded the termination meeting without the knowledge of the others in the room: Howard and Nelson. [Doc. 104-6]. In the meeting, Howard explained that Younge was being terminated because of the number of complaints that had been made about her in only two months, as well as other professionalism issues. [Doc. 104-6 at 3:15, 5:30-7:10]. Younge responded by stating that she would provide a resignation letter and that she had already been planning to resign "because of things that were not in the interest of me and my intelligence level." [*Id.* at 19:00].

### III. LITIGATION AND DISCOVERY

Younge brought several claims and, after a motion to dismiss, the remaining claims were Title VII pregnancy discrimination and retaliation. The retaliation claim was later abandoned by Younge in response to the Motion for Summary Judgment.

The issue of whether Younge was a member of Howard's personal staff was highly relevant to the discovery done in this case. [Doc. 128 at 9-12]. Although counsel for Howard concedes that he was unaware of the exemption at the time, the discovery taken was highly pertinent to the issue. [*Id.*]. As noted by the Magistrate, because Younge's position was funded by Fulton County and was highly paid, Howard had to affirm in an oath that Younge was a member of his "personal staff." [Doc. 104-4 at 20-21]. As a result, Howard referenced Younge as a member of Howard's "personal staff" at least five times in discovery responses. [Doc. 128 at 7-8, n. 4]. Younge's counsel, in deposing Lynne Nelson, questioned her repeatedly as to whether Younge was a member of Howard's personal staff. [Doc. 94 at 30]. Younge's counsel also questioned Nelson about her supervisory capacity, to which Nelson replied that Younge was not her subordinate and that Younge answered only Howard. [*Id.* at 39].

Younge deposed Howard, and for more than two hours of cross-examination, counsel questioned him about Younge's duties, his daily interactions with Younge, and his close working relationship with Younge, among other questions targeted directly to the issue of personal staff. [See, e.g., Doc. 95 at 15, 24, 28, 110, 116]. Howard opined in detail about the members of his "personal staff." [*Id.*].

In Younge's deposition, she testified in granular detail about her duties, her intimate working relationship with Howard, and her importance as a member of

Howard's personal staff. [Doc. 93 at 46-47, 72, 121, 131]. Younge testified (and the Amended Complaint alleged), that after her termination, she was told by Fulton County's Human Resources Department that she could not file a grievance since she was a member of Howard's executive staff. [*Id.* at 131; Doc. 31 ¶ 33].

During a March 14, 2022, hearing on another discovery issue, counsel notified Younge that he intended to rely on the personal staff exception in the Motion for Summary Judgment. [Doc. 91]. It was decided in that hearing that discovery would be re-opened solely to depose Howard a second time. [*Id.*]. Younge, however, chose not to request any new discovery on the personal staff issue.

The Court, however, took it a step further to ensure there was no prejudice to Younge in raising the personal staff exception. After the Motion for Summary Judgment was filed, Judge Salinas held a hearing to determine whether Younge should have a chance to take additional discovery focused on the personal staff exception. [Doc. 143]. During the hearing, the issue of prejudice was explored, including whether there was any discovery that Plaintiff felt that she needed. [*Id.*]. If there was any legitimate discovery on the personal staff issue that Younge felt had not been done, the court was going to "consider reopening discovery and letting [Younge] do it…" [*Id*. at 8]. The Magistrate noted that Younge could not articulate any additional, legitimate discovery that was needed. [Doc. 128 at 9-16]. Rather, of

the arguments Younge raised, the court pointed out that considerable discovery on those precise issues had already been made. [*Id.*].

The court concluded that— based on the extensive discovery on Younge's duties, her role, her intimate working relationship with Howard, and her inability to explain how there was any prejudice or surprise— the case should be determined on the merits, rather than noncompliance with a technicality. [Doc. 134 at 14-21].

## <u>STANDARD OF REVIEW</u>

The standard of review for a district court's decision to permit an affirmative defense to be raised after the answer is an abuse of discretion. *Walker v. NationsBank N.A.*, 53 F.3d 1548, 1554 (11th Cir. 1995); *Sharp v. Johnson*, 669 F.3d 144, 158 (3rd Cir. 2012).

The standard of review for the entry of summary judgment is *de novo*. *Jones v. UPS Ground Freight,* 683 F.3d 1283, 1291 (11th Cir. 2012).

## SUMMARY OF THE ARGUMENT

Title VII states that an "employee" shall not include any person elected to public office in any State... ***or any person chosen by such officer to be on such officer's personal staff…*** 42 U.S.C. § 2000e(f). The District Court determined that the personal staff exception to Title VII is an affirmative defense that must be plead in accord with Fed. R. Civ. P. 8(c). The Defendant does not dispute that the personal staff exception was not raised in the first responsive pleading. Rather, Defendant raised the defense in his Motion for Summary Judgment.

For at least thirty-five years, the Eleventh Circuit has held that "the liberal pleading rules established by the Federal Rules of Civil Procedure apply to the pleading of affirmative defenses. We must avoid hypertechnicality in pleading requirements and focus, instead, on enforcing the actual purpose of the rule." *Hassan v. U.S.P.S.*, 842 F.2d 260, 263 (11th Cir. 1988). "When a plaintiff has notice that an affirmative defense will be raised at trial, the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice." *Id.* "And, when the failure to raise an affirmative defense does not prejudice the plaintiff, it is not error for the

trial court to hear evidence on the issue." *Id.* The rule announced in *Hassan* has long

been observed in every Court of Appeals in the country.[2]

After a full analysis of the discovery and depositions—largely based on

Younge's own testimony— and after giving Younge the opportunity to reopen

discovery, the Magistrate and District Court determined that Younge had notice of

the personal staff exception based on the significant discovery that was highly

relevant to the issue. As a result, there was no prejudice to Younge in permitting the

Court to consider the personal staff exception. The standard of review when a district

court exercises its discretion to permit an affirmative defense to be raised in a

dispositive pleading, is an abuse of discretion: The admissibility of evidence is

committed to the broad discretion of the district court and "will be reversed only

upon a clear showing of abuse of discretion." *Walker v. NationsBank N.A.*, 53 F.3d

