**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

**No. 23-11418-F**

---

DR. JASMINE YOUNGE,
Plaintiff - Appellant

v.

FULTON JUDICIAL CIRCUIT DISTRICT ATTORNEY'S OFFICE, GEORGIA
Defendant – Appellee

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
HONORABLE WILLIAM M. RAY, II
(1:20-cv-00684)
_____

**APPELLANT'S REPLY BRIEF**

_____

Matthew C. Billips
Benjamin A. Stark
BARRETT & FARAHANY
P.O. Box 530092
Atlanta, GA 30353
(404) 214-0120
(404) 214-0125 fax
matt@justiceatwork.com
bstark@justiceatwork.com
*Counsel for Plaintiff-Appellant*

**C-1**

**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT**

Plaintiff-Appellant, Jasmine Younge, pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, 26.1-2 and 26.1-3, hereby files her Certificate of Interested Persons and Corporate Disclosure Statement:

1. Jasmine Younge – Plaintiff-Appellant;

2. Matthew C. Billips – Counsel to Plaintiff-Appellant;

3. Amanda A. Farahany – Counsel to Plaintiff-Appellant;

4. Benjamin A. Stark – Counsel to Plaintiff-Appellant;

5. Grace A. Starling – former Counsel to Plaintiff-Appellant;

6. Barrett & Farahany – Law Firm of Counsel to Plaintiff-Appellant;

7. Fulton Judicial Circuit District Attorney's Office, Georgia – Defendant-Appellee;

8. Paul L. Howard, Jr. – former Defendant

9. Paul Henefield – Counsel to Defendant-Appellee;

10. Noah Green – Counsel to Defendant-Appellee;

11. Courtney Poole – former Counsel to Defendant-Appellee;

12. Applebaum Henefield & Green, P.C. – Law Firm of Counsel to Defendant-Appellee;

13. Honorable William M. Ray, II – United States District Court Judge; and

14. Honorable Catherine M. Salinas – United States District Magistrate Court Judge.

Respectfully submitted, this 7th day of March 2024.

**BARRETT & FARAHANY**

s/ *Benjamin A. Stark*
Benjamin A. Stark
Georgia Bar No. 601867

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES AND
CORPORATE DISCLOSURE STATEMENT .................................................. i

TABLE OF CONTENTS .................................................................................. iii

TABLE OF AUTHORITIES ........................................................................... vi

ARGUMENT ..................................................................................................... 1

I.    PLAINTIFF HAS PROPERLY RECONCILED THE "GOOD CAUSE"
AND "PREJUDICE" LINES OF PRECEDENT. DEFENDANT HASN'T
EVEN TRIED TO DO SO .................................................................... 1

  a.  This Court's Precedent Reconciles the Good Faith Line Under Rule 16(b)
      and the Prejudice Line Under Rule 15(a) ......................................... 2

    i.  The "Prejudice" Inquiry Is Part of the Lenient Rule 15(a) Analysis
        for Allowing Timely Amendment of Pleadings .............. 3

    ii.  A Defendant Seeking to Amend Its Answer After the Scheduling
        Order's Deadline for Amending Pleadings Must First Prove "Good
        Cause" for the Untimely Amendment under Rule 16(b) Before It Can
        Avail Itself of the Lenient Rule 15(a) Analysis ......................... 4

    iii.  The Reconciled Rule – Requiring Proof of "Good Cause" for
        Untimely Amendments Before the Lenient Rule 15(a) Analysis is
        Applied – Upholds the Litigants' Obligation to Obey Court Orders
        ................................................................................................. 7

  b.  The Reconciled Rule Does Not "Disregard" the Prejudice Line.
      Defendant is the Party Asking this Court to Ignore Binding Precedent
      ................................................................................................... 9

    i.  The Prejudice and Good Cause Lines Both Allow for the
        Reconciled Rule ................................................................ 10

    ii.  Defendant Asks the Court to do the Very Thing It Accuses
        Plaintiff of Doing: Ignore Binding Precedent ................... 11

c.  Rule 8(c) is Not the Only Rule Applicable to Affirmative Defenses. Rule 16(b) and 15(a) Also Apply When a Defendant Seeks to Assert an Untimely Affirmative Defense ...................................................... 12

II.  THE DISTRICT COURT ABUSED ITS DISCRETION BY FAILING TO CONSIDER WHETHER DEFENDANT DEMONSTRATED "GOOD CAUSE" FOR ADDING A NEW DEFENSE. DEFENDANT HASN'T EVEN TRIED TO SHOW IT HAD "GOOD CAUSE." .................... 13

III.  PLAINTIFF WAS PREJUDICED BY ALLOWING DEFENDANT TO ASSERT THE UNPLED DEFENSE ................................................. 16

a.  Defendant Has Not Addressed Precedent Showing Plaintiff Was Prejudiced as a Matter of Law ....................................................... 16

b.  Younge's Inability to File A Grievance Has Nothing to Do With Whether She Was On Notice of the Personal Staff Exemption .................. 16

IV.  SUMMARY JUDGMENT ON THE PERSONAL STAFF EXEMPTION WAS IMPROPER BECAUSE, *INTER ALIA*, HOWARD REMOVED FROM YOUNGE THE DUTIES THAT ARGUABLY MADE HER "PERSONAL STAFF." THIS INTERPRETATION OF THE EXEMPTION COMPORTS WITH CONGRESSIONAL INTENT ........................ 17

a.  Overview ...................................................................... 18

b.  Congress's Intent for the Personal Staff Exemption ..................... 20

c.  Congress's Intent for the Personal Staff Exemption ..................... 22

i.  Factor 6 ................................................................ 22

ii.  Factor 3 ................................................................ 23

d.  The Narrow Construction of the Personal Staff Exemption Advocated Herein Does <u>Not</u> Render the Exemption Meaningless ................ 24

e.  Additional Argument: Howard Lacked Plenary Power of Appointment ...................................................................... 26

iv

V.    CONCLUSION......................................................................... 27

CERTIFICATE OF COMPLIANCE............................................. 29

CERTIFICATE OF SERVICE ..................................................... 29

## <u>TABLE OF AUTHORITIES</u>

**<u>U.S. Supreme Court Cases</u>:**

*Foman v. Davis*, 371 U.S. 178 (1962) .............................................................. 3, 11

*Univ. of Tenn. v. Elliott*, 478 U.S. 788 (1986) ..................................................... 17