1548, 1554 (11th Cir. 1995); *Sharp v. Johnson*, 669 F.3d 144, 158 (3rd Cir. 2012)

---

[2] *Clews v. Cnty. Of Schuylkill*, 12 F.4th 353, 358 (3rd Cir. 2021); *Devito v. Pension Plan of Local 819*, 975 F.Supp. 258, 263 (S.D.N.Y. 1997) (2nd Cir.); *Jones & Jones v. Pineda & Pineda*, 22 F.3d 391, 400 (1st Cir. 1994); *Brinkley v. Harbour Rec. Club*, 180 F.3d 598, 612 (4th Cir. 1999); *Allied Chemical Corp. v. Mackay*, 695 F.2d 854, 855-56 (5th Cir. 1983); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993); *Global Tech. & Trading, Inc. v. Tech Mahindra Ltd.*, 789 F.3d 730, 731-32 (7th Cir. 2015); *Mason v. Hunter*, 534 F.2d 822, 825 (8th Cir. 1976); *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir. 1984); *Ball Corp. v. Xidex Corp.*, 967 F.2d 1440, 1443-44 (10th Cir. 1992).

("We review a lower court's decision regarding the waiver of an affirmative defense for an abuse of discretion).

Younge's argument on this issue is that the District Court, and now this Court, should disregard binding precedent. Even though *Hassan* and its progeny deal expressly with Rule 8(c)— the rule governing affirmative defenses— Younge demands that the precedent be ignored and the rules for amendments of pleadings be substituted in its place. Younge provides no legal basis for this argument beyond irrelevant and inconsequential objections. Contrary to this assertion, the District Court had the discretion to apply the correct precedent and provided a well-reasoned analysis of the prejudice issue. The Court even gave Younge the opportunity to reopen discovery. [*See,* Doc. 143 at 8, transcript of hearing].

On the application of the personal staff exception to the undisputed material facts, the District Court concluded that it "easily found, largely based on Younge's own testimony, that she was a member of Howard's personal staff." [Docs. 128 at 31; 134 at 21]. Courts apply a six-factor balancing test to analyze whether an employee is a member of an elected official's personal staff:

> (1) Whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the

working relationship between the elected official and the person filling the position.

*Laurie v. Ala. Ct. of Crim. App.*, 88 F.Supp. 2d. 1334, 1338 (M.D. Ala. 2000) *aff'd*, 256 F.3d 1266 (11th Cir. 2001). The District Court found that five of the six factors "decisively" showed that Younge was no doubt a member of Howard's personal staff (the Court found the sixth factor to be neutral). This conclusion was based considerably on Younge's own testimony, which, standing alone, was dispositive on the issue.

Younge testified that she supervised fifteen to twenty programs at any given time and supervised thirty employees across seven departments. Younge also testified that she was accountable only to Howard, [Doc. 93, Younge Dep. at 62], that she met with members of the community on behalf of the District Attorney, [*Id.* at 34-35], that her schedule was Paul Howard's schedule, [*Id.* at 34-37], and that she participated in "anything and everything" that had to do with the District Attorney's Office. [*Id.*]. She discussed how, if Howard "needed something done, I would handle it." [*Id.* at 38]. Younge remarked that she discussed the progress of initiatives she was overseeing with Howard "[a]ll day every day." [*Id.* at 43]. Younge had meetings with Howard "all the time," and she "was in and out of his office because [the personal staff] were . . . the essential folks [in the Office]." [*Id.* at 46–47]. Younge testified that Howard was "very involved [with the policies and programs she

oversaw]… [and] he made it a point to be very involved in every single thing…" [*Id.*].

Based on this testimony, additional testimony offered by Younge, Howard, and Chief of Staff Lynne Nelson that was highly relevant to the issue, and other record evidence, the Court "easily concluded" that no genuine question of material fact existed on the personal staff issue and that summary judgment was appropriate.

Younge's argument in response would effectively write the personal staff exception out of Title VII. As the District Court correctly noted, arguing that purported discrimination altered the terms of employment and thus precluded the personal staff exception would result in the exception being rendered meaningless. The circular logic underlying this argument would mean that a plaintiff could almost always assert that the elected official's alleged discrimination altered the terms of employment and rely on this argument to try and render the exception meaningless.

As the District Court recognized, even after the purported discrimination, Younge retained her job title and her supervisory capacity. And Younge continued to oversee fifteen to twenty programs, continued to work as the third most senior employee, and continued to receive a salary that was the second or third highest at the District Attorney's Office. Relying on this, and more, the District Court rejected Younge's invitation to accept an argument that would abrogate the language of the statute enacted by Congress.

## <u>ARGUMENT AND CITATIONS TO AUTHORITY</u>

This response to the Appellant's brief will first address how the trial court did not abuse its discretion in finding that Howard could assert the personal staff defense to Title VII since there was no prejudice or surprise to Plaintiff. Next, the brief will address the argument that the precedent of the Eleventh Circuit (as well as every other circuit) permitting an affirmative defense to be raised when there is no prejudice should be ignored. Finally, the argument on the weight of the personal staff factors in the Motion for Summary Judgment will be addressed.

> **I.    THE ELEVENTH CIRCUIT REVIEWS A TRIAL COURT'S DECISION TO PERMIT AN AFFIRMATIVE DEFENSE FOR AN ABUSE OF DISCRETION.** [3]

It is within the trial court's discretion to permit an affirmative defense to be raised on a motion for summary judgment when there has been no prejudice due to the earlier omission. Thus, the admissibility of evidence is committed to the broad discretion of the district court and "will be reversed only upon a clear showing of abuse of discretion." *Walker v. NationsBank N.A.*, 53 F.3d 1548, 1554 (11th Cir. 1995); *Sharp v. Johnson*, 669 F.3d 144, 158 (3rd Cir. 2012) ("We review a lower

---

[3] In the Motion for Summary Judgment, Howard acknowledged a circuit split on whether the personal staff exception is an affirmative defense or jurisdictional question. (Doc. 122 at 2). Because the facts supporting the personal staff exception are so overwhelming in this case and because the question is not squarely before the Court, it would be prudent to leave the answer to that question for another day.

court's decision regarding the waiver of an affirmative defense for an abuse of discretion").