**<u>Circuit Court Cases</u>:**

*Allen v. Bd. Of Pub. Educ.*, 495 F.3d 1306 (11th Cir. 2007) ............................ 25

*Caplan v. All Am. Auto Collision, Inc.*, 36 F.4th 1083 (11th Cir. 2022) .......... 1,    6, 10

*Cook v. Howard*, 484 F. App'x 805 (4th Cir. 2012) ......................................... 5

*Cromer v. Brown*, 88 F.3d 1315 (4th Cir. 1996)  ............................................ 19, 21, 22

*Digennaro v. Whitehair*, 467 F. App'x 42 (2d Cir. 2012)................................. 9

*Dimensional Communs., Inc. v. Oz Optics, Ltd.*, 148 F. App'x 82 (3d Cir. 2005) ................................................................................... 5

*EEOC v. Reno*, 758 F.2d 581 (11th Cir. 1985)................................................. 18, 24

*Feliciano v. City of Miami Beach*, 707 F.3d 1244 (11th Cir. 2013)................. ..24

*González-Rivera v. Centro Médico Del Turabo, Inc.*, 931 F.3d 23 (1st Cir. 2019) ................................................................................... 9

*Green Island Holdings, LLC v. British Am. Isle of Venice (BVI), Ltd.*, 521 F. App'x 798 (11th Cir. 2013)..................................................................... 13

*Hartis v. Chi. Title Ins. Co.*, 694 F.3d 935 (8th Cir. 2012) ............................. 5, 14

*Hassan v. United States Postal Serv.*, 842 F.2d 260 (11th Cir. 1988) ............. 1, 10

*Hawthorne Land Co. v. Occidental Chem. Corp.*, 431 F.3d 221 (5th Cir. 2005) ................................................................................... 5, 15

*Haynes v. McCalla Raymer LLC*, 793 F.3d 1246 (11th Cir. 2015)................. 3, 11

*Int'l Ship Repair & Marine Servs. v. N. Assurance Co. of Am.*, 503 F. App'x 681 (11th Cir. 2013).................................................... 13

*Johnson v. Mammoth Recreations*, 975 F.2d 604 (9th Cir. 1992)................... 6, 8

*Laurie v. Ala. Court of Criminal Appeals*, 88 F. Supp. 2d 1334 (M.D. Ala. 2000), *aff'd*, 256 F.3d 1266 (11th Cir. 2001)............................................... 18, 22

*Leary v. Daeschner*, 349 F.3d 888 (6th Cir. 2003)......................................... 5., 13

*Lower v. Albert*, Nos. 97-2122/97-2123, 1999 U.S. App. LEXIS 16976, at *11 (6th Cir. July 20, 1999)............................................................................ 5

*Maynard v. Bd. of Regents*, 342 F.3d 1281 (11th Cir. 2003)........................... 16

*Miceli v. JetBlue Airways Corp.*, 914 F.3d 73 (1st Cir. 2019) ........................ 8

*Millennium Partners, L.P. v. Colmar Storage, LLC*, 494 F.3d 1293 (11th Cir. 2007)............................................................................... 13

*Morgan v. Family Dollar Stores*, 551 F.3d 1233 (11th Cir. 2008) ................ 20

*O'Brien v. Town of Bellingham*, 943 F.3d 514 (1st Cir. 2019)........................ 4

*Parker v. Columbia Pictures Indus.*, 204 F.3d 326 (2d Cir. 2000) ................ 6

*Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819 (11th Cir. 2009)............. 16

*Reese v. Herbert*, 527 F.3d 1253 (11th Cir. 2008)........................................... 4, 16

*Saewitz v. Lexington Ins. Co.*, 133 F. App'x 695 (11th Cir. 2005)................... 13

*Shahar v. Bowers*, 114 F.3d 1097 (11th Cir. 1997)......................................... 20

*Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709 (8th Cir. 2008) ................... 12

*Smith v. Haynes & Haynes P.C.*, 940 F.3d 635 (11th Cir. 2019). .................... 14

*Sosa v. Airprint Sys.*, 133 F.3d 1417 (11th Cir. 1998)..................................... 1, 4, 8, 9, 11, 12, 14, 15

*Teneyuca v. Bexar Cty.*, 767 F.2d 148 (5th Cir. 1985) .................................... 17, 18, 20, 21, 24, 26

*Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542 (7th Cir. 2005) ................................................................................................... 15

*Universal Physician Servs., LLC v. Del Zotto*, 842 F. App'x 350 (11th Cir. 2021)................................................................................. 1, 10

*Valpak Direct Mktg. Sys. v. Maschino*, 349 F. App'x 368 (11th Cir. 2009)..... ..13

*Vercon Constr., Inc. v. Highland Mortg. Co.*, 187 F. App'x 264 (4th Cir. 2006) ................................................................................................... 14

*Williams v. McNeil*, 557 F.3d 1287 (11th Cir. 2009) ...................................... 14

*Yellow Pages Photos, Inc. v. YP, LLC*, 856 F. App'x 846 (11th Cir. 2021)..... ..3

*Young v. City of Palm Bay*, 358 F.3d 859 (11th Cir. 2004).............................. 7

**District Court Cases**

*Milliones v. Fulton Cty. Gov't*, No. 1:12-CV-3321-TWT-ECS, 2013 U.S. Dist. LEXIS 79798 (N.D. Ga. Apr. 30, 2013)................................ 17, 18

*Moyer v. Walt Disney World Co.*, 146 F. Supp. 2d 1249 (M.D. Fla. 2000)..... ..7

*Salomon Constr. & Roofing Corp. v. James McHugh Constr. Co.*, No. 1:18-cv-21733-UU, 2019 U.S. Dist. LEXIS 85120, at *5-6 (S.D. Fla. Apr. 17, 2019). ................................................................................................... 7

*Shaneyfelt v. REC I/Blue Springs Ltd. P'ship*, Civil Action No. CV-11-S-4366-NE, 2013 U.S. Dist. LEXIS 31308, at *39-40 (N.D. Ala. Mar. 7, 2013)............... 2

## <u>Other Authority</u>

1972 U.S. Code Cong. & Ad. News, 2137, 2180 .............................................. 20

Merriam Webster Online Dictionary ................................................................ 27

# ARGUMENT

## I. PLAINTIFF HAS PROPERLY RECONCILED THE "GOOD CAUSE" AND "PREJUDICE" LINES OF PRECEDENT. DEFENDANT HASN'T EVEN TRIED TO DO SO.