"[D]eference that is the hallmark of the abuse-of-discretion review, [and] requires that we not reverse an evidentiary decision of a district court unless the ruling is manifestly erroneous. Thus, it is by now axiomatic that a district court enjoys considerable leeway in making these determinations." *U.S. v. Frazier*, 387 F.3d 1244, 1258 (11th Cir. 2004) (*en banc*) (internal citations omitted).

The *Frazier* court observed, "[b]y definition…there will be occasions in which [the Court of Appeals] affirm[s] even though we would have gone the other way had it been our call. The standard allows 'a range of choice for the district court, so long as that choice does not constitute a clear error of judgment.'" *Id.* at 1259. Where the district court relies on settled law, and the court's determination is squarely within its discretion— as it was here— there is not an abuse of discretion, and the decision should be affirmed.

II.    **THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY PERMITTING HOWARD TO RAISE THE PERSONAL STAFF EXCEPTION IN THE MOTION FOR SUMMARY JUDGMENT.**

In *Hassan v. U.S.P.S.*, the Eleventh Circuit adopted the majority rule espoused by the other courts of appeal. 842 F.2d 260, 263 (11th Cir. 1988).[4] "[T]he liberal pleading rules established by the Federal Rules of Civil Procedure apply to the pleading of affirmative defenses. We must avoid hypertechnicality in pleading requirements and focus, instead, on enforcing the actual purpose of the rule." *Id.* "When a plaintiff has notice that an affirmative defense will be raised at trial, the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice." *Id.* "And, when the failure to raise an affirmative defense does not prejudice the plaintiff, it is not error for the trial court to hear evidence on the issue." *Id.*

Younge's brief claims that there was additional discovery that she would have done. But each of these ignores the record evidence and the District Court's findings: that the application of the personal staff exception was based almost entirely on Younge's own testimony and that the discovery Younge now raises largely concerns information that Younge already knew about. And the discovery mentioned in the brief strains to grasp onto a colorable argument of prejudice. But again, none of these new arguments are significant. And Younge did not raise any of these arguments in

---

[4] While *Hassan* was the seminal Eleventh Circuit opinion, the court relied on earlier precedent from the Fifth Circuit. *Jones v. Miles*, 656 F.2d 103, 107 n. 7 (5th Cir. Unit B 1981).

response to the Motion for Summary Judgment or after the Court offered the opportunity to reopen discovery.

For example, Younge now says she would have asked people who had meetings with Howard and Younge if they believed that Younge represented the District Attorney's Office. [Appllnt's Br. at 40]. But Younge was present in the meetings and testified about them. And Younge's counsel questioned Howard in detail about how Younge spoke to the community on his behalf. Moreover, the subjective beliefs of individuals outside the District Attorney's Office are not significant; what is significant is that Younge testified that she oversaw the programs the meetings were about, and her decisions in implementing those programs would have no doubt reflected on the District Attorney. And while Howard was often present in meetings, Younge testified that she "was a participant. I mean, I would have discussions. I would have, you know, a voice in them." [Doc. 93, Younge Dep. at 37]. Younge testified that, "Any dignitaries or anybody— any visitors that came to the office and had meetings with the DA, I was in." [*Id.* at 34]. She discussed that she was "in contact with a lot of persons in the community on behalf of the DA's Office." [*Id.* at 39]. And there was undisputed testimony that, as Director of Policy and Programs, Younge represented Howard to the public more than any other member of Howard's staff. [Doc. 95, Howard Dep. at 42, 110; 104-4, Howard Decl. ¶ 5]. What this

illustrates is that even the purported prejudice that Younge now raises in her brief is exceedingly weak, insignificant, and not prejudicial.

In *Hassan*, the defendant failed to plead an affirmative defense, but the court excused the failure because there was no prejudice. *Id.* at 263-264. At trial, the defendant raised the affirmative defense of collateral source payments to reduce liability. *Id.* at 262-263. The court held that permitting the affirmative defense to be raised at trial was not an abuse of discretion because there had been discovery on the issue and there was no prejudice to the plaintiff. *Id.* at 263-264. "Failure to plead the defense is simply noncompliance with a technicality and does not constitute waiver where there is no claim of surprise." *Id.* at 263.

Discovery that was made on the personal staff exception to Title VII far exceeds what was done in *Hassan*. In *Hassan*, "long before the trial," the defendant deposed the plaintiff and "questioned her extensively about the collateral source payments she received." *Id.* at 263. Apart from the plaintiff's deposition, there was an interrogatory on the collateral source payments. *Id.* Like *Hassan*, Younge was questioned in granular detail about her role at the District Attorney's Office, her intimate working relationship with Howard, her status at the top of the hierarchy within the office, her elite position as a member of Howard's staff, and how she answered only to Howard. [See, e.g., Younge Dep., Doc. 93 at 46-47, 72, 121, 131].

Further, Younge questioned Howard and Lynne Nelson about minute details of Younge's job and status at the office. In fact, Younge's counsel asked Nelson directly whether Younge was part of Howard's "personal staff." [Doc. 94, Nelson Dep. at 30}. This line of inquiry belies that Younge's counsel anticipated the personal staff defense and was neither prejudiced nor surprised when it was asserted. Younge also spent hours deposing Howard, specifically about Younge's job duties, her interactions with him, their working relationship, and her importance to him as a member of his personal staff. [Doc. 95, Howard Dep. at 15, 24, 28, 110, 116]. Additionally, Younge had been put on notice almost immediately when, following her termination, she discussed filing a grievance with Fulton County and was told she could not since she was part of an elected official's executive staff.[5] [Doc. 93 at 131].