> This Circuit has a well-established approach to resolving conflicts in our precedent. We are obligated, if at all possible, to distill from apparently conflicting prior panel decisions a basis of reconciliation and to apply that reconciled rule. . . And if reconciliation is not possible, we must follow the earliest precedent that reached a binding decision on the issue.

*Caplan v. All Am. Auto Collision, Inc.*, 36 F.4th 1083, 1094 (11th Cir. 2022) (internal quotations omitted).

In keeping with this Court's well-established approach, Plaintiff-Appellant Dr. Jasmine Younge ("Plaintiff" or "Younge") demonstrated in her Initial Brief how two seemingly conflicting lines of precedent are reconciled. The Good Cause line – stemming from *Sosa v. Airprint Sys.*, 133 F.3d 1417 (11th Cir. 1998) – requires parties, including defendants, seeking to add new, previously-unpled claims or defenses <u>after</u> the Scheduling Order's deadline for amending pleadings to first prove "good cause" for modifying the deadline to allow the untimely amendment. The Prejudice line – stemming from *Hassan v. United States Postal Serv.*, 842 F.2d 260 (11th Cir. 1988) – allows defendants to assert new defenses that were not pled in the Answer unless the plaintiff can show she would be prejudiced by adding the defense. Plaintiff showed how these lines may be reconciled: if a defendant seeks to add a defense <u>after</u> the Scheduling Order's

deadline for amending pleadings, it must <u>first</u> demonstrate good cause under Fed. R. Civ. P. 16(b) for allowing the untimely amendment. If the defendant succeeds in doing so, <u>then</u> the Court may analyze whether leave is permitted under Fed. R. Civ. P. 15(a)'s lenient "when justice so requires" inquiry – with <u>"prejudice" being a subset of that latter inquiry</u>. [Initial Brief, pp. 22-23, 28-32].

In contrast, Defendant-Appellee Fulton Judicial Circuit District Attorney's Office, Georgia ("Defendant" or the "DA's Office") makes no attempt whatsoever to reconcile these two longstanding lines of precedent. It simply ignores the Good Cause line while (incorrectly) accusing Plaintiff of ignoring the Prejudice line.

### a. This Court's Precedent Reconciles the Good Faith Line Under Rule 16(b) and the Prejudice Line Under Rule 15(a).

At first glance, the Good Cause and Prejudice lines appear to adopt "seemingly incompatible approaches to untimely, affirmative defenses." *Shaneyfelt v. REC I/Blue Springs Ltd. P'ship*, Civil Action No. CV-11-S-4366-NE, 2013 U.S. Dist. LEXIS 31308, at *39-40 (N.D. Ala. Mar. 7, 2013). If the Scheduling Order's deadline for amending pleadings has passed, the Good Cause line <u>requires</u> a defendant to prove "good cause" before it can amend its Answer to assert a new defense and <u>precludes</u> adding the defense unless "the schedule <u>cannot</u> be met despite the diligence of the party seeking the extension." *Id*. at *40 (emphasis in original) (internal quotations omitted). In contrast, the Prejudice line allows a

defendant to amend its Answer[1] to assert an unpled defense if the plaintiff receives notice of the defense by some means other than the pleadings and is not prejudiced by it. *Id.* at *41. But a closer examination of both lines reveals a rule that reconciles them.

### i. The "Prejudice" Inquiry Is Part of the Lenient Rule 15(a) Analysis for Allowing Timely Amendment of Pleadings.

Normally, to acquire permission to amend its Answer, a defendant need only establish the relatively lenient standard of Fed. R. Civ. P. 15(a)(2), which states that courts should "freely give leave" to amend "when justice so requires." Even this lenient standard has its limits, however. The Court may deny leave to amend on grounds such as "undue delay", "bad faith or dilatory motive on the part of the movant", or – most relevant for this case – "undue prejudice to the opposing party by virtue of allowance of the amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). *See also Haynes v. McCalla Raymer LLC*, 793 F.3d 1246, 1250 (11th Cir. 2015). Therefore, **the question of "prejudice" is a subset of the "when justice so requires" inquiry under Rule 15(a) for allowing timely amendment of pleadings**.

---

[1] Affirmative defenses are waived if they are not pled in the Answer. *Yellow Pages Photos, Inc. v. YP, LLC*, 856 F. App'x 846, 869 (11th Cir. 2021). Therefore, a defendant seeking to assert a previously-unpled defense is, in effect, asking to amend its Answer, regardless of whether it does so via a formal request to amend. It would be just the same for a plaintiff seeking to assert a new, previously-unpled claim.

### ii. A Defendant Seeking to Amend Its Answer <u>After</u> the Scheduling Order's Deadline for Amending Pleadings Must <u>First</u> Prove "Good Cause" for the Untimely Amendment under Rule 16(b) Before It Can Avail Itself of the Lenient Rule 15(a) Analysis.

If the deadline set forth in the District Court's Scheduling Order for amending pleadings has passed, a defending seeking to amend its Answer[2] must do more than satisfy Rule 15(a)'s lenient "justice so requires" standard. As this Court has held, if the Scheduling Order's deadline has passed, the party seeking amendment "must <u>first</u> demonstrate good cause under Rule 16(b) <u>before</u> [the Court] will consider whether amendment is proper under Rule 15(a)." *Sosa v. Airprint Sys.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (emphasis added). "This good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Id*. at 1418.

This rule – that **a party seeking to amend its pleading after the deadline for doing so in the Scheduling Order must <u>first</u> prove Rule 16(b) "good cause" for allowing the untimely amendment before it can take advantage of the relaxed Rule 15(a) "when justice so requires" standard** – isn't limited to this Court. It is the widespread consensus of Circuit Courts across the nation. *O'Brien v. Town of Bellingham*, 943 F.3d 514, 527 (1st Cir. 2019) ("'[W]hen a litigant seeks leave to amend after the expiration of a deadline set in a scheduling order,'

---

[2] Indeed, any parting seeking to amend its pleading.