The district court recognized that deponents "were questioned extensively about (1) the circumstances of Younge's hiring and firing, including who made those employment decisions; (2) the reporting structure to which Younge adhered; (3) the work that Younge did for the District Attorney's Office, including out in the community and in meetings with dignitaries, community leaders, and members of

---

[5] Although it is more likely that the County used the phrase "personal staff" since that is the term used in the County's policies and procedures, in any case, the County was referring to the fact that Younge had been classified as a personal staff member when she was hired by Howard. [*See* Doc. 104-4 at 20-21]. Younge often described herself as a member of Howard's "executive staff." [Doc. 93 at 131, 121].

the public; (4) the amount and nature of Howard's control over Younge's position and the work she performed; (5) the organizational hierarchy within the District Attorney's Office, including Younge's placement in that hierarchy; and (6) the nature of Howard's working relationship with Younge and other members of his personal or executive staff." [Doc. 134 at 19-20].

In *Hassan*, the defendant waited until trial to raise the affirmative defense with less discovery on the issue than here. As the District Court observed, there was extensive discovery on Younge's position and status at the District Attorney's Office, and virtually all the discovery— especially the deposition testimony— was targeted towards information pertinent to the personal staff issue.

Younge could not have been prejudiced by permitting Howard to raise the personal staff exception since the evidence the District Court relied on to determine that the personal staff exception applied was largely based on Younge's own testimony. The Magistrate and District Court wrote that they "easily found, largely based on Younge's own testimony, that she was a member of Howard's personal staff." [Docs. 128 at 31; 134 at 21]. Younge's deposition testimony is the most persuasive evidence that there was no prejudice in permitting the defense since it makes little sense to say that Younge was prejudiced by her own testimony.

Younge testified in detail about her two months at the District Attorney's Office. She talked about her salary being over $120,000, which was either the second or

third-highest salary in the District Attorney's Office, which far exceeded what the attorneys made. She discussed her role as the public-facing member of the District Attorney's staff, and how she regularly met with community leaders and dignitaries on Howard's behalf. She remarked on her duties, which included supervising more than thirty employees over seven departments, that she was the main drafter of criminal justice policy, and that she reported only to Howard. And she spent much time talking about the close, intimate working relationship she had with Howard, that she was with him "all day, every day," and how she was in a sensitive position of trust and confidence.

Even if there were no other evidence, Younge's testimony would have been dispositive as to her status on Howard's personal staff. For this reason, along with the extensive discovery that was done, Younge has been unable to point to any prejudice.

The district court also noted that Younge, after she was given notice that Howard would rely on the personal staff exception, had the opportunity to request additional discovery but chose not to. It seems obvious that the reason for not requesting added discovery was that extensive discovery had already been done on the issue.

Later, Judge Salinas held a hearing in which she took extraordinary steps to ensure that Younge was not prejudiced by permitting the personal staff exception to

be raised. [Doc. 143, Hearing Trans.]. During the hearing, she expressly offered Younge the opportunity to reopen discovery, but Younge could not explain how any new discovery would be helpful. [*Id*.]. The only discovery Younge mentioned concerned Fulton County's role in Younge's employment. But significant discovery had already been developed on the issue. Further, Georgia statute and Eleventh Circuit precedent has already answered that a District Attorney retains significant authority over those who work for him. O.C.G.A. § 15-18-20(a) and (b) ("Personnel employed by the district attorney…shall serve at the pleasure of the district attorney and shall be compensated by the county…comprising the judicial district…"); *Peppers v. Cobb Cnty., Ga.*, 835 F.3d 1289, 1299 (11th Cir. 2016) ("Georgia statutory code expressly empowers the District Attorney to hire and discharge personnel and to 'define the duties and fix the title of any attorney or other employee of the district attorney's office.'").

In sum, Younge suffered no prejudice by the district court permitting the personal staff exception to Title VII to be raised on summary judgment. Between the considerable discovery that was highly relevant to the personal staff exception, the Magistrate giving Younge the opportunity to reopen discovery, and Younge's inability to suggest there was any actual prejudice in her response to the Motion for Summary Judgment, there was no prejudice. And perhaps most importantly, Younge cannot argue there was prejudice where the analysis was based almost entirely on

her own testimony. Since the District Court did not abuse its discretion in permitting the personal staff exception to be raised, the District Court's decision should be affirmed.

### III.   YOUNGE'S ARGUMENT THAT THE COURT MUST DISREGARD PRECEDENT THAT GIVES DISTRICT COURTS THE DISCRETION TO CONSIDER BELATED AFFIRMATIVE DEFENSES IS BASELESS.

Younge asks the Court to find that the well-settled precedent in this Circuit that permits a party to belatedly raise an affirmative defense <u>only</u> when there is no prejudice to the plaintiff, can simply be ignored. But Younge conflates the Rule of Civil Procedure that governs amendments to pleadings with the rule that specifically implicates affirmative defenses and fails to address several important facets of the rule, including its purpose and the stringent requirements for waiver. The argument also ignores the district court's wide latitude and discretion in carrying out case-management functions and this Circuit's "strong preference that cases be heard on the merits," rather than letting disputes be decided based on procedural errors or technicalities. *See, e.g., Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985); *see also*, *Foman v. Davis*, 371 U.S. 178, 181 (1962) (decisions on the merits should not be avoided based on technicalities). Moreover, the reasons that Younge argues the rule should be disregarded are neither persuasive nor relevant to Rule 8(c). Nor has

Younge offered any sensical reason for the Court not to apply its precedent under the Eleventh Circuit's prior precedent rule.