however, 'Rule 16(b)'s more stringent good cause standard supplants Rule 15(a)'s leave freely given standard.'"); *Hartis v. Chi. Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012) ("Rule 16(b)'s good-cause standard governs when a party seeks leave to amend a pleading outside of the time period established by a scheduling order, not the more liberal standard of Rule 15(a)."); *Cook v. Howard*, 484 F. App'x 805, 814-15 (4th Cir. 2012) (the "liberal amendment policy" of Rule 15(a)(2) "applies, however, prior to the entry of a scheduling order, at which point, under Rule 16(b)(4), a party must first demonstrate 'good cause' to modify the scheduling order deadlines, before also satisfying the Rule 15(a)(2) standard for amendment."); *Hawthorne Land Co. v. Occidental Chem. Corp.*, 431 F.3d 221, 227 (5th Cir. 2005) ("Rule 16(b) governs the amendment of pleadings after a deadline in a scheduling order has expired: 'Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave.'"); *Dimensional Communs., Inc. v. Oz Optics, Ltd.*, 148 F. App'x 82, 85 (3d Cir. 2005) ("[Defendant] now argues that the Third Circuit has not adopted a 'good cause' requirement in determining the propriety of a motion to amend a pleading after the deadline has elapsed . . . We disagree."); *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003)[3] ("Once the scheduling order's deadline passes, a [party] first must

---

[3] *See also Lower v. Albert*, Nos. 97-2122/97-2123, 1999 U.S. App. LEXIS 16976, at *11 (6th

show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)."); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("[T]he Rule 16(b) 'good cause' standard, rather than the more liberal standard of Rule 15(a), governs a motion to amend filed after the deadline a district court has set for amending the pleadings."); *Johnson v. Mammoth Recreations*, 975 F.2d 604, 608 (9th Cir. 1992) (a "party seeking to amend [its] pleading after [the] date specified in [the] scheduling order must first show 'good cause' for amendment under Rule 16(b), then, if 'good cause' be shown, the party must demonstrate that amendment was proper under Rule 15").

This consensus rule is how the Court may fulfill its obligation to "if at all possible, [] distill from apparently conflicting prior panel decisions a basis of reconciliation and [] apply that reconciled rule." *Caplan v. All Am. Auto Collision, Inc.*, 36 F.4th 1083, 1094 (11th Cir. 2022). When, as here, a defendant seeks to amend its Answer (by asserting an unpled defense) <u>after</u> the deadline for such amendments in the Scheduling Order, it must <u>first</u> prove "good cause" for modifying the schedule (that is, its own diligence in seeking the amendment) [the Good Cause line]. If the defendant succeeds in doing so, then, and <u>only</u> then should

---

Cir. July 20, 1999) ("The proviso in Ruel 15(a) that 'leave [to amend] shall be freely given when justice so requires' presupposes that the moving party has complied with any Rule 16 deadline.").

the court analyze whether "justice requires" the amendment – with the question of whether the plaintiff was "prejudiced" by the amendment being a subset of this latter inquiry [the Prejudice line].

Notably, Defendant makes no attempt whatsoever to proposed an alternative reconciled rule.

### iii. The Reconciled Rule – Requiring Proof of "Good Cause" for Untimely Amendments Before the Lenient Rule 15(a) Analysis is Applied – Upholds the Litigants' Obligation to Obey Court Orders.

The reason this Court – along with most other Circuit Courts – requires parties to prove "good cause" for an amendment if they fail to meet the Scheduling Order's deadline is obvious: "[d]eadlines are not meant to be aspirational[.]" *Young v. City of Palm Bay*, 358 F.3d 859, 864 (11th Cir. 2004). As one District Court bluntly put it, "compliance with the Federal Rules of Civil Procedure and this Court's scheduling orders **IS NOT OPTIONAL**, and failure to timely adhere to these rules has consequences." *Salomon Constr. & Roofing Corp. v. James McHugh Constr. Co.*, No. 1:18-cv-21733-UU, 2019 U.S. Dist. LEXIS 85120, at *5-6 (S.D. Fla. Apr. 17, 2019) (emphasis in original). A "Scheduling Order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Moyer v. Walt Disney World Co.*, 146 F. Supp. 2d 1249, 1252 (M.D. Fla. 2000) (internal quotations omitted).

That is why this Court <u>first</u> requires proof of "good cause" before untimely amendments may be considered. *Sosa v. Airprint Sys.*, 133 F.3d 1417, 1419 (11th Cir. 1998) ("If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure."). Other Circuits are in agreement:

> Disregard of the [scheduling] order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier. Rule 16 was drafted to prevent this situation and its standards may not be short-circuited by an appeal to those of Rule 15.

*Johnson*, 975 F.2d at 610. *See also Miceli v. JetBlue Airways Corp.*, 914 F.3d 73, 86 (1st Cir. 2019) ("Such an elevated [good cause] standard makes perfect sense: without it, 'scheduling orders would be little more than aspirational statements, to be disregarded by the parties whenever compliance proves inconvenient.'").

Defendant argues that ignoring the Good Cause rule does not "prevent[] district courts from managing their dockets and scheduling orders." [Appellee's Brief, pp. 29-30]. But the point is not whether courts retain some ability to control their dockets once parties can disregard Scheduling Orders without consequence. The point is that Scheduling Orders <u>must</u> be followed, and if a defendant fails to do so, it may not avail itself of Rule 15(a)'s lenient standard for amendments unless "the schedule cannot 'be met despite the diligence of the party seeking the

extension.'" *Sosa*, 133 F.3d at 1418. In any case, the Circuit Courts disagree with Defendant's assessment of the impact of skipping the Good Cause rule on courts' ability to manage their docket: "[W]henever a party, without good cause, neglects to comply with reasonable deadlines, the court's ability to manage its docket is compromised." *González-Rivera v. Centro Médico Del Turabo, Inc.*, 931 F.3d 23, 28 (1st Cir. 2019).

This is why Circuit Courts across the nation <u>first</u> require proof of Rule 16(b) "good cause" when the party seeking amendment has missed the Scheduling Order's deadline. *Digennaro v. Whitehair*, 467 F. App'x 42, 44 (2d Cir. 2012) ("Although Rule 15(a) of the Federal Rule of Civil Procedure permits courts to freely give leave for a party to amend its pleadings 'when justice so requires' . . . this provision is balanced with Rule 16(b) so as not to render scheduling orders meaningless <u>and undermine a court's ability to control its docket.</u>") (emphasis added).

### b. The Reconciled Rule Does Not "Disregard" the Prejudice Line. <u>Defendant</u> is the Party Asking this Court to Ignore Binding Precedent.

Defendant accuses Plaintiff of asking this Court to "disregard" or "ignore" the Prejudice line. [Appellee's Brief, pp. 25-31]. Wrong. The Reconciled Rule set forth *supra* does not "disregard" the Prejudice line. It <u>incorporates</u> the Prejudice line as the 2nd step of a two-step analysis. Defendant, on the other hand, essentially

asks this Court to disregard the Good Cause line, because it never even addresses that line or attempts to incorporate it into a reconciled rule.