In 1988, the Eleventh Circuit— as a successor court of the Fifth Circuit and its precedent— adopted the binding precedent Fifth Circuit. *Hassan v. U.S.P.S.*, 842 F.2d 260, 263-264 (11th Cir. 1988) (adopting *Jones v. Miles*, 656 F.2d 103, n. 7 (5th Cir. Unit B 1981)). In *Hassan*, this Court held that "[w]hen a plaintiff has notice that an affirmative defense will be raised at trial, the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice." *Hassan* at 263. "And, when the failure to raise an affirmative defense does not prejudice the plaintiff, it is not error for the trial court to hear evidence on the issue." *Id.* The underlying policy consideration of Rule 8(c) was to ensure that an opposing party had notice of an issue that would be raised at trial, whether through discovery that is highly tr. *Id.* The logical result is that when the litigation and discovery have provided sufficient notice that an affirmative defense is indicated, there is no prejudice in asserting the defense, and the spirit of Rule 8(c) is fulfilled. As this Court recognized, the "[f]ailure to affirmatively plead the defense is simply noncompliance with a technicality…" *Id.*

The majority of the Circuit Courts of Appeal long ago adopted a nearly identical rule to the one announced in *Hassan*. *Clews v. Cnty. Of Schuylkill*, 12 F.4th 353, 358 (3rd Cir. 2021) ("affirmative defenses may be raised at any time, even after trial, so long as the plaintiff suffers no prejudice"); *Devito v. Pension Plan of Loc. 819*, 975

F.Supp. 258, 263 (S.D.N.Y. 1997) (2d Cir.) (same); *Jones & Jones v. Pineda & Pineda*, 22 F.3d 391, 400 (1st Cir. 1994) ("it is settled that when there is no prejudice and when fairness dictates, the strictures of the rule may be relaxed"); *Brinkley v. Harbour Rec. Club*, 180 F.3d 598, 612 (4th Cir. 1999) (holding that "there is ample authority in this Circuit…that absent unfair surprise or prejudice to the plaintiff" a defendant may raise an affirmative defense in a motion for summary judgment); *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855-56 (5th Cir. 1983) (same); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993) (permitting affirmative defense to be raised on a motion for summary judgment where there was no prejudice); *Global Tech. & Trading, Inc. v. Tech Mahindra Ltd.*, 789 F.3d 730, 731-32 (7th Cir. 2015) ("our decisions hold that a district court may (though it need not) permit an untimely affirmative defense, provided the plaintiff does not suffer prejudice from the delay"); *Mason v. Hunter*, 534 F.2d 822, 825 (8th Cir. 1976) (same); *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir. 1984) ("absent prejudice to the plaintiff, a defendant may raise an affirmative defense in a motion for summary judgment for the first time"); *Ball Corp. v. Xidex Corp.*, 967 F.2d 1440, 1443-44 (10th Cir. 1992) (same).

### A. *The Prior of Precedent of this Court Should Not Be Ignored or Disturbed.*

The Eleventh Circuit— as with most circuit courts— follows the prior precedent rule. Under that doctrine, the Court "is bound to follow a prior binding precedent

unless and until it is overruled by this court *en banc* or by the Supreme Court."
*Stanley v. City of Sanford, Fla.*, 83 F.4th 1333, 1338 (11th Cir. 2023).

Younge conflates the rule that is at issue, FRCP 8(c), with the rule governing amendments to pleadings. As the caselaw makes abundantly clear, it is Rule 8(c) that implicates affirmative defenses, and the reasoning for the allowance of affirmative defenses that are belatedly asserted turns on the central goal underlying 8(c). Younge demands that the rule governing affirmative defenses and the prior precedent rule be ignored. [Appllnt's Bf. at 32]. Despite Younge's confluence of the Rules, the well-settled precedent of this Court gives the District Court discretion to determine whether an affirmative defense should be permitted where there is no prejudice to the plaintiff. Because the District Court did not abuse its discretion, the decision to permit the personal staff exception to be considered should be affirmed.

B. <u>Younge's Demand that the Court Ignore the Rule Announced in Hassan is Meritless.</u>

Younge raises several problems she has with this Court's precedent: that it disallows district courts from managing their dockets; that the rule rewards dilatory behavior; that the rule adopted by the district court treats defendants better than plaintiffs; and that it renders scheduling orders meaningless. [Appllnt. Br. at 30-31, 33-35]. Since *Hassan* is binding precedent and the District Court did not abuse its discretion in permitting the personal staff exception, it is unclear how or why Younge

believes that the thirty-five-year-old precedent can simply be ignored. Younge also repeatedly contends that the District Court's decision to "adopt" the binding precedent was error but does not explain how or why the District Court could ignore precedent that is precisely on point. Despite this, we will briefly discuss each of the contentions.[6] *Hassan* and the cases from other courts of appeals each agree that it is Rule 8(c) being expounded, the rule that specifically addresses affirmative defenses. By its own terms, the failure to comply with Rule 8(c) is what is at issue. Younge merely rejects this notion.

Younge asserts that the rule permitting affirmative defenses absent prejudice prevents district courts from managing their dockets and scheduling orders. [Appllnt Br. at 30-31, 34-35]. But there is no reason why district courts cannot effectively manage their dockets where the *Hassan* rule applies. District courts retain the discretion to manage their dockets as they see fit. And there is no requirement that a district court must allow an affirmative defense to be raised. A district court will consider the affirmative defense only where there is adequate notice, such as highly relevant discovery on the issue, and a determination that the plaintiff was not prejudiced. The district court retains all the tools available for case management,

---

[6] As the District Court observed, Younge did not raise the "good cause" argument in her response to the Motion for Summary Judgment. [Doc. 134 at 18, n. 10].

including scheduling orders, and its discretion on matters of docket management is not disturbed.

Younge next contends that the rule rewards dilatory behavior and treats defendants better than plaintiffs. [*Id.* at 33-34]. The *Hassan* rule does not reward dilatory behavior since the district court has the discretion to disallow an affirmative defense, while a defendant who raises an affirmative defense in an answer may rely on the defense as a matter of right. Far from rewarding dilatory behavior, the rule balances the purpose of Rule 8(c) and the liberal pleading standards with a plaintiff's right to be free from surprise and prejudice. Again, the *Hassan* rule leaves the assertion of the affirmative defense to the district court's discretion and only where a defendant can show that no prejudice will result.

The balance that is struck also protects the plaintiff while accounting for fairness, the purpose of Rule 8(c), and the preference that cases be decided on the merits. So it cannot be said that defendants enjoy a favored position. By its terms, Rule 8(c) applies to affirmative defenses so it will always be a defendant seeking to rely on it. That Rule 8(c) only applies to affirmative defenses does not mean that defendants are favored. Further, since defendants who do not raise the defense in their answer are only permitted to assert the defense when no prejudice will result, plaintiffs have robust protection against a defendant raising a defense that could not have been anticipated or was not highly relevant in discovery. Nothing in these arguments alters

the conclusion of the District Court or applies to the issue that is before the Court: the rule announced in *Hassan* and its application to Rule 8(c). Despite Younge's contention that the Court must ignore *Hassan* and the precedent on affirmative defenses under Rule 8(c), the District Court did not abuse its discretion in permitting the personal staff exception to be considered.