Neither line of precedent may be ignored. But they must be reconciled, "if at all possible." *Caplan v. All Am. Auto Collision, Inc.*, 36 F.4th 1083, 1094 (11th Cir. 2022).

### i. The Prejudice and Good Cause Lines Both Allow for the Reconciled Rule.

Defendant focuses heavily on the seminal case of the Prejudice line: *Hassan v. United States Postal Serv.*, 842 F.2d 260 (11th Cir. 1988). But it is worth noting that *Hassan* includes no analysis (or even any mention) of Scheduling Orders, "good cause", or Rule 16(b). Indeed, Plaintiff has diligently searched this Court's cases and has not found any cases applying the Prejudice standard that even acknowledged the "good cause" inquiry.

It is unclear why these cases do not address Scheduling Orders or "good cause." Perhaps the defendants in those cases sought to add their defenses before the Scheduling Order deadlines. Perhaps the district courts in those cases neglected to include an amendment deadline in the Scheduling Orders. Perhaps the plaintiffs opposing the new defenses simply neglected to raise the Scheduling Order or the "good cause" standard.

Whatever the explanation, neither *Hassan* nor its progeny explicitly say that "good cause" is irrelevant or should not be considered when the Scheduling Order

for deadlines has passed. None of these cases address Scheduling Orders or how missing the Scheduling Order deadline for amendments changes the analysis. In other words, the cases in the Prejudice line are essentially **Rule 15 cases that have nothing to say about the role of Rule 16(b) and Scheduling Orders** in the analysis. Therefore, they do not rule out – or even contradict – the Reconciled Rule.

In contrast, while the Good Cause cases – beginning with *Sosa v. Airprint Sys.*, 133 F.3d 1417 (11th Cir. 1998) – do not explicitly mention *Hassan* or the "prejudice" inquiry, <u>they have a place for that inquiry</u>. Once the defendant proves "good cause" for its failure to meet the Scheduling Order deadline, the court moves on to the Rule 15(a) inquiry. *Id*. at 1419. And "prejudice" is part of that latter inquiry. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Haynes v. McCalla Raymer LLC*, 793 F.3d 1246, 1250 (11th Cir. 2015).

The Reconciled Rule explains the decades-long existence of these seemingly-incompatible lines of precedent. It comes down to the Scheduling Order. In the Prejudice cases, there was no Scheduling Order or it was not at issue. In the Good Cause cases, there <u>was</u> a Scheduling Order which <u>was</u> at issue.

### ii. Defendant Asks the Court to do the Very Thing It Accuses Plaintiff of Doing: Ignore Binding Precedent.

Defendant offers no explanation for the continued existence of the Good Cause and Prejudice lines. It doesn't even attempt to follow the rule of *Caplan* by

trying to reconcile those two lines. Worse still, Defendant never addresses *Sosa*, "good cause", Scheduling Orders, or their place in the analysis.

Defendant, in essence, is pretending the Good Cause line does not exist and asking this Court to join it in that fantasy. It is <u>Defendant</u> who is ignoring binding precedent, all while falsely accusing Plaintiff of doing the same.

### c. Rule 8(c) is Not the Only Rule Applicable to Affirmative Defenses. Rule 16(b) and 15(a) Also Apply When a Defendant Seeks to Assert an Untimely Affirmative Defense.

Defendant's sole attempt to evade the Good Cause line is its claim that <u>only</u> "Rule 8(c) . . . implicates affirmative defenses" and its accusation that Plaintiff "conflates" that rule with the rules "that govern[] amendments to pleadings" (namely, Rule 16(b) and 15(a)). [Appellee's Brief, pp. 25, 28].

Of course, Rule 8(c) applies to affirmative defenses, but it is not the only Rule of Civil Procedure to do so. Rule 15(a) applies when a defendant seeks to amend its Answer to add an affirmative defense. Rule 16(b) applies when that defendant attempts to do so <u>after</u> the Scheduling Order's deadline. *See Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 714-15 (8th Cir. 2008) ("[Defendant's] belated motion to amend its answer and plead its affirmative preemption defense implicated three different federal rules of civil procedure" – 8(c), 15(a), and 16(b)).

Defendant's argument that <u>only</u> Rule 8(c) is relevant when a defendant attempts to assert a previously-unpled defense after the Scheduling Order deadline

– that Rule 16(b) is irrelevant – runs headlong into this Court's precedent. Over and over again, this Court has rebuffed attempts by defendants to add affirmative defenses to their Answers after the Scheduling Order deadline <u>on the grounds that the defendants failed to show "good cause" under Rule 16(b)</u>. *Universal Physician Servs., LLC v. Del Zotto*, 842 F. App'x 350, 355 (11th Cir. 2021); *Green Island Holdings, LLC v. British Am. Isle of Venice (BVI), Ltd.*, 521 F. App'x 798, 800-01 (11th Cir. 2013); *Int'l Ship Repair & Marine Servs. v. N. Assurance Co. of Am.*, 503 F. App'x 681, 682 (11th Cir. 2013); *Valpak Direct Mktg. Sys. v. Maschino*, 349 F. App'x 368, 369-71 (11th Cir. 2009); *Millennium Partners, L.P. v. Colmar Storage, LLC*, 494 F.3d 1293, 1298-99 (11th Cir. 2007); *Saewitz v. Lexington Ins. Co.*, 133 F. App'x 695, 699-700 (11th Cir. 2005).

Did this Court incorrectly "conflate" Rules 8(c) and 16(b), as Defendant claims? Of course not. If Rule 16(b) were not relevant to defendants' attempts to assert previously-unpled defenses – if Rule 8(c) and "prejudice" were the only considerations – then this Court would not have considered "good cause" in those cases and would have skipped to the "prejudice" inquiry.

**II.  THE DISTRICT COURT ABUSED ITS DISCRETION BY FAILING TO CONSIDER WHETHER DEFENDANT DEMONSTRATED "GOOD CAUSE" FOR ADDING A NEW DEFENSE. DEFENDANT HASN'T EVEN TRIED TO SHOW IT HAD "GOOD CAUSE."**

"An abuse of discretion occurs if the judge fails to apply the proper legal standard[.]" *Smith v. Haynes & Haynes P.C.*, 940 F.3d 635, 642 (11th Cir. 2019). The "proper legal standard" here is the Reconciled Rule set forth *supra* – <u>first</u> determine whether Defendant showed "good cause" for modifying the schedule and, if so, <u>then</u> determine whether Plaintiff would be "prejudiced" by allowing Defendant to assert the new defense. The District Court entirely failed to apply the first part of that inquiry. That is, it considered <u>only</u> the "prejudice" standard and never analyzed whether Defendant proved "good cause."[4] (Doc. 134, pp. 17-18). Because the District Court failed to apply the "good cause" standard, it abused its discretion.