In sum, Younge's demand that the Court ignore the precedent that deals with the precise question at issue is meritless. In the face of long-standing precedent that is nearly ubiquitous among the courts of appeals, Younge rejects the analysis espoused by these courts concerning Rule 8(c)— the rule that expressly deals with affirmative defenses. But none of Younge's arguments are relevant to the issue or provide a basis for the District Court to reject settled law. By that same token, none of Younge's arguments provide legitimate grounds for this Court to ignore the precedent that speaks to the precise issue being addressed: whether, under *Hassan*, the District Court abused its discretion when it considered the personal staff exception.

### IV. THE UNDISPUTED MATERIAL FACTS SUPPORTING THE PERSONAL STAFF EXCEPTION'S APPLICATION TO YOUNGE WAS OVERWHELMING AND SUMMARY JUDGMENT WAS APPROPRIATE.

Younge argues that the District Court erred in determining that the personal staff exception applied to her. But the arguments asserted in her Brief would result in the

personal staff exception effectively being written out of the statute and Congress's intent being abrogated. Both the Magistrate and District Court determined that the undisputed material facts in the record overwhelmingly proved that Younge was a member of Howard's personal staff. "Construing the facts in the light most favorable to Younge, I easily find, largely based on Younge's own testimony that she was a member of Howard's personal staff." [Docs. 128 at 31].

When Congress passed the Title VII legislation, it defined "employee": an individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State... ***or any person chosen by such officer to be on such officer's personal staff...*** 42 U.S.C. § 2000e(f) (emphasis supplied). There is no dispute that Howard was an elected official. O.C.G.A. § 15-18-3(1).

Title VII does not define who is a personal staff member of an elected official, however, courts have developed a balancing test to assist in the determination. The balancing test uses six factors to assist in the analysis:

> (1) Whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.

*Laurie v. Ala. Ct. of Crim. App.*, 88 F.Supp. 2d. 1334, 1338 (M.D. Ala. 2000) *aff'd*, 256 F.3d 1266 (11th Cir. 2001) (adopting the factors from *Teneyuca v. Bexar Cnty.*, 767 F.2d 148, 151 (5th Cir. 1985)). "In short, the courts look to the nature and circumstances of the employment relationship between the complaining individual and the elected official to determine if the exception applies." *Teneyuca* at 152.

Younge's testimony here is dispositive. If the Court reviews nothing beyond Younge's deposition, it will be evident why the District Court found that it was "easily" determined that Younge was a member of Howard's personal staff. Younge's testimony is irrefutable evidence of her status as a member of Howard's personal staff. *See, e.g., Gunaca v. Texas*, 65 F.3d 467, 471 (4th Cir. 1995) (holding that the case was particularly suited for disposition on summary judgment because "most of the necessary facts are provided by…[the plaintiff's] testimony").

When the Court considers the record and balances the factors, the weight of evidence favors dismissal.

### A. *Whether Howard had Plenary Powers of Appointment and Removal.*

The District Court held that this factor was neutral. The Court recognized that Howard had "wide latitude to appoint and remove District Attorney's Office employees" and that the Georgia statutory code "expressly empowers the District Attorney to hire and discharge personnel and to 'define and fix the title of any' employee of the district attorney's office." [Doc. 134 at 26]; O.C.G.A. § 15-18-20;

*Peppers v. Cobb Cnty., Ga.*, 835 F.3d 1289, 1299 (11th Cir. 2016). Several courts have held that a statute, like § 15-18-20, was sufficient to find that the first factor weighed in favor of the personal staff exception. *Gunaca v. Texas*, 65 F.3d at 471; *Taplin v. Johnson*, 90 Fed. Appx. 736, 739 (5th Cir. 2004); *Dubisar-Dewberry v. District Atty's Off.*, 927 F. Supp. 1479, 1484 (M.D. Ala. Mar. 28, 1996).

The court also felt that Howard may not have had full authority to hire Younge since the position required obtaining funding from Fulton County and signing an oath that Younge was on his personal staff. [Doc. 134 at 26]. So the fact that the position was "contingent upon the approval of the Fulton County Personnel Department and Finance Department," since Howard had to request funding from the County, on balance, led to the court's conclusion that the factor was neutral. [Doc. 104-1 at 18, Employment Offer Letter]. As to these "contingencies," Fulton County describes in its published policies how a personal staff member may be hired[7]:

- "Elected officials shall have full discretion to recruit for personal staff in the manner they deem appropriate."
- Once the elected official has selected an acceptable candidate, the elected official shall submit a Selection Form to the Human Resources Operations Division indicating the name(s) of the candidate(s) selected and action to take

---

[7]   Fulton County Human Resources Handbook at 379-380, https://www.fultoncountyga.gov/for-employees/policies-and-procedures (last visited January 12, 2024).

for each candidate. All requests to hire personal staff shall be accompanied by a sworn notarized statement signed directly by the elected official, and not a designee, attesting that the individual meets the minimum qualifications of the position and that the elected official believes the individual and the position fit the definition of personal staff.

The "contingency" remark in the offer letter refers to merely perfunctory tasks for an elected official to hire a personal staff member. The offer letter went on to state that her "appointment and employment remain subject to the pleasure and discretion of the District Attorney." [Doc. 104-4 at 18]. It is also undisputed that Howard had the sole authority to terminate Younge. [Doc. 95, Howard Dep. at 81-82]. While Howard believes this factor firmly favors the personal staff exception, the District Court's finding of neutrality does not disturb the weight of evidence that heavily favors the application of the personal staff exception.