This is especially true because the "good cause standard <u>precludes</u> modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Sosa*, 133 F.3d at 1418 (emphasis added). *See also Hartis v. Chi. Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012) ("Our precedent establishes that '[i]f a party files for leave to amend outside of the court's scheduling order, the party *must* show cause to modify the schedule.'") (emphasis in original); *Vercon Constr., Inc. v. Highland Mortg. Co.*, 187 F. App'x 264, 265 (4th Cir. 2006) ("when granting leave to amend . . . would require modifying the

---

[4] A District Judge has discretion whether to consider arguments that were not raised before the Magistrate Judge. *See Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009). Although the District Judge said Plaintiff didn't mention "good cause" in her Summary Judgment Response, it still substantively analyzed the argument that "good cause" is the proper standard here. (Doc. 134, pp. 16-18). Therefore, the "good cause" issue is properly before this Court.

district court's scheduling order, Federal Rule of Civil Procedure 16(b) requires that the movant <u>must</u> first show good cause") (emphasis added); *Hawthorne Land Co. v. Occidental Chem. Corp.*, 431 F.3d 221, 227 (5th Cir. 2005) ("<u>Only</u> upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave.") (emphasis added); *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) ("To amend a pleading after the expiration of the trial court's Scheduling Order deadline to amend pleadings, the moving party <u>must</u> show 'good cause.'") (emphasis added).

In other words, if Defendant did not show "good cause", the District Court did <u>not</u> have discretion to allow the unpled defense. The Good Cause standard would "preclude[]" the District Court from doing so. *Sosa*, 133 F.3d at 1418.

Plaintiff already showed in her Initial Brief [pp. 26-27] how Defendant failed to prove "good cause." It possessed the information underlying the unpled defense before the deadline to amend. *Sosa*, 133 F.3d at 1419. More importantly, Defendant never argued that it had "good cause" for adding a new defense after the deadline for amendments. <u>Even now</u>, Defendant's Appellee's Brief is devoid of any argument that it had "good cause" for the untimely defense!

The District Court abused its discretion by failing to apply the proper legal standard and, thereby, allowing Defendant to amend its Answer to assert an unpled defense without first showing "good cause."

### III. PLAINTIFF WAS PREJUDICED BY ALLOWING DEFENDANT TO ASSERT THE UNPLED DEFENSE.

#### a. Defendant Has Not Addressed Precedent Showing Plaintiff Was Prejudiced as a Matter of Law.

In her Initial Brief [pp. 36-40], Plaintiff identified three cases in which this Court found a party's attempt to assert a new claim or defense <u>after the close of discovery</u> prejudiced the opposing party. *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 823 (11th Cir. 2009); *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008); *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1287 (11th Cir. 2003). As Plaintiff pointed out, each of these cases found prejudice without requiring the opposing party to address whether existing discovery overlapped with the new claim/defense, to articulate the exact discovery strategy they would have taken had the claim/defense been timely pled, or to attempt to reopen discovery.

Defendant does not rebut – or even address – the binding precedent of *Ray*, *Reese*, and *Maynard*.

#### b. Younge's Inability to File A Grievance Has Nothing to Do With Whether She Was On Notice of the Personal Staff Exemption.

As part of a wall of words meant to distract from its failure to address *Ray*, *Reese*, and *Maynard*, Defendant claims Younge was put on notice as to the

applicability of the Personal Staff Exemption "when, following her termination, she discussed filing a grievance with Fulton County and was told she could not since she was part of an elected official's executive staff." [Appellee's Brief, p. 21].

This argument is absurd. Learning that, because of her rank, she had to file a complaint via some other means than the typical grievance procedure <u>did not</u> in any way alert Younge to the possibility that she might be entirely exempt from Title VII's protections.

Even if a layperson like Younge could be expected to make the leap from "you can't file this kind of grievance" to "you have no protection under the Civil Rights Act," the conclusions of state administrative agencies have zero preclusive effect on Title VII proceedings in federal court. *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 795-96 (1986). There was no reason for this grievance issue to make Younge think she might be excluded from Title VII's protections against discrimination.

**IV.   SUMMARY JUDGMENT ON THE PERSONAL STAFF EXEMPTION WAS IMPROPER BECAUSE, *INTER ALIA*, HOWARD REMOVED FROM YOUNGE THE DUTIES THAT ARGUABLY MADE HER "PERSONAL STAFF." THIS INTERPRETATION OF THE EXEMPTION COMPORTS WITH CONGRESSIONAL INTENT.**

The Personal Staff Exemption excludes the "personal staff" of an elected official from the anti-discrimination protections of Title VII. *Milliones v. Fulton Cty. Gov't*, No. 1:12-CV-3321-TWT-ECS, 2013 U.S. Dist. LEXIS 79798, at *6-8

(N.D. Ga. Apr. 30, 2013). Courts generally analyze the following factors to determine whether the Exemption applies:

> (1) Whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.

*Laurie v. Ala. Court of Criminal Appeals*, 88 F. Supp. 2d 1334, 1338 (M.D. Ala. 2000), *aff'd*, 256 F.3d 1266 (11th Cir. 2001) (*quoting Teneyuca v. Bexar Cty.*, 767 F.2d 148, 151 (5th Cir. 1985)).

### a. Overview.

In her Initial Brief [pp. 42-55], Plaintiff explained in detail why, even if the Court considers Defendant's unpled Personal Staff Exemption defense, the District Court erred in granting summary judgment to Defendant on that defense. In a nutshell:

- The Personal Staff Exemption is narrowly construed. *EEOC v. Reno*, 758 F.2d 581, 584 (11th Cir. 1985).

- Courts are reluctant to grant summary judgment on that defense. *Teneyuca*, 767 F.2d at 152; *Milliones*, 2013 U.S. Dist. LEXIS 79798 at *10.

- Because 3 of the 6 Personal Staff factors weigh <u>against</u> applying the Exemption to this case, the evidence was not so overwhelming as to justify overcoming that reluctance to grant summary judgment.