## B. *Whether Younge Was Personally Accountable to Howard.*

Significant evidence was developed on this issue that easily weighed in favor of the conclusion that the exception applies to Younge. Each individual deponent— including Younge— testified that Younge was accountable solely to Howard. [Doc. 93, Younge Dep. at 62, 124, 133; Doc. 95, Howard Dep. at 24; Doc. 94, Nelson Dep. at 39]. And Younge testified in granular detail about her accountability to Howard and their intimate working relationship. For example, the Magistrate quoted Younge's deposition:

- she met with Howard every day; [Doc. 93, Younge Dep. at 34-39]

- if Howard "needed something done, [she] would handle it"; [*Id.* at 38]

- she would discuss the progress of initiatives she was overseeing with Howard, "All day every day"; [*Id.* at 43]

- she had meetings with Howard "all the time" and, as a member of his personal staff, she "was in and out of his office because [the personal staff] were . . . the essential folks; [*Id.* at 42, 43, 46-47, 68]

- she did not need to make appointments to see Howard because she "was literally his go-to person for almost everything," and she was "one of the few on staff that was just able to walk into his office at any time"; [*Id.*]

- "most folks would need to schedule an appointment or . . . would request to see him through his executive assistant. But [she] had kind of an open-door access to him." [*Id.* at 68].

Howard was also asked extensively about Younge's accountability to him by Younge's counsel. Like Younge, Howard also testified that he was Younge's immediate supervisor, that he "closely directed" Younge, and that Younge would come to his office "several times a day." [Doc. 95, Howard Dep. at 15]. Both Younge and Howard explained how they would meet each morning to "talk about activities for that day," and again at the end of the day "to summarize what had gone on that day" and make plans in the near term. [*Id.* at 95]. The Magistrate also recognized that the oath Howard signed affirming that Younge was a member of his personal staff was an acknowledgment that she was *directly supervised and personally accountable to only that elected official.*" [Doc. 128 at 36]. And the District Court found that it was relevant that Younge testified that Howard directed

her to come into the office before her official start date to "observe" Howard and how the office was run. She also testified that Howard was responsible for assigning her work, and that Howard set the expectations for her to be available to him constantly "around the clock." [Doc. 134 at 28].

The Magistrate determined that the "second factor weighs heavily in favor of finding that Younge was a member of Howard's personal staff and that she was not an employee within the meaning of Title VII," and the District Court remarked how Younge "was clearly 'personally accountable' only to Howard." [Docs. 128 at 38; 134 at 29].

## C. *Younge's Representation of Howard in the Eyes of the Public.*

The District Court also found that the third factor favored the conclusion that Younge was a member of Howard's personal staff. [Docs. 134 at 31; 128 at 40]. The "nature of [Younge's] position, along with her own testimony, persuades the Court that [Younge] unquestionably represented Howard in the eyes of the public." [Doc. 134 at 30].

Younge testified at length about her importance in the office as part of Howard's "executive staff" and how she publicly represented the District Attorney's Office in myriad ways. For example, Younge testified that "[a]ny dignitaries or anybody—any visitors that came to the office and had meetings with the DA, I was in." [Doc. 93, Younge Dep. at 34]. She later testified that her role as the Director of Policy and

Programs put her "in contact with a lot of persons in the community on behalf of the DA." [*Id.*]. And it is undisputed that Howard believed that, more than any other member of his personal staff, Younge represented him to the public. [Doc. 104-4 at 4]. Moreover, as the Director of Policy and Programs, Younge controlled 15-20 programs at any given time. And Howard would no doubt be judged by the voters for those programs' success or failure. [Docs. 93, Younge Dep. at 34-35, 36-37, 39; 104-4 at 3-4]. Younge testified that she was part of every matter of significance and would meet with the public about "program[s] that exist within the DA's office," a case "getting some public attention," or "media requests or something that made the news dealing with the DA's office." [*Id.*]. And she remarked that she was "pretty much" involved with everything the District Attorney's Office did. [*Id.*].

As the Magistrate and District Court recognized:

> As a matter of common knowledge and experience we know that [a district attorney] gets public credit for the good job done and impression made by his assistants and gets public criticism for the poor performance or impression made by his assistants. At election time he is judged by what he and his assistants have done.

*Wall v. Coleman*, 393 F. Supp. 826, 831 (S.D. Ga. 1975); *Shahar v. Bowers*, 114 F.3d 1097, 1104 n.15 (11th Cir. 1997). The record evidence strongly supports the finding that Younge was a member of Howard's personal staff, based mainly on Younge's own testimony.

### D. *Howard's Control Over Younge's Position*

Howard's control over Younge's position and day-to-day activities was considerable. This conclusion, again, was based in considerable part on Younge's own testimony. Younge testified that Howard was "very involved" in the programs she oversaw. [Doc. 93, Younge Dep. at 42]. Younge was crystal clear in her testimony that she met with Howard every day and that they discussed the programs "all day every day." [*Id.* at 43]. Younge also described how Howard would contact her about work during non-working hours and on the weekends, [*Id.*], that she was Howard's "go-to person," and that if Howard "needed something done I would handle it." [*Id.* at 38]. Finally, Younge discussed that she met with Howard "all the time," and that Howard directly set the agenda for the policies and programs that Younge worked on. [*Id.* at 38-39]. The Magistrate and the District Court found that the fourth factor "weighs firmly in favor of finding that Younge was a member of Howard's personal staff." [Doc. 128 at 41].

### E. *The Level of the Position Within the Chain of Command.*

It is undisputed that Younge was the third-highest-ranking employee at the District Attorney's Office. [Doc. 94, Nelson Dep. at 15; Doc. 95, Howard Dep. at 41-42; Doc. 128 at 41]. The Magistrate and District Court held that this factor also supported the finding that Younge was a member of Howard's personal staff. [Doc. 128 at 42]. Younge made no argument about this factor in her response to the Motion

for Summary Judgment and conceded that it supported the personal staff exception. [*Id.*].