In particular, Plaintiff argued that, after learning of her pregnancy, former District Attorney Paul Howard ("Howard") removed from Younge the very duties that arguably made her "personal staff" – such that she was no longer personal staff[5] by the time she was terminated. [Initial Brief pp. 45-51, 54]. Plaintiff cited as persuasive authority *Cromer v. Brown*, 88 F.3d 1315, 1323-24, 1328-29 (4th Cir. 1996), in which the Fourth Circuit found that an employee lost his "personal staff" status after his job changed such that he no longer worked closely with the elected official.

Defendant's response is to reframe Plaintiff's argument as saying she was no longer personal staff because "Howard began treating her differently." [Appellee's Brief, p. 42]. Defendant then argues this interpretation would undermine congressional intent by "render[ing] the personal staff exception meaningless" because "[a] plaintiff would always claim that the elected official treated her differently after the purported discrimination began[.]" [*Id.*]

In fact, it is <u>Defendant's</u> interpretation – that an employee who <u>was</u> "personal staff" retains that status even after the elected official removes the very duties that made her personal staff – that undermines Congress's intent. To explain why, it is necessary to step back and identify Congress's intent.

---

[5] If she ever was.

**b. Congress's Intent for the Personal Staff Exemption.**

The Personal Staff Exemption "embodies the general and traditional proposition that positions of confidentiality, policy-making or acting and speaking before others on behalf of the chief are truly different from other kinds of employment." *Shahar v. Bowers*, 114 F.3d 1097, 1104 n.15 (11th Cir. 1997). Because such positions are truly different from other kinds of employment, "Congress intended for the personal staff exception to apply only to those individuals who are in highly intimate and sensitive positions of responsibility on the staff of the elected official." *Teneyuca*, 767 F.2d at 152 (emphasis added). That is why Congress created this specific exception to the otherwise broad and important protections of Title VII.

Congress also intended the Exemption to be construed narrowly, as demonstrated by the conference report on the legislation: "It is the conferees [sic] intent that this exemption shall be construed narrowly." 1972 U.S. Code Cong. & Ad. News, 2137, 2180 (*quoted in Teneyuca*, 767 F.2d at 152). As this Court has held in a different context, narrow construction of exemptions means applying them "only to those clearly and unmistakably within the terms and spirit of the exemption." *Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1269 (11th Cir. 2008).

In other words, the Personal Staff Exemption applies <u>only</u> "to those individuals who are in highly intimate and sensitive positions of responsibility on the staff of the elected official." *Teneyuca*, 767 F.2d at 152. If an employee is <u>not</u> in a "highly intimate and sensitive position[] of responsibility on the staff of the elected official," she is <u>not</u> personal staff.

By the same token, if an employee is <u>no longer</u> in a "highly intimate and sensitive position[] of responsibility," then she is <u>no longer</u> personal staff. *See Cromer*, 88 F.3d at 1323-24, 1328-29. If an elected official's Chief of Staff is demoted to a receptionist and then fired two weeks later, she was not "personal staff" when she was fired. To hold otherwise dishonors Congress's intent that the exemption be narrowly construed and apply <u>only</u> to those working in "highly intimate and sensitive positions" for elected officials.

Therefore, what matters when analyzing whether an employee falls within the Exemption at a particular time is <u>whether that employee continues to work intimately with the elected official and otherwise perform the duties that satisfy the Personal Staff factors</u>. A plaintiff claiming they no longer fall within the Exemption could not simply argue the defendant "treated her differently." She would have to show <u>what specifically changed about her job</u> and successfully argue those changes to go the heart of the Personal Staff Exemption.

**c. After Learning of Younge's Pregnancy, Howard Made <u>Specific</u> Changes to Her Job That Removed Her From Any Possible "Personal Staff" Status.**

**i. Factor 6.**

If any single factor goes to the heart of the Personal Staff Exemption, it is the 6th factor – the "actual intimacy of the working relationship" – which courts characterize as "the most important factor." *Laurie v. Ala. Court of Criminal Appeals*, 88 F. Supp. 2d 1334, 1338 (M.D. Ala. 2000), *aff'd*, 256 F.3d 1266 (11th Cir. 2001).

Here, the intimacy of Younge's working relationship with Howard changed radically after she told him she was pregnant. Before the pregnancy announcement the two met frequently, she had "open door" access to his office, and he required she be available around the clock. (Doc. 93, pp. 105-107; Doc. 95, p. 28; Doc. 111-2 ¶ 30-31). After the pregnancy announcement, Howard stopped meeting with Younge, excluded her from meetings, and dismissed her when she tried to talk to him. (Doc. 93, pp. 76-77, 80-81, 105-107; Doc. 111-2 ¶¶ 23, 30-31).

Just as in *Cromer*, the intimacy – the constant working together – ended after the pregnancy announcement. This isn't just about "treating her differently." It's about <u>ending the very intimacy that could arguably give rise to the "personal staff" designation</u>.

22

### ii. Factor 3.

Another factor that Howard changed after learning Younge was pregnant is the 3rd factor – "represents the elected official in the eyes of the public[.]" *Laurie*, 88 F. Supp. 2d at 1338, *aff'd*, 256 F.3d 1266. **Before** the pregnancy announcement: **(1)** Younge regularly met with dignitaries and members of the public, albeit always with Howard present. (Doc. 93, pp. 34-37; Doc. 111-2 ¶ 19). **(2)** She also regularly participated in meetings regarding the programs she was responsible for. (Doc. 111-2 ¶ 24; Doc. 93, p. 93).

But **after** the pregnancy announcement: **(1)** Howard began excluding Younge from meetings with dignitaries or members of the public. (Doc. 111-2 ¶ 23; Doc. 93, p. 102). **(2)** He also excluded her from numerous meetings regarding programs under her purview and instead met with her team members without her. (Doc. 111-2 ¶¶ 23-24; Doc. 93, pp. 76-81, 83-84, 88-90, 96-98; Doc. 109-3 ¶ 14).

Again, this isn't just a matter of "treating her differently." Meeting with the public and running various programs are the core of Defendant's argument that Younge satisfied the 3rd factor. [Appellee's Brief, pp. 37-38]. By largely ending Younge's meetings with the public and essentially removing her control of the programs, Howard removed the very duties Defendant claims made her "personal staff."

In sum, when narrowly construing the Exemption – as required by congressional intent and this Court's precedent[6] – Howard made <u>specific changes</u> to Younge's position that removed her from the Exemption. This is particularly so when the evidence is viewed in the light most favorable to the non-moving party, as required at summary judgment. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013).