Even if Younge had not conceded this element, the evidence supports the conclusion. Again, Younge testified that she was Howard's "go-to person for almost everything," that "the schedule that DA Paul Howard had, was my schedule," and that she was intimately involved in everything the District Attorney's Office was working on, and that she was in every meeting for "any and every project that had to do with the DA's Office." [Doc. 93, Younge Dep. at 34, 37, 68]. Howard echoed this as well in his testimony, remarking that Younge was a "key member of his personal staff" and "a high-ranking part of [his] staff." [Doc. 95, Howard Dep. at 110]. It is also undisputed that Younge had the second or third-highest salary at the District Attorney's Office, behind only Howard's (and possibly the Chief of Staff's). [Doc. 104-4 at 5]. Based on these undisputed facts, factor five also weighed strongly in favor of the personal staff exception.

F. *Intimacy of the Working Relationship Between Howard and Younge.*

Younge's deposition testimony, along with other relevant undisputed material facts detailed above, also resolve this element. Again, Younge testified that she worked intimately with Howard "all day every day," and that Howard "demanded [Younge's] constant availability around the clock." [Doc. 93, Younge Dep. at 43]. She testified that she was "literally [Howard's] go-to person for almost everything."

[*Id.* at 68]. She testified that she was "one of the few on staff that was just able to walk into his office at any time" and that "most folks would have to schedule an appointment or request to see him through his executive assistant. But I had kind of an open-door access to him." [*Id.*]. And she discussed how she had meetings with Howard "all the time" and that Howard's schedule "was [her] schedule." [*Id.* at 34-35, 46].

It was this kind of intimate working relationship, first-line advisor, and sensitive position of trust, that Congress contemplated when the personal staff exception was enacted. *See, e.g., Teneyuca v. Bexar Cnty.*, 767 F.2d at 152 (finding that Congress intended for the personal staff exception to apply to individuals in highly intimate and sensitive positions of responsibility on the elected official's staff).

Again, if Younge's deposition testimony were the only evidence in the record, standing alone it would be sufficient to find that Younge was member of Howard's personal staff. The additional undisputed evidence merely bolsters her testimony. The District Court agreed with the Magistrate that "[a]s the most important factor, this sixth factor makes it abundantly clear that the 'personal staff' exemption applies in this case." [Docs. 128 at 43; 134 at 22, 25 (agreeing with the Magistrate that five of the six factors decisively warrant applying the exemption, including the most important factor (intimacy of the working relationship))]. The District Court

correctly analyzed the factors and determined that the balance of the factors unmistakably established that Younge was a member of Howard's personal staff.

G. *Younge's Argument That She Was No Longer A Member of Howard's Personal Staff Would Render Congress's Intent Meaningless.*

Younge contends that Howard began treating her differently after she notified him of her pregnancy. And so, the argument goes, Younge was no longer a member of Howard's personal staff after that time. This is circular logic that would render the personal staff exception meaningless. A plaintiff would always claim that the elected official treated her differently after the purported discrimination began with the result being she was no longer a personal staff member. As the District Court recognized, the argument would, if accepted, "eliminate the exclusion to any member of any elected official's personal staff inasmuch as a loss of trust and intimacy would be the forerunner of most terminations." [Doc. 134 at 24 (citing *Townsend v. Shook*, 323 F. App'x 245, 250 (4th Cir. 2009))]. "Plaintiff's interpretation would give the exclusion developed by Congress no meaning, and this Court cannot accept such an interpretation." [*Id.*].

The reason, however, for rejecting Younge's position goes beyond the circular logic that the argument employs. The District Court recognized that Younge remained the Director of Policy and Programs and Deputy Chief of Staff until her

termination. And Younge makes no claim that she was divested of her control of the administrative division of the District Attorney's Office, that she no longer supervised the more than thirty employees under her purview, or that she was no longer overseeing the 15-20 programs that were her responsibility. And she remained the third in command of the District Attorney's Office, and her salary was unaltered— which was either the second or third highest within the District Attorney's Office.

The record evidence—based mainly on Younge's own testimony— clearly, decisively, and irrefutably show that no genuine issue of material fact exists as to whether Younge was part of Howard's personal staff.

## V. CONCLUSION

The District Court correctly applied this Court's precedent that expressly addresses affirmative defenses under Fed. R. Civ. P. 8(c). Younge merely argues, without any legitimate basis, that the District Court should have disregarded the long-settled precedent in this Circuit. The District Court performed a thorough analysis of the highly relevant discovery that was conducted on the personal staff exception and determined that Younge would not suffer any prejudice by permitting the affirmative defense. There is no colorable argument that the District Court abused its discretion when it determined that the personal staff exception could be considered.

Moreover, Younge has not demonstrated that summary judgment was inappropriate under the record. The arguments asserted by Younge would effectively render the personal staff exception meaningless. The balance of the personal staff elements weigh decisively in favor of the conclusion that Younge was a member of Howard's personal staff. Even accepting all facts in the light most favorable to Younge, the District Court did not error in determining no genuine issue of material fact exists as to whether Younge was part of Howard's personal staff. Since Younge is not an employee under the terms Title VII, summary judgment was appropriate, and the District Court's decision should be affirmed.

Respectfully submitted this 16th day of January 2024.

HENEFELD & GREEN, P.C.

/s/ Noah Green
Noah Green
Georgia Bar No. 468138
*Attorney for Appellee*

3017 Bolling Way NE, Suite 129
Atlanta, Georgia 30305
(404) 841-1275
ngreen@henefeldgreen.com

## CERTIFICATE OF COMPLIANCE

I hereby certify in accordance with FRAP 32(a)(7)(c) that this brief complies with the type-volume limitation specified in Rule 32(a)(7)(B). Specifically, it contains 10,379 words in the Brief.

/s/ Noah Green
Noah Green
Georgia Bar No. 468138

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 16, 2024, I electronically filed the foregoing *Appellee's Response Brief* with the Clerk of Court using the CM/ECFsystem which will automatically send email notification of such filing to all attorneys of record.

HENEFELD & GREEN, P.C.

/s/ Noah Green
Noah Green
Georgia Bar No. 468138
*Attorney for Appellee*

3017 Bolling Way NE, Suite 129
Atlanta, Georgia 30305
(404) 841-1275
ngreen@henefeldgreen.com