### d. The Narrow Construction of the Personal Staff Exemption Advocated Herein Does <u>Not</u> Render the Exemption Meaningless.

Defendant tries to gloss over the <u>specific</u> changes Howard made to Younge's position by saying Plaintiff only contends Howard "treated her differently" after the pregnancy announcement. [Appellee's Brief, p. 42]. But the point isn't merely that Howard treated Younge "differently." The point is that – as shown *supra* – Howard made <u>specific changes</u> to Younge's duties and working relationship that go to the heart of the Personal Staff factors. To wit: He stopped working intimately with her and removed her public-facing duties.

Defendant argues that this narrow construction of the Exemption renders it meaningless because "[a] plaintiff would always claim that the elected official treated her differently after the purported discrimination began with the result

---

[6] *Teneyuca*, 767 F.2d at 152; *EEOC v. Reno*, 758 F.2d 581, 584 (11th Cir. 1985).

being she was no longer a personal staff member[7]." [*Id.*] Not true. Not every plaintiff will be able to say that their employer changed or removed the <u>specific duties</u> that arguably once made them exempt.

For instance: If a plaintiff merely argues she was "treated differently" – perhaps with more hostility or less respect – but continued to work intimately with the elected official and continued to meet with the public on that official's behalf, then that plaintiff will <u>not</u> be able to argue that "treating her differently" meant she was no longer personal staff. Nor will most plaintiffs be able to show – as Younge did here – that the changes only came after she notified the elected official that she was pregnant.[8]

Far from creating a loophole that eliminates the Exemption for every plaintiff, Younge's argument here only works in the context of an extremely specific situation: when an elected official changes the employee's position in the <u>precise</u> way that affects the Personal Staff factors and <u>then</u> takes discriminatory adverse actions against the employee.[9] This argument does not render the

---

[7] Defendant also quotes the District Court to support this argument. [*Id.*] Plaintiff has already addressed the District Court's concerns in detail at [Initial Brief, pp. 47-51].

[8] Defendant claims Younge only told Howard about the pregnancy after he confronted her about being rude to a colleague and threatened her job. [Appellee's Brief, pp. 5-6]. Plaintiff <u>denies</u> this claim. Younge testified that no one at the DA's Office <u>ever</u> told her she had been rude, disrespectful, or unprofessional. (Doc. 93, pp. 22, 53-54; Doc. 111-2 ¶¶ 7, 27). "If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true." *Allen v. Bd. Of Pub. Educ.*, 495 F.3d 1306, 1314 (11th Cir. 2007).

[9] Arguably, the removal of these duties may have constituted an adverse action, at least for purposes of the retaliation claim. *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 71 (2006)

Exemption meaningless. Rather, it comports with Congress's intent that the Exemption be narrowly construed. *Teneyuca*, 767 F.2d at 152.

### e. Additional Argument: Howard Lacked Plenary Power of Appointment.

The 1st Personal Staff factor is "whether the elected official has plenary powers of appointment and removal[.]" *Laurie*, 88 F. Supp. 2d at 1338, *aff'd*, 256 F.3d 1266. In her Initial Brief [pp. 51-52], Plaintiff showed how Howard's powers of "appointment" were not plenary because he was subject to local laws/the authorization of Fulton County and his job offer to Younge was contingent upon approval by the County. In response, Defendant argues that these contingencies were mere perfunctory tasks that placed no real limit on Howard's ability to hire Younge. [Appellee's Brief, pp. 34-35].

But Defendant's argument ignores the fact that Fulton County actually thwarted Howard's initial attempt to hire Younge for the position and salary he preferred. To wit: Howard initially sought to hire Younge in a Director position at a salary of $125,000, but he was not permitted by Fulton County to hire her at that position or that salary, so she was instead hired as Deputy Chief of Staff at a lower salary. (Doc. 95, pp. 6-7; Doc. 109-3 ¶ 5; Doc. 93, pp. 26-28).

---

(reassignment of job duties as materially adverse for purpose of a retaliation claim). However – to the extent Younge <u>was</u> "personal staff" before the removal of these duties – the Personal Staff Exemption would have prevented her from pursuing a claim based on the removal of duties.

"Plenary" is defined as, "complete in every respect: absolute, unqualified."[10] Since Fulton County prevented (a.k.a. "qualified") Howard from hiring Younge in the position and salary he desire, his power to appoint was not "plenary."

## V.    CONCLUSION.

This Court's well-established approach to resolving conflicts of precedent requires attempting to reconcile all precedent. Plaintiff has done that here: a defendant seeking to add a defense after the Scheduling Order's deadline for amendments must first prove "good cause" before the court addresses whether th new defense "prejudices" the plaintiff. This rule upholds relevant precedent and litigants' obligation to obey court orders. By failing to first require Defendant to prove "good cause," the District Court abused its discretion by failing to apply the proper legal standard.

Even if the Court were to consider Defendant's untimely, unpled Personal Staff Exemption defense, summary judgment was error. Howard removed all of the duties that could have rendered Younge "personal staff", thereby removing that designation from her weeks before she was fired. This interpretation comports with Congress's intent that the Exemption be narrowly construed.

---

[10] Merriam Webster Online Dictionary, https://www.merriam-webster.com/dictionary/plenary. (Accessed March 7, 2024).

The District Court's Summary Judgment Order should be reversed. A jury should be allowed to decide whether Defendant discriminated against Younge because of her pregnancy.

This 7th day of March 2024,

Respectfully submitted,

/s/ *Benjamin A. Stark*
Matthew C. Billips
Benjamin A. Stark
Counsel for Dr. Jasmine Younge

BARRETT & FARAHANY
P.O. Box 530092
Atlanta, GA 30353
(404) 214-0120
(404) 214-0125 (*facsimile*)
matt@justiceatwork.com
bstark@justiceatwork.com

*ATTORNEYS FOR APPELLANT*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify in accordance with FRAP 32(g) that this brief complies with the type-volume limitation specified in Rule 32(a)(7)(B). Specifically, it contains 6,498 words in the Brief.

/s/ *Benjamin A. Stark*
Benjamin A. Stark
Georgia Bar No. 601867

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 7, 2024, I electronically filed the foregoing **Appellant's Reply Brief** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

/s/ *Benjamin A. Stark*
Benjamin A. Stark
Georgia Bar No. 601867

*Attorney for Plaintiff-Appellant*
*Dr. Jasmine Younge